UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

JEFFREY P.L. TIBBETTS,                :        CIVIL ACTION NO.
                                      :        3:01CV01763 (CFD)
     Plaintiff,                       :
                                      :
  vs.                                 :
                                      :
PRESIDENT AND FELLOWS OF YALE         :
COLLEGE, ET AL.,                      :
                                      :
    Defendants.                     :
                                      :        NOVEMBER 10, 2003

### DEFENDANT'S NOTICE OF RECENT EVENTS
### PERTINENT TO PLAINTIFF'S MOTION
### TO HOLD THE MOTION TO DISMISS IN ABEYANCE

Defendant Yale University (a/k/a the corporate entity of the President and Fellows of Yale College, including Yale Corporation) ("Yale") gives notice to the Court of recent events pertinent to plaintiff's motion to hold the pending motion to dismiss in abeyance. In that motion, filed on October 8, 2003, plaintiff asked the Court to refrain from acting on the motion to dismiss until his appeal in another case, *Tibbetts v. Dittes*, is resolved by the Second Circuit. Yale filed its opposition to that request on October 29, 2003. Yale now gives notice of the following events of which the Court should be aware:

1.     Yale already reported to the Court that plaintiff's appeal in the case of *Tibbetts v. Dittes* was dismissed on September 16, 2003. Since then, plaintiff has moved in the Second Circuit to reinstate the appeal. That motion was filed on October 16, 2003. (Yale was unable to report on that fact previously, because the Second Circuit's clerk did not record the motion on the docket sheet until October 31, 2003.) A copy of that motion, along with subsequent affidavits

filed by plaintiff in support of that motion are attached at Tabs A, B and C.[1] As of October 16, 2003, plaintiff discharged his appellate counsel, John Nugent, and is again appearing *pro se* in the Second Circuit appeal.

2.     Yale has responded to the motion to reinstate the appeal by opposing it. Yale's opposition was served on November 5, 2003 and was received by the Second Circuit clerk for filing on November 6, 2003. Copies of that opposition and a supporting affirmation are attached at Tabs D and E.

It is Yale's understanding that plaintiff will take the position that his Second Circuit appeal is still "pending," so that his motion to hold this case in abeyance is not moot. Yale disagrees, because the appeal is still dismissed. At the same time, Yale continues to object to the motion to hold this case in abeyance for all the reasons stated in its opposition filed in this Court on October 29. Based on that objection, this Court should proceed to decide the motion to dismiss the complaint under Rule 12(b)(6) regardless of the status of plaintiff's appeal in *Tibbetts v. Dittes*.

---

[1] Yale has at present only unsigned copies of those affidavits, which are courtesy copies e-mailed by plaintiff to Yale's counsel. The signed copies served by plaintiff have not yet arrived in the mail.

Respectfully submitted,

DEFENDANT
YALE UNIVERSITY


By:    _____
       William J. Doyle (ct04190)
          wdoyle@wiggin.com
       Jeffrey R. Babbin (ct10859)
          jbabbin@wiggin.com
       Wiggin & Dana LLP
       Its Attorneys
       One Century Tower
       P.O. Box 1832
       New Haven, CT 06508-1832
       (203) 498-4400
       (203) 782-2889 (fax)

## **CERTIFICATION**

This is to certify that on this 10th day of November, 2003, a copy of the foregoing was

sent by first-class mail, postage prepaid, to:

> Jeffrey L. Tibbetts
> 1021 Arlington Blvd., #822
> Arlington, VA  22209

Jeffrey R. Babbin

\490\171\433181.1

T-1080

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

Each motion must be accompanied by a supporting affidavit with statement of issues.  (Local Rule 27(a))
Include brief statement of facts with page references to the moving papers.

---

TIBBETTS V. DITTES

01-7377
Docket Number

INFORMATION FORM                                                                        MOTION

Use short title

Motion for REINSTATEMENT OF APPEAL

MOTION BY: (Name, address and tel. no. of law firm    OPPOSING COUNSEL: (Name, address and tel. no.
and of attorney in charge of case)                     of law firm and attorney in charge of case)

Jeffrey Babbin
Wiggin & Dana
P.O. Box 1832
New Haven, CT 0650:

Has consent of opposing counsel:

**EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL**

A. been sought?                              Yes    No
B. been obtained?                            Yes    No

Has request for relief been made below?        Yes    No
(See F.R.A.P. Rule 8.)

Has service been effected?    Yes    No
Is oral argument desired?            Yes    No
(Substantive motions only)

Any previous request for similar relief
made to the 2nd Circuit?                            Yes    No

Requested return date: _____
(See Second Circuit Rule 27(b).)
Has argument date of appeal been set:

Would expedited appeal eliminate need
for this motion?                          Yes    No
If no, explain why not:

A. by scheduling order?                      Yes    No
B. by firm date/argument notice?             Yes    No
C. If yes, enter date: _____

Will the parties agree to maintain the status quo
until the motion is heard?                   Yes    No

Judge or agency whose order is being appealed:

Alfred V. Covello, USDJ (Conn.)

Brief statement of the relief requested:

By: (Signature of Attorney)
Signed name must be printed beneath.

Appearing for: (Name of Party)

JEFFREY L. TIBBETTS, PRO SE

**Appellant or Petitioner:**    (Plaintiff)    Defendant
Appellee or Respondent:        Plaintiff    Defendant

Date: OCTOBER 15, 2003

ORDER

Kindly leave this space blank.

BEFORE:

**IT IS HEREBY ORDERED** that the motion be and it hereby is    granted    denied.

For the Court:
ROSEANN B. MacKECHNIE, CLERK

_____          By: _____
Date

rch 2001

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

TIBBETTS v. DITTES

:

NO. 01-7377

:

## APPELLANT'S MOTION TO REINSTATE APPEAL

Pro se Appellant Jeffrey L. Tibbetts hereby petitions the Court for reinstatement of the above-captioned appeal, pursuant to Part C of the Local Rules of the Second Circuit, "Civil Actions Management Plan," Section 6.   This section provides, in pertinent part, that "motions to reinstate . . . for failure to timely file Forms C, C-A, or D, may be decided by Staff Counsel if the motion is filed within 30 days of dismissal."  The instant appeal was dismissed on September 16, 2003, for an alleged failure to file Forms C and D.

The appeal was dismissed in error, and the *pro se* Appellant respectfully requests that this appeal be reinstated.   Forms C and D are "pre-argument forms," and "[t]he requirement for filing the pre-argument statements (forms C or C-A and D) is waived in *pro se* cases."  "How To Appeal Your Civil Case," (U.S. Court of Appeals For the Second Circuit,  March 2001) at 2.

In further support of this Motion for Reinstatement, the Court is respectfully directed to the Appellant's Affidavit, attached hereto and incorporated herein by reference.   As set forth more fully in the Appellant's Affidavit, the requirements for Forms C and D had already been procedurally satisfied in this appeal, a long time prior to the appearance of Appellant's counsel, John T. Nugent, on March 22, 2002.   Form C requires a "description of nature of action" and issues "raised on appeal," while Form D requests transcript information.  On October 12, 2001, Appellant filed with the Court an Affidavit of Issues on Appeal, thus satisfying the requirements for Form C.   Shortly thereafter, on October 18, 2001, Appellant submitted a copy of the trial transcript from the district court, thus satisfying the requirement for Form D.

A review of the Court of Appeals Docket for this case shows that 46 entries, including motions, oppositions, stays and scheduling orders, had been entered prior to the appearance of Appellant's counsel on March 22, 2002 (Dkt #47). Clearly this case was well beyond the preliminary docketing stage. After Mr. Nugent made his appearance almost a year after the case had been docketed, he inquired with the Clerk's Office regarding what additional forms, if any, still needed to be filed in conjunction with his appearance. The Clerk's Office informed Mr. Nugent that no additional forms would be necessary, i.e., Forms C and D, and that a revised scheduling order would be issued, which would trigger any additional documents or briefs to be filed. Both the Appellant and Mr. Nugent waited for this scheduling order.

Furthermore, a review of the Local Rules, internal operating procedure and standing orders of the Second Circuit does not reveal any rule that counsel, appearing in a pending *pro se* appeal, must file Forms C and D. Accordingly, the fine print on Form C states, in pertinent part, that this form must be filed within "ten (10) days" of the docketing of the appeal "with Clerk of the Court of the Appeals." Similarly, Form D states that this information must be completed by counsel within ten days "after filing notice of appeal." However, in this case, where the notice of appeal was docketed almost a year earlier by a *pro se* appellant, it is improbable that newly retained counsel would be able to file Forms C and D within "ten (10) days" of the docketing date for the appeal. More importantly, the Clerk's Office informed Mr. Nugent that he would not have to file any additional forms (other than his motion for appearance) and that the Clerk's Office would thereafter issue a revised order for the briefing schedule. Despite all of this, the revised scheduling was never issued, and the instant appeal was dismissed on September 16, 2003, for failure to file Forms C and D.

Rule 47(a) of the Federal Rules of Appellate Procedure provides, in pertinent part, that:

A generally applicable direction to parties or lawyers regarding practice before a court must be in a local rule rather than an internal operating procedure or standing order. . . . A local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement.

In addition, Rule 47(b) provides that "No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local circuit rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement."    In this case, a dismissal of a *pro se* appeal for failure to file Forms C and D, where there is no rule or notice that with the appearance of counsel such forms must be filed, is a harsh sanction indeed.    The U.S. Supreme Court has held that dismissal of an appeal for "a highly technical procedural rule" is a harsh sanction and that is should only be granted in extreme cases. *Evitts v. Lucey*, 469 U.S. 387, 399 (1985); *Gilroy v. Erie Lackawannna R.R. Co.*, 421 F.2d 1321, 1323 (2d Cir. 1970) (declining to dismiss appeal where attorney showed excusable neglect in failing to follow certain procedural forms);  20 A Moore's Federal Practice. 3d, § 347.11 (2003) (a court of appeals may not impose a sanction or "other disadvantage" for unintentional noncompliance upon "a party or attorney for violating special, unique procedural requirements unless the party or attorney has actual notice of those requirements."); *accord Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc.*, 884 F.2d 89, 94 (3d Cir. 1989) (violation of transcript ordering form could not serve as basis for dismissal if appellate court's guidelines did not provide clear notice of requirements).

3

## CONCLUSION

Wherefore, for all of the foregoing reasons, Appellant's appeal should be reinstated, and

a scheduling order should be issued to brief the issues on appeal.

Respectfully submitted,

Jeffrey L. Tibbetts
Appellant Pro Se
1021 Arlington Blvd., Apt. #822
Arlington, VA  22209
(703) 522-0321

## CERTIFICATE OF SERVICE

This is to certify that on this 16th day of October, 2003, a true and correct copy of the
foregoing was sent to Appellee's counsel of record:  Jeffrey Babin, Wiggin & Dana, P.O. Box
1832, New Haven, CT  06508-1832

4

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

| | | |
|---|---|---|
| TIBBETTS v. DITTES | : | NO. 01-7377 |
| | : | November 6, 2003 |

## APPELLANT'S AMENDED AFFIDAVIT IN SUPPORT OF REINSTATEMENT OF APPEAL

Appellant Pro Se, Jeffrey L. Tibbetts, files this Affidavit in Support of Reinstatement of the above-captioned appeal which was dismissed on September 16, 2003. The appeal was dismissed on the grounds that Forms C and D were not filed--even though these Forms are not required and are waived in *pro se* appeals. On May 10, 2001, the Court provided notice that this appeal had been fully docketed. On March 22, 2002, the pro se appellant retained counsel, who filed his appearance and who was informed by the Court to await a new scheduling order. The Court never issued the new scheduling order, and on September 16, 2003, the appeal was dismissed for failure to file pre-docketing Forms C and D, even though this case had already been fully docketed. Appellant has timely submitted his Motion to Reinstate this appeal within thirty days after the notice of dismissal, pursuant to the Local Rules of the Second Circuit and the Civil Appeal Management Plan.

In support of his motion, the Appellant Pro Se affirms under penalty of perjury that the following is true and accurate:

## I. FORMS C AND D ARE WAIVED FOR PRO SE CASES

1. The Appellant *pro se* filed his Notice of Appeal on March 30, 2001. (Dkt. #239). The Local Rules of the Second Circuit provide in pertinent part that in *pro se* appeals the requirement for filing Forms C and D are "waived." Exhibit 1 hereto ("The requirement for filing the pre-argument statements (forms C or C-A and D) is waived in pro se cases."). In the

instant appeal, Forms C and D were not required, and this appeal was fully docketed as of May 10, 2001.   See Exhibit 2 hereto.   The Appellant herein incorporates and refers to his Supplemental Affidavit in Support of Reinstatement, filed November 4, 2003, for a detailed analysis that Forms C and D are "waived" in *pro se* appeals, and that this appeal was accordingly fully and completely docketed as of May 10, 2001.

## II.     PROCEDURAL STATUS OF THE APPEAL ON RECORD

2.     On May 29, 2001, Appellee Yale served a motion to dismiss the appeal for lack of jurisdiction.

3.     On June 14, 2001, Appellant Pro Se filed a Joint Motion for Limited Stay of Appeal under the Family and Medical Leave Act (29 U.S.C. § 28, 29 C.F.R. § 825).   Appellee consented to the Joint Motion and a copy of this motion with supporting medical affidavits is attached hereto as Exhibit 3.

4.     On July 9, 2001, the Court granted the motion for a Limited Stay of Appeal and ordered the briefing schedule "suspended until the motion to dismiss is decided."   Exhibit 4 hereto.

5.     On July 12, 2001, Appellant moved the Court for the Appointment of Counsel. Appellant attached Form 4:   "Affidavit Accompanying Motion For Permission to Appeal *In Forma Pauperis.*"   Exhibit 5 hereto.   Appellant subsequently filed a series of substantive affidavits and pleadings in support of this appointment.

6.     On February 13, 2002, the Court denied "appellant's motion for appointment of counsel."   On the same day, the Court also denied Appellee's motion to dismiss, holding that Appellant's "notice of appeal was timely with respect to the district court's March 21, 2000 order granting reconsideration and denying appellant's Fed.R.Civ.P. 59(e) motion."   Exhibit 6 hereto.

Accordingly, the Court ordered that Appellant's brief be due by March 18, 2002, with the Appellee's brief due by April 17, 2002, and oral arguments "to be heard no earlier than the week of June 3, 2002." *Id.*

7.    Although the Court denied the Appellant's motion for appointment of counsel, the Appellant still continued to diligently search for counsel for the brief and oral argument.   The record shows that the Appellant had previously contacted over 48 attorneys to assist on this appeal, prior to filing a motion for appointment of counsel.   After this motion was denied, Appellant contacted 35 more attorneys to assist with the brief and oral argument.   However, Appellant could not afford the $8,000 to $15,000 retainer fees required by these attorneys and/or law firms.

8.    At the last minute John T. Nugent ("Mr. Nugent"), an attorney in Connecticut, agreed to assist on the appeal.   On March 18, 2002, Appellant filed a five-day extension of time "for counsel to make an appearance in the above-captioned appeal." Exhibit 7 hereto.   This motion stated that Appellant had "diligently searched for representation" and that he had "now found counsel who has agreed to prepare and argue the brief." *Id.*   The Court granted the Appellant's Motion for an Extension of Time on March 22, 2002.

## II.    COURT DID NOT REQUIRE COUNSEL TO FILE FORMS C AND D IN THIS FORMER PRO SE APPEAL

9.    On March 22, 2002, Mr. Nugent filed his appearance in this appeal.   The Court informed Mr. Nugent that his appearance as counsel would be noted and that "a new scheduling order would be issued by the Court and to file any documents in accordance with that new scheduling order." Affidavit of John Nugent, attached hereto as Exhibit 8.

10.    On or about March 26, 2002, the Appellant called the Pro Se Team of the Clerk's Office to verify that no additional filings were required for a new scheduling order to be issued.

Appellant was informed that this appeal would be transferred to the Civil Team and that no additional filings were required by the Appellant or by Mr. Nugent (with the exception of his Notice of Appearance). Appellant was also informed by the Court that a new scheduling order would be issued and to file any documents in accordance with that new scheduling order.

11.    Finally, Appellant again reviewed all of the materials sent by the Second Circuit on how to appeal a case, as well as the Local Rules for the Second Circuit and the Federal Rules of Appellate Procedure, and there were no specific rules, provisions, or directions that required newly retained counsel in a *pro se* appeal to file Forms C and D. Indeed, these forms are required in the CAMP process to assist in the docketing of a case; but in this case, they were unnecessary because the appeal had already been fully docketed as of *May 10, 2001*.

12.    At this point, both the Appellant and Mr. Nugent were confident that they had observed all of the rules and regulations of the Court, and that the Court would shortly issue a new scheduling order, as both the Appellant and Mr. Nugent had been so apprised.

### III.    APPELLANT'S BRIEF AND JOINT APPENDIX IS COMPLETED AFTER THE APPEARANCE OF COUNSEL

13.    After Mr. Nugent had made his appearance, he then advised the Appellant to prepare a proposed joint appendix because the new scheduling order would be handed down shortly from the Court. On or about October 15, 2002, Appellant completed the proposed joint appendix. Accordingly, there was correspondence and telephone calls between the Appellant and Mr. Nugent on this matter.

14.    Mr. Nugent then directed the Appellant to prepare a draft of the Appellant's Brief for the new scheduling order which was expected at any time. On or about December 14, 2002, Appellant notified Mr. Nugent that a proposed Appellant's Brief had been completed and was ready to go, and there was correspondence and telephone conversations about this matter as well.

15.     On or about February 15, 2003, there was correspondence and telephone communications regarding the status of Court's new scheduling order.   Mr. Nugent informed the Appellant that the new order still had not been issued, and that the Court was probably backlogged with a pressing number of appeals.

16.     On or about February 29, 2003, Mr. Nugent advised the Appellant to find counsel for the pending action *Tibbetts v. President and Fellows* (01-CV-1763), which was a Rule 60(b)(3) action pending before the U.S. District Court for the District of Connecticut.   This action is a collateral attack before the district court of *all of the issues currently pending before the U.S. Court of Appeals for the Second Circuit.  See* Exhibit 9 hereto.

17.     On or about March 8, 2003, Appellant began advertising for counsel in both the States of Connecticut and in the greater Washington D.C. area.   Appellant acquired $1,758.00 in advertising charges.   Accordingly, Appellant interviewed and spoke with a number of attorneys and law firms about representation in the above Rule 60(b)(3) action (*Tibbetts v. President and Fellows*), which was pending simultaneously with the appeal before this Court.

18.     Appellant then retained counsel by the name of William Malcolm Logan for his appearance and prosecution of the claims the Rule 60(b)(3) action.    Mr. Logan is admitted to practice in the States of Maryland and Texas, and a copy of his resume is attached hereto as Exhibit 10.   Mr. Logan had agreed to make his appearance in this appeal as well as move for *pro hac vice* sponsorship in the district court in Connecticut.   In addition, Appellant also retained Cheryl Flax Davidson, an attorney admitted to practice in the District of Columbia, who would provide assistance on the Appellant's Brief before this Court.   A copy of her resume is attached hereto as Exhibit 11.    Accordingly, Mr. Nugent spoke with both Mr. Logan and Ms. Flax-Davidson and approved of their appearance as counsel of record in this appeal.

5

19.    Thus, while the Appellant and Mr. Nugent were waiting for the Court to issue the new scheduling order, substantial work had been undertaken to complete the Joint Appendix, complete the Appellant's Brief, and retain additional appellate counsel to argue the appeal.

## IV.    APPELLEE YALE SUBMITS A MOTION TO DISMISS IN BAD FAITH

20.    On June 13, 2003, Appellee filed a motion to dismiss this appeal in bad faith by arguing that Appellant's counsel had not submitted Forms C and D, even though this case had been fully docketed as of May 10, 2001.  Appellee demonstrated bad faith in filing this motion because (1) Appellee knew that all parties were waiting for the Court to issue its new scheduling order, (2) Appellee's counsel made no effort to contact Appellant's counsel to discuss or inquire about the fact the Court had not issued a new scheduling order, and (3) Appellee cited no applicable rules or case law to support a motion to dismiss for failure to file Forms C and D, where a case had already been fully docketed.

21.    To the contrary, Appellee cited case law that actually supported Appellant's position.  For example, Appellee stated that "[i]n a case where an appellant with counsel took no action in the appeal for twenty months, this Court categorically placed litigants on notice that 'on facts showing such inexcusable neglect as we find here, an appeal will be dismissed.' *Gilroy v. Erie Lackawanna R.R. Co.*, 421 F.2d 1321, 1323 (2d Cir. 1970)."   Yale's Motion to Dismiss, June 12, 2003, pg. 5.  However, a review of the holding in *Gilroy* actually shows *that the case was not dismissed.*   Indeed, in *Gilroy*, the Second Circuit "den[ied] the motion to dismiss the appeal," but upheld "costs to compensate the appellee for being compelled to make this motion." 421 F.2d F.2d at 1323.  Further, the facts in *Gilroy* differ dramatically from the appeal at hand. Here, not only were the original requirements for filing Forms C and D "waived" in this *pro se* appeal, but the appeal had already been fully docketed and was awaiting a new scheduling order

6

from the Court.   In *Gilroy*, the case had not been docketed from the beginning by counsel, and "no steps have been taken to prosecute" this appeal, the appellees correctly moved to dismiss the appeal. *Id.* at 1321. However, this is certainly not the case in the instant appeal. In this case the appeal had already been fully docketed and the record shows that there was a vigorous prosecution of the appeal with no less than 46 docket entries on the appeal. *See* PACER Court of Appeals Docket # 01-7377, Exhibit 12 hereto.

## V.    APPELLEE YALE HAS MADE MATERIAL MISREPRESENTATIONS TO DISMISS THIS APPEAL

22.    Notwithstanding Appellee's bad faith in moving to dismiss this appeal and its failure to cite applicable rules and case law on point, Appellee has also committed material misrepresentations by failing to disclose to this Court that there are four actions pending on the same or collateral issues in the U.S. District Court below.   By failing or deliberately omitting to disclose this critical information, Appellee gave the impression that this case had become stale and that it would be "prejudiced" from a review of these issues, when, in fact, the Appellee *knew* that it was facing *these same issues in four lawsuits in the trial court below.*    Appellee's deliberate failure to disclose this information and show candor constitutes an arguable fraud, in that officers of this Court have misrepresented or deliberately omitted pertinent facts regarding the pending cases below, in order to gain a tactical advantage in this appeal and this overall litigation, which itself has been pending no less than eight years.

22.    Specifically, Appellees have *failed* to disclose the following pending cases before the U.S. District Court for the District of Connecticut: (1) Tibbetts v. Levin, (397-CV-02683 (CFD)) (Exhibit 13 hereto); (2) Tibbetts v. Stempel, (397-CV-02561 (CFD)) (Exhibit 14 hereto); (3) Tibbetts v. Robinson, (397-CV-02682 (CFD)) (Exhibit 15 hereto); and 4) Tibbetts v. President and Fellows of Yale College, (01-CV-1763) (Ex. 9 *supra*).   To demonstrate that each

7

of these cases are currently pending, a copy of the corresponding PACER reports are attached as follows: Tibbetts v. President and Fellows, (Exhibit 16); Tibbetts v. Levin (Exhibit 17); Tibbetts v. Stempel (Exhibit 18); and Tibbetts v. Robinson (Exhibit 19). In total, Appellee Yale failed to inform the U.S. Court of Appeal for the Second Circuit about four pending lawsuits in the district court below—all in a bad faith effort to dismiss this appeal, so that its merits would not be reviewed.

23.    Moreover, *the issues on appeal are identical to the issues that were raised in a Writ of Mandamus filed with this Court on January 12, 2000.* A copy of this Writ of Mandamus is attached hereto as Exhibit 22. The Court never ruled on this Writ of Mandamus, and as a result the trial in the district court went forward below, and are now presented on appeal. The Appellant respectfully refers the Court to the issues raised in this appeal as explicated by Appellant's then counsel, and the issues raised therein are incorporated and referenced herein. Further, compare the issues raised in the Writ of Mandamus with the Appellant's Affidavit of Issues Raised on Appeal, Exhibit 20 hereto. Thus, it cannot be argued that the Appellant has not been diligent in seeking to prosecute the issues on appeal--when the issues on appeal are the exact ones pending in the collateral attack in Tibbetts v. President and Fellows (Ex. 9 *supra*), and the exact issues which the Writ of Mandamus sought to prevent (Ex. 22 *supra*).

## IV.    APPELLANT, NOT APPELLEE, HAS BEEN PREJUDICED BY THE DELAY OF THE SCHEDULING ORDER IN THIS APPEAL

24.    Appellee Yale has misled this Court by arguing in bad faith that this appeal should be dismissed for an apparent failure to file Forms C and D, when, in fact, these forms were inapplicable to a *pro se* appeal, and when this appeal had already been fully docketed as of May 10, 2001. Moreover, Appellee has arguably committed a fraud on this Court by failing to disclose that there are four pending actions before the U.S. District Court for the District of

8

Connecticut, which are the exact same issues on appeal. Appellee's subterfuge and misrepresentation should *not* entitle it to a dismissal of this action, thus depriving both this Court and the Appellant from a lawful review of issues which have been timely brought on appeal.

25.     Finally, it is the Appellant, not the Appellee, who has been prejudiced from the delayed scheduling order in this appeal. "Justice delayed is justice denied," and in this case, the delay in this case is more prejudicial to the Appellant where the issues on appeal have been pending in the trial court for more than *three* years, and with the underlying issues still in dispute going back almost *nine* years.

## V.     __CONCLUSION__

26.     In conclusion, where there has been no willful delay or procedural misstep caused by the Appellant--other than an honest delay in waiting for the Clerk's Office to issue a new scheduling order in this appeal—and where the Joint Appendix and Appellant's Brief have been prepared long ago, and where Forms C and D were "waived" in the initial filing of this pro se appeal, pursuant to the Local Rules of the Second Circuit, and where this was already fully docketed by May 10, 2001, and where there was substantial docket activity prior to the appellant pro se retaining counsel, and where this counsel was informed that he did not have to file any more forms (other than his appearance) and to await a new scheduling order to be issued from the Court, and where there are no rules or regulations in Second Circuit Local Rules that requires retained counsel in *pro se* appeal to file Forms C and D anew, especially where a case is already docketed, and where Rule 47(a) of the Federal Rules of Appellate Procedure specifically provides that "[a] local rule imposing a requirement of form must not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement,"

the Appellant, therefore, respectfully requests that his appeal be reinstated, so that the ends of justice may be served.

Respectfully submitted,

_____

Jeffrey L. Tibbetts
Appellant Pro Se
1021 Arlington Blvd., Apt. #822
Arlington, VA  22209
(703) 522-0321

Subscribed and sworn before me this ___ day of November, 2003

_____

Notary Public
My commission expires on:

## CERTIFICATE OF SERVICE

This is to certify that on this ___ day of November, 2003, a true and correct copy of the foregoing was sent to Appellee's counsel of record:  Jeffrey Bubbin, Wiggin & Dana, P.O. Box 1832, New Haven, CT  06508-1832

_____

Jeffrey L. Tibbetts

# UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

TIBBETTS v. DITTES                 :                 NO. 01-7377
                                   :
                                   :

# APPELLANT'S SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF REINSTATEMENT OF APPEAL

Appellant Pro Se, Jeffrey L. Tibbetts, files this Affidavit in Support of Reinstatement of the above-captioned appeal, which was dismissed on September 16, 2003.

1.     The appeal was dismissed by motion of the Appellee, dated June 12, 2003, for an alleged failure to file Forms C and D.

2.     A copy of the Order dismissing this appeal, dated Sept. 16, 2003, is attached hereto as Exhibit 1.  This order states in pertinent part that:

> The Civil Appeal Management Plan ["CAMP"] of this Court Directs that within the (10) days after filing a Notice of Appeal, the Appellant shall file and serve a Pre-Argument Statement (Form C), order a transcript of the proceedings from the court reporter and file and serve a statement concerning same (FORM D), pay docketing fee, and that in the event of default of any of these requirements, the Clerk may dismiss the appeal without further notice.

> The appellant herein not having so proceeded, upon consideration thereof, it is ordered that the appeal from the order of 3/22/01 United States District Court for the District of Connecticut New Haven be and it hereby is dismissed.

3.     The Order dismissing this appeal is based on the grounds that (1) the Appellant had not filed within 10 days after his Notice of Appeal  a Pre-Argument Statement (FORM C), (2) a Statement of Transcript Information (FORM D), and/or (3) payment of the "docketing fee."  *Id.*

4.     As demonstrated below, this appeal has been dismissed in error.

5.     In actual fact, the Appellant Pro Se had satisfied all of the aforementioned CAMP requirements for docketing this appeal May 10, 2001.   In support of this satisfaction, the Court is respectfully shown as follows:

A.     On March 22, 2001, Appellant had timely filed a Notice of Appeal from the U.S. District Court for the District of Connecticut and paid the $100 filing fee for an appeal to the U.S. Court of Appeals for the Second Circuit.

B.     On or about April 3, 2001, the Second Circuit sent materials to the Appellant informing him that *"Pro Se appellants do not need to fill out form C (Pre-argument Statement) or form D (Transition [sic] Information)."*     Exhibit 2 hereto (emphasis added).

C.     On April 13, 2001, the Second Circuit issued a Docketing Letter – Civil Case, stating that "[w]e have today docketed a notice of appeal filed by Jeffrey L. Tibbetts in the above referenced case as docket number 01-7377." Exhibit 3 hereto.

D.     On May 7, 2001, the Second Circuit issued a Scheduling Order stating that "Jeffrey P.L. Tibbetts, appellant pro se, has filed a Notice of Appeal" and that the "District Court shall be responsible for filing the record on appeal."  Exhibit 4 hereto.

E.     On May 10, 2001, the Second Circuit certified that the district court record on appeal "has been filed . . . in the United States Court of Appeals for the Second Circuit."  Exhibit 5 hereto.   This Notice of the Second Circuit confirms that this appeal had been fully docketed, wherein the Appellant *pro se* filed a Notice of Appeal and  paid the $100 filing fee, and the district court completed the record on appeal.

2

9.    Thus, it is clear that as of May 10, 2001, this *pro se* appeal had been fully docketed and noticed to all parties of record.

10.    Accordingly, the dismissal of this appeal for a pro se appellant's failure to file Forms C and D contradicts the Second Circuit's Local Rules that specifically provides that: *"The requirement for filing the pre-argument statements (forms C or C-A and D) is waived in pro se cases."*  Exhibit 6.

11.    Even assuming *arguendo* that there is some hidden or obscure rule requiring a *pro se* appellant to file Forms C and D, the Appellant in this case satisfied these requirements by filing the equivalent of these forms on August 6, 2001, October 4, 2001, and October 12, 2001.

12.    Specifically, Form C requests that an appellant provide a "brief description of nature of action" and the "issues proposed to be raised on appeal."  *See* Exhibit 7 hereto.  In satisfaction of this requirement, on August 6, 2001, the Appellant filed a six-page affidavit and description of the nature of this action, see Exhibit 8 hereto, and on October 4, 2001, he filed filed a five-page affidavit listing twenty four issues on appeal.   Exhibit 9 hereto.   The combination of these filings clearly constitute the equivalent of the information requested in Form C.

13.    Form D, on the other hand, specifically requests "Transcript Information."  *See* Exhibit 10 hereto.   On October 12, 2001, the Appellant duly filed not only a summary of the trial transcript but also all 250 pages of the trial transcript.   Exhibit 11 hereto.   This filing also constitutes a satisfaction of the equivalent of the information requested in Form D.

14.    Thus the record demonstrates that by October 12, 2001, the Appellant had not only satisfied all of the CAMP requirements for a *pro se* appellant to docket his appeal, but also filed the additional and equivalent information requested in both Forms C and D.

3

15.     By the time counsel made his appearance on behalf of the Appellant Pro Se on March 22, 2002, this appeal had already been pending and docketed for almost one year.

16.     As noted in the initial affidavit in support of a motion for reinstatement, Appellant's counsel filed his appearance and was instructed by the Clerk's Office to await filing any further documents until the Court issued a revised scheduling order for briefing, which never happened.

17.     In any event, it is illogical and contradictory for the Second Circuit to dismiss this appeal for a failure to timely docket it, wherein the appellant pro se was to "file and serve a Pre-Argument Statement (Form C)" and "order a transcript of the proceedings . . . and file and serve a statement concerning same (FORM D)," when this *"requirement for filing the pre-argument statements (forms C or C-A and D) is waived in pro se cases."* Ex. 6 *supra.*

18.     In addition, since Forms C and D are required to be submitted within *10 days* of the Notice of Appeal,  and in this case, counsel made an appearance almost one year after the appeal had already been docketed, and there is no rule or regulation requiring counsel in a pro se appeals to submit Forms C and D after this appeal had already been docketed and pending, then there can be no finding of fact that this Appellant has acted willfully or in derogation of the CAMP rules or the Local Rules of the Second Circuit that would warrant he suffer the drastic sanction of the dismissal of his appeal.

19.     For good cause having been shown, I therefore respectfully request that my appeal be reinstated, so that ends of justice may be served.

Respectfully submitted,

_____

Jeffrey L. Tibbetts
Appellant Pro Se
1021 Arlington Blvd., Apt. #822
Arlington, VA  22209
(703) 522-0321

Subscribed and sworn before me this ___ day of November, 2003

_____

Notary Public
My commission expires on:

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on this ___ day of November, 2003, a true and correct copy of the foregoing was sent to Appellee's counsel of record:  Jeffrey Bubbin, Wiggin & Dana, P.O. Box 1832, New Haven, CT  06508-1832

_____

Jeffrey L. Tibbetts

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

TIBBETTS v. DITTES
:                NO. 01-7377
:

**AFFIRMATION OF JEFFREY R. BABBIN
<u>IN OPPOSITION TO MOTION TO REINSTATE APPEAL</u>**

Jeffrey R. Babbin affirms as follows:

1.      I am an attorney with the law firm of Wiggin & Dana LLP, and am lead counsel for defendants-appellees in this appeal. In that capacity, I am personally familiar with the trial court's file and docket sheet in this lawsuit and the course of proceedings to date in this appeal. I make this affirmation in support of defendants' opposition to plaintiff's motion to reinstate his dismissed appeal.

2.      I hereby affirm all factual statements and representations set forth in the accompanying Opposition to Motion to Reinstate Appeal.

WHEREFORE, the motion to reinstate the appeal should be denied.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in New Haven, Connecticut, on this 5th day of November, 2003.

Jeffrey R. Babbin

Respectfully submitted,

Dated: November 5, 2003

Jeffrey R. Babbin
Wiggin & Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 (fax)
jbabbin@wiggin.com

Attorney for Defendants-Appellees,
James Dittes, Thomas Ogletree,
Penelope Laurens, Detra MacDougall, and
Yale University (Yale Corporation and
Yale Divinity School)

## **CERTIFICATION**

This is to certify that on this 5th day of November, 2003, a copy of the foregoing was

sent by first-class mail, postage prepaid, to:

       Jeffrey L. Tibbetts
       1021 Arlington Blvd., #822
       Arlington, VA  22209

                                        Jeffrey R. Babbin

\490\147\432457.1

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

---

TIBBETTS v. DITTES  :  NO. 01-7377

:

---

## OPPOSITION TO MOTION TO REINSTATE APPEAL

All defendants-appellees oppose plaintiff's motion to reinstate his dismissed appeal.

Plaintiff neglected this appeal for well over one year, doing nothing to move the appeal forward

to a resolution on its merits. He effectively abandoned his appeal while pursuing other litigation,

as discussed below. The Court should not now allow him to reinstate the appeal.

## BACKGROUND

### A.    Proceedings in the Trial Court

Plaintiff commenced this action in the District Court on May 30, 1995 and later filed an

amended complaint. (Dkt. #29.) It contained four counts: intentional infliction of emotional

distress, defamation, breach of contract, and intentional interference with prospective advantage.

The claims dealt with the following subject matters: (1) plaintiff's suspension from the Yale

Divinity School for plagiarism (¶¶ 9-47); (2) academic misconduct charges brought against

plaintiff in 1990 and the subsequent investigation (¶¶ 49-58 and 70-150); and (3) plaintiff's

dispute with Yale over disciplinary records from the plagiarism and academic misconduct

charges (¶¶ 59-69).

Plaintiff appeared *pro se* in the trial court. No attorney ever filed an appearance on his

behalf. A jury trial was held on January 18 and 19, 2000, before then-Chief Judge Covello. After

defendants prevailed at trial, the court entered judgment for defendants on March 30, 2000. (Dkt.

#214.) When plaintiff moved for a new trial, the trial court denied the motion (Dkt. #215) and,

after granting reconsideration, adhered to its denial of a new trial in an order entered on March 21, 2001 (Dkt. #217).

### B.    Proceedings on Appeal

Plaintiff filed his Notice of Appeal on March 30, 2001. (Dkt. #239.) He filed the appeal *pro se*. This Court, on May 7, 2001, issued a scheduling order with the appellant's brief due on June 7, 2001, and the appellees' brief due on July 9, 2001.

Defendants served a motion to dismiss the appeal on May 29, 2001. The Court suspended the briefing schedule until the motion to dismiss was decided. Soon thereafter, on July 12, 2001, plaintiff served a motion for appointment of pro bono counsel. Plaintiff supplemented his motion on several occasions while it was pending.

On February 13, 2002, the Court denied both the motion for appointment of counsel and the motion to dismiss the appeal. Although the appeal was not dismissed, the Court did narrow the permissible scope of the appeal. The Court explained: "While this Court lacks jurisdiction over an appeal from the final judgment [entered on March 30, 2000], the notice of appeal was timely with respect to the district court's March 21, [2001][1] order granting reconsideration and denying appellant's Fed. R. Civ. P. 59(e) motion."[2] The Court, in that same order of February 13, 2002, established a briefing schedule, requiring plaintiff (who was still *pro se*) to file his

---

[1] The Court's order refers to "the district court's March 21, 2000 order granting reconsideration." That is a typographical error, as the order granting reconsideration was filed and entered on March 21, 2001.

[2] The motion for new trial tolled the time to appeal from the final judgment. Nevertheless, the appeal from the judgment was untimely, because plaintiff did not file his appeal within 30 days of the order denying the motion for new trial. Rather, plaintiff moved for reconsideration of that denial and filed his appeal only within 30 days of the order disposing of the motion for reconsideration. The time to appeal from a judgment may not be tolled *twice*. *See Glinka v. Maytag Corp.*, 90 F.3d 72, 73-74 (2d Cir. 1996).

2

appellant's brief by March 18, 2002, and requiring defendants to file their appellees' brief by April 17, 2002.

On the very day of the March 18, 2002 deadline for his appellant's brief, plaintiff successfully moved for an additional week of time, representing that he was close to obtaining counsel in light of the trial court's denial of pro bono counsel. Plaintiff in fact then did obtain counsel, John T. Nugent of Southington, Connecticut, who filed his appearance as counsel of record for plaintiff on March 22, 2002.

With the appearance of counsel for plaintiff, the Office of the Clerk transferred the appeal from its *pro se* team to its civil team. Although no order was issued specifically voiding the existing scheduling order, the undersigned counsel learned that the transfer of the appeal to the civil team did in fact vacate the scheduling order. But neither the civil team nor staff counsel issued a new scheduling order or a preargument conference order. It was the undersigned counsel's understanding that, having secured counsel, plaintiff was required to file Forms C and D under the Second Circuit's civil appeals management plan in order to trigger the issuance of a briefing schedule.

After plaintiff's counsel appeared in March 2002, plaintiff did nothing more in the case. The clerk's office did send plaintiff's counsel a copy of the Court's publication entitled *How To Appeal Your Civil Case*, which the docket shows was mailed to plaintiff's counsel on April 2, 2002, just 11 days after counsel's appearance. But the very next item on the docket sheet is from more than a year later in June 2003, when defendants filed their motion to dismiss the appeal for failure to prosecute. In the papers supporting that motion, defendants pointed out that plaintiff had taken no action to secure a briefing schedule in this case and apparently felt no sense of urgency to prosecute the appeal. Defendants also pointed out their understanding that the

scheduling order was being held up by plaintiff's failure to file Forms C and D. *See* Motion to Dismiss, filed 6/13/03, at 4. Nevertheless, plaintiff *still* did not comply with that filing requirement and, on September 16, 2003, this Court issued a *sua sponte* order of dismissal for failure to comply with the civil appeals management plan. The next day the Court denied as moot the motion to dismiss for failure to prosecute.

Plaintiff has now replaced his counsel and appeared *pro se* yet again. His motion to reinstate, while certified as served on October 16, 2003 (*i.e.*, 30 days from the September 16 dismissal) was received by defendant's counsel on October 27, 2003, in an envelope postmarked on October 20, 2003 (Tab 1). This Court's docket lists the motion to reinstate as filed on October 16, 2003 but separately lists papers *supporting* the motion as filed on October 30, 2003. Because plaintiff did not file his supporting papers until more than 30 days after the dismissal, the motion must be decided under Second Circuit practice by a Judge of the Court. The Court should not treat the motion as timely filed on October 16 when plaintiff filed only a portion of his motion by that date, did not serve even that portion until October 20, and did not file the remainder of his motion papers until October 30.

## ARGUMENT

After plaintiff first filed this appeal *pro se*, he asked for free legal services to pursue the appeal. The Court denied that request, leaving plaintiff (if he still wanted counsel) with the need to obtain counsel and to pay for all work done to move the appeal forward. At the same time that it denied the motion for pro bono counsel, the Court issued its ruling on the motion to dismiss, holding that plaintiff's appeal from the final judgment was untimely. That ruling had the effect of restricting the issues that plaintiff could pursue on appeal. While plaintiff did nominally retain

4

counsel (Mr. Nugent), that lawyer merely filed his appearance in order to vacate the imminent

March 2002 deadline for the brief and then disappeared from view.[3]

Rather than pay his lawyer to prosecute an appeal that was severely limited by the failure

to timely appeal the final judgment, plaintiff let this appeal become stale while he pursued a

different approach. That other approach was to prosecute a separate lawsuit that plaintiff filed in

the District Court in Connecticut on September 18, 2001, which sought to vacate the judgment at

issue in this appeal through a collateral attack. He styled that lawsuit as an "independent action"

for fraud under Rule 60(b) and alleged that Yale and others had defrauded the trial court in this

case. He filed that lawsuit in the trial court while defendants' motion to dismiss this appeal as

untimely was still pending for decision in this Court. He then pursued that lawsuit *pro se* while

ignoring this appeal. *See* Tab 2 (docket sheet showing activity in No. 3:01cv1763 (CFD)).

Recently, however, Yale moved to dismiss that new lawsuit for failure to state a claim

(*see id.*, dkt. #44). Although plaintiff's response to that motion was due on July 25, 2003 (*see id.*,

dkt. #48), he has failed to file a brief in opposition. Instead, threatened with the extinction of

both this appeal and the District Court "independent action," plaintiff has moved in the District

---

[3] In his amended affidavit in support of reinstatement of the appeal, plaintiff concedes that Mr. Nugent was not hired to do any substantive work on the appeal, which certainly strengthens the inference that Mr. Nugent appeared only to avoid the March 2002 briefing deadline. Plaintiff avers that Mr. Nugent asked *plaintiff* to prepare a joint appendix and asked *plaintiff* to prepare a merits brief for this appeal, and plaintiff further avers that he continued to advertise to find counsel to actually argue this appeal. Again, at no time does plaintiff say that any inquiry was made to the clerk's office all this time to find out why a scheduling order was not issued. (It should be added that at no time did plaintiff communicate with defendants regarding the joint appendix.) Rather, plaintiff's affidavit concedes that he was litigating the same issues raised in this appeal in his then-favored new District Court "independent action" to vacate the judgment for fraud. Having used the presence of his nominal counsel's appearance in this appeal to strategic advantage, plaintiff should not be permitted to plead his *pro se* status as a reason for continuing the appeal.

Court to hold Yale's motion to dismiss in abeyance while he pursues this appeal. He filed that motion on October 8, 2003 (*see id.*, dkt. #49 – copy of the motion is at Tab 3), a week before he purported to move in this Court to reinstate the appeal. It appears that plaintiff's sudden interest in his appeal is nothing but a last-minute ploy to stave off dismissal of his District Court action, which, until now, he had favored over proceedings before this Court. Of course, now that he wants to reactivate this appeal, he has fired his "paid" appellate counsel, freeing him to file and pursue the motion to reinstate *pro se*. Plaintiff is juggling both actions so that he can keep one or the other in play and continue to pursue his decade-long vendetta against Yale, without having to pay an attorney.[4]

The continued dismissal of this appeal would be a fitting sanction for this gamesmanship and for plaintiff's complete disinterest in his own appeal for well over one year. Plaintiff is an experienced *pro se* litigant, using the court system to maximum effect with varying results.[5] With

---

[4] Plaintiff has filed five lawsuits against Yale University and Yale-affiliated persons in the District of Connecticut, of which this case (filed in 1995) was just the first and the "independent action" to attack the judgment in this case for fraud was the last so far (filed in 2001). Also still pending in the trial court are three actions that plaintiff is pursuing against Yale University, its president, its general counsel, and a former deputy general counsel: *Tibbetts v. Stempel et al.*, No. 3:97cv2561(CFD); *Tibbetts v. Robinson et al.*, No. 3:97cv2682 (CFD); and *Tibbetts v. Levin et al.*, No. 3:97cv2683 (CFD). Plaintiff commenced a sixth lawsuit against Yale in federal court in Virginia, which recently terminated with a decision by the U.S. Court of Appeals for the Fourth Circuit affirming judgment for Yale. *See Tibbetts v. Yale Corp.*, 47 Fed. Appx. 648, 2002 WL 31123873 (4th Cir. Sept. 26, 2002) (Tab 4).

[5] While this appeal has been pending, plaintiff has pursued lawsuits against two law firms that had provided him with assistance in his various disputes with Yale. In a matter procedurally resembling plaintiff's current dilemma in this Court, the U.S. Court of Appeals for the D.C. Circuit, in May 2003, found that plaintiff had failed to make the initial submissions required of appellants under its rules. However, in apparent recognition that plaintiff was firing his appellate counsel and possibly going forward as a *pro se*, the D.C. Circuit gave plaintiff one additional chance to comply. *See* Tab 5. Plaintiff ignored that lesson in this Court, even before the Court dismissed this appeal for a similar default months later on September 16, 2003. Moreover, a state court in Virginia, in a 2002 ruling (Tab 6), sanctioned plaintiff for $5,000 for frivolous relitigation of an earlier judgment rendered against plaintiff in federal court (Tab 7). Plaintiff is

(footnote continued . . .)

6

that experience, and his employment as a legal assistant with a large Washington, D.C. law firm, he must have been aware of the fact that his appeal was growing stale on the Court's docket while he was off litigating several other lawsuits.

Plaintiff's only real argument for reinstatement is that he (or his counsel) had no notice of the potential sanction for failure to file the forms necessary to trigger a briefing schedule in a counseled, civil case. He says that the possibility of a sanction is not mentioned in the Local Rules for the Second Circuit. But, the requirement to file Forms C and D and the sanction for not doing so are plainly stated in the Circuit's handbook entitled *How To Appeal Your Civil Case*, which the docket shows was promptly mailed to plaintiff's counsel on April 2, 2002. The requirement was even mentioned in defendant's motion to dismiss for failure to prosecute filed on June 13, 2003, as discussed above. The Circuit's handbook made clear (at page 2) that the requirement for a Form C was waived only in *pro se* cases, and plaintiff's counsel was obviously aware that this case was no longer *pro se*. Notably, the handbook mailed to counsel in April 2002 explicitly informed counsel (at page 3) that no scheduling order would be issued until the pre-argument statement forms (Forms C and D) were filed. (*See* Tab 8 – excerpts from *How To Appeal Your Civil Case*, dated 3/25/02). Thus, plaintiff was "furnished in the particular case with actual notice of the requirement," Fed. R. Civ. P. 47(b), and this Court properly sanctioned him for violating the requirement.

Plaintiff now says (without affidavit support from his former counsel) that his counsel was told at the time of his appearance that he need not file any forms.[6] But at some point over the

_____

clearly familiar with the court system and its rules and pursues cases as *he* sees fit. This Court should not countenance such continued misbehavior.

[6] When defendants moved to dismiss this appeal for failure to prosecute on June 13, 2003, plaintiff's counseled response (filed June 18, 2003) stated only that counsel was told by the
(footnote continued . . .)

following 18 months prior to the dismissal of the appeal, plaintiff and his counsel had to have realized that something was not working as it should. Nevertheless, plaintiff says nothing about any inquiry to the clerk's office or staff counsel's office to determine the reason for the long delay in obtaining a scheduling order or a notice of preargument conference. Plaintiff certainly filed no motion affirmatively asking for the issuance of a scheduling order. He was plainly content with the status quo of an appeal just languishing on the docket, unbriefed and undecided.

"Federal courts from the start have been the steadfast protectors of a defendant's right to be free from idle procrastination on the part of the plaintiff." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 665 (2d Cir. 1980). Under FRAP 3(a)(2), this Court may take any appropriate action, including the dismissal of the appeal, for an appellant's failure to take any step needed to prosecute his appeal. In a case where an appellant with counsel took no action in the appeal for twenty months, this Court categorically placed litigants on notice that "on facts showing such inexcusable neglect as we find here, an appeal will be dismissed." *Gilroy v. Erie Lackawanna R.R. Co.*, 421 F.2d 1321, 1323 (2d Cir. 1970).

There was an obvious disinterest by plaintiff in moving this appeal along and having it resolved on the merits. At some point over a period of well over one year, it should have become obvious to plaintiff (both Mr. Tibbetts and his counsel, Mr. Nugent) that no scheduling order was issued and that some intervention would be required on their part to ensure that the appeal moved forward.

---

clerk's office when he appeared in March 2002 "that a new scheduling order would be issued by the Court." This was, as plaintiff stated in that filing, in response to counsel's concern over the existing scheduling order requiring a brief to be filed in March 2002. It is notable that plaintiff's filing by his counsel did *not* say that the clerk's office told him he need not file Forms C and D.

Defendants should not be burdened with having to defend this stale appeal because it now suddenly serves plaintiff's interest to pursue it. Defendant therefore opposes the motion to reinstate. At the same time, defendant is separately renewing its motion to dismiss for failure to prosecute in the event that the Court excuses plaintiff's default under the civil appeals management plan. Regardless of whether that particular default was excusable (and it was not), it is still the case that plaintiff may not willfully ignore his own appeal for more than a year and then pursue it at his own convenience.

## **CONCLUSION**

For the foregoing reasons, the motion to reinstate the appeal should be denied. If the Court does reinstate under the civil appeals management plan, then it should grant the renewed motion to dismiss for failure to prosecute.

Respectfully submitted,

Dated: November 5, 2003

Jeffrey R. Babbin
Wiggin & Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
(203) 498-4400
(203) 782-2889 (fax)
jbabbin@wiggin.com

Attorney for Defendants-Appellees,
James Dittes, Thomas Ogletree,
Penelope Laurens, Detra MacDougall, and
Yale University (Yale Corporation and
Yale Divinity School)

## **CERTIFICATION**

This is to certify that on this 5th day of November, 2003, a copy of the foregoing was sent by first-class mail, postage prepaid, to:

> Jeffrey L. Tibbetts
> 1021 Arlington Blvd., #822
> Arlington, VA  22209

Jeffrey R. Babbin

\490\147\432201.1