UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JEFFREY L. TIBBETTS,            )
                               )
            *Plaintiff*        )
v.                             )            301CV01763 (CFD)
                               )
PRESIDENT AND FELLOWS OF       )
YALE COLLEGE, et al            )
            *Defendants*       )            December 17, 2004

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' DEFAULT AND CONTEMPT OF COURT**

Plaintiff submits this Memorandum of Law in support of a default against

Defendants JAMES DITTES, THOMAS OGLETREE, RICHARD LEVIN, and the

PRESIDENT AND FELLOWS OF YALE COLLEGE for a three-year failure to answer,

respond or plead to the complaint in this action.   In addition, plaintiff moves for a

finding of contempt against Yale and its attorneys for failure to answer a subpoena under

Rule 45(e) of the Federal Rules of Civil Procedure and false statements and subterfuge in

obstructing this Court's lawful "writ[s]" and "process[es]," in violation of 18 U.S.C. §

401(2)(3).

In support of this relief, the Court is respectfully referred to the following points

and authorities of law:

**TABLE OF CONTENTS**

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II.   **PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

III.  **FACTS THAT SUPPORT CIVIL CONTEMPT OF COURT** . . . . . . . . . . .   6

IV.    SUMMARY OF ARGUMENT ..................................    7

VI.    ARGUMENT .............................................    8

    1.    An Agency Relationship Exists Between Yale University and
          the Yale Office of General Counsel. .........................    9

    2.    Hallmark of Agency is Principal's Control Over the Agent. .......    13

    3.    Yale OGC Conducts All "Legal Affairs" for University. ..........    15

    4.    Yale OGC is the Appointed Agent For All Process. .............    16

    5.    Yale OGC Was Served With Process Under the Federal Rules. .....    23

VII.   YALE MISREPRESENTS THE 'AGENCY' OF THE OGC ............    26

    Misrepresentation No. 1: ..........................................    27

    Misrepresentation No. 2: ..........................................    28

    Misrepresentation No. 3-5: ........................................    29

    Misrepresentation No. 6-8: ........................................    31

    Misrepresentation No. 9: ..........................................    32

    Misrepresentation No. 10-11: ......................................    33

VIII.  YALE MISREPRESENTS THE LEGISLATIVE ENTITY OF THE
       PRESIDENT AND FELLOWS TO EVADE PROCESS ...............    38

    A.    Legislative History of Yale University ........................    38

    B.    The Law As It Relates to Private, Incorporated Associations .....    41

    C.    Yale Was Served With Process Under F.R.Civ.P. 4(e)(2) ...........    43

    D.    Yale Conceals The True Legislative Identity of the President
          and Fellows of Yale College. ..................................    43

IX.    YALE DEMONSTRATES CONTEMPT OF COURT ..................    48

    I     Contempt of Court: 18 U.S.C. § 401 ...........................    48

A.    YALE COMMITS THREE COUNTS OF CONTEMPT . . . . . . . . . 50

COUNT ONE:    Yale is in Contempt of Court for False Statement
              Regarding the Agency of the OGC . . . . . . . . . . . . . . . 50

COUNT TWO:    Yale is in Contempt of Court for Obstructing Process
              on "The President and Fellows of Yale College" . . . 51

COUNT THREE   Yale is in Contempt of Court for Failure to
              Comply With a Subpoena. . . . . . . . . . . . . . . . . . . . . . . 53

X.    REQUEST FOR FINDINGS OF FACT AND
      CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## I.    INTRODUCTION

Plaintiff has moved the Court to default Defendants JAMES DITTES, THOMAS OGLETREE, RICHARD LEVIN, and the PRESIDENT AND FELLOWS OF YALE COLLEGE for a willful three-year failure to answer, respond or plead to the complaint in this action.   Plaintiff has also moved the Court to find Defendant YALE UNIVERSITY in contempt of court for willful violations of 18 U.S.C. § 401 (contempt of court).   The specific violations of 18 U.S.C. § 401 are (1) False Statement Regarding the Agency of Yale's Office of General Counsel; (2) Subterfuge in Evading Service of Process on the "President and Fellows of Yale College," and (3) Failure to Comply With a Subpoena Duly Issued Under F.R.Civ.P. 45.

On September 19, 2001, plaintiff filed the instant action, *Tibbetts v. President and Fellows of Yale College*, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The instant action was filed to (1) equitably enjoin the judgment in *Dittes*, (2) seal the record containing plaintiff's previously expunged educational records under FERPA, and (3) re-open discovery in the Supplemental Actions (*Levin, Robinson,* and *Stempel*).

However Defendants JAMES DITTES, THOMAS OGLETREE, RICHARD LEVIN, and the PRESIDENT AND FELLOWS OF YALE COLLEGE have failed to answer the complaint for three years and have refused to provide lawful discovery.[1]   In evading this process, Yale and its attorneys have deliberately misrepresented the authority and agency of the Yale Office of General Counsel ("OGC").   The Yale OGC is the authorized and appointed agent for YALE UNIVERSITY, and this office is specifically charged with conducting *all* of the legal affairs of the University.   Yet, in this case, Yale and its attorneys have made false statements and engaged in fraud to disguise and cover-up this authority.   In so doing, Defendant Yale University has committed a massive legal fraud not only upon a federal court, but also upon the public trust of the State of Connecticut, and the students, faculty and alumni of Yale Community.

## II.    PROCEDURAL HISTORY

On May 14, 2002, this Court ordered the PRESIDENT and FELLOWS of YALE COLLEGE, RICHARD LEVIN, JAMES DITTES, and THOMAS OGLETREE to "show cause why they should not be held in civil contempt of court" for failure to respond to a subpoena dated March 7, 2002.   Doc. No. 27.   In response thereto, Yale and its attorneys brazenly responded that *"there is no basis for the Court to hold Richard Levin, Yale University, or for that matter, anyone else in contempt of court"* because the defendants were never served with process.   Def.'s Response to Show Cause Order ("Def.'s Resp.") Jun. 4, 2002, pg. 3.

---

[1]    On January 10, 2002, Plaintiff filed Notice with this Court that the Defendants were refusing to participate in a Rule 16 Scheduling and Discovery Conference.

On February 14, 2003, this Court heard oral arguments on the show cause order for defendants' civil contempt of court. The Court ordered Defendant Yale to answer the complaint, but dismissed the contempt of court charge because Yale *had argued that the Yale OGC was not authorized to accept service of process for the University or its employees.* Based upon this false statement, the Court found that Yale could *not* be in contempt of court because the OGC did *not* have authority to accept service of process for the university or any of its employees.

As set forth below, Yale and its attorneys have engaged in a massive fraud in covering up the Yale OGC's authority to conduct *all* legal affairs for the university. This fraud centers on a deliberate misrepresentation of the true authority and powers of the Yale OGC to act on behalf of the University. By claiming that the Yale OGC does *not* have authority to act on behalf of the university, when, in fact it *does* is a serious fraud, with conduct rising to the level of criminal contempt for violations of federal statutes.

Plaintiff herein presents irrefutable evidence that Yale's OGC is a "general agent" and has been appointed to conduct all of the legal affairs of the University, including, but not limited to, accepting service of process for its officials and employees. Yale and its attorneys have been engaged in a sophisticated "shell game" in making a federal court guess as to whether process was served on the university. Such a "shell game" and guessing strategy is unacceptable in a federal lawsuit. Yale and its attorneys have played this guessing game for over three years in derogation of well-settled law on "principal and agent" and in contempt for the Federal Rules of Civil Procedure. If, as demonstrated below, Yale has played this "shell game" with a federal court for three years, during which time Yale has successfully evaded the "writs" and "processes" issued from this

court, then the law is crystal clear: Yale and its individual defendants must be defaulted for a willful, arrogant and reckless contempt of the Federal Rules of Civil Procedure.

### III.    FACTS THAT SUPPORT YALE'S CONTEMPT OF COURT

1.    On October 8, 2001, the National Law Journal published an article on *Tibbetts v. President and Fellows of Yale College*.    The National Law Journal contacted Yale for its position on the action, and this position was reported in the article. *See* Exhibit 2 hereto.

2.    On October 17, 2001, a summons and complaint was served on the PRESIDENT AND FELLOWS OF YALE, RICHARD LEVIN, JAMES DITTES, and THOMAS OGLETREE.    Yale's Office of General Counsel ACCEPTED the service of process *without protest or challenge*.

3.    The Return of Service to this Court confirmed that said process was effected "by serving Harold Rose, General Counsel for Yale, 2 Whitney Avenue, New Haven, CT."   See Exhibit 28 hereto.

4.    On November 16, 2001, Yale *defaulted* for failing to answer or appear this action. Yale defaulted in spite of the advance notice that they had received and responded to in the National Law Journal

5.    On November 27, 2001, William Doyle ("Doyle") and Jeffrey Babbin ("Babbin") appeared for Yale and its individual defendants. *See* Exhibit 3 hereto.

6.    On December 30, 2001, Plaintiff requested the remaining Defendants waive service of process of process pursuant to Rule 4(d) of the Federal Rules of Civil Procedure ("F.R.Civ.P.").    Waiver of service of process was requested of DOTTIE ROBINSON, HAROLD ROSE, WILLIAM DOYLE, JEFFREY BABBIN, and WIGGIN & DANA.

7.    Two weeks later, on January 10, 2002, Plaintiff filed (1) Notice of Waiver of Service of Process and (2) Notice of Defendants' Failure to Participate in a Rule 26(f) Scheduling Conference. *See* Exhibits 4 and 5 hereto.

8.    On March 4, 2002, Plaintiff moved to default Defendants ROBINSON, ROSE, DOYLE, BABBIN, and WIGGIN & DANA for failure to waive service of process. *See* Exhibit 6 hereto.

9.    To date, ROBINSON, ROSE, DOYLE, BABBIN, and WIGGIN & DANA have failed to appear or plead in this action.

10.    On March 12, 2002, Connecticut State Marshal Alphonse Paolillo served a subpoena ("subpoena") on ROBINSON, Yale's General Counsel.    ROBINSON refused to accept service of the subpoena, claiming that she did not have authority to accept a subpoena on behalf of Yale University or its agents, servants or employees.    Because ROBINSON refused this service, state marshal Alphonse Paolillo wrote:  "Yale University would not accept service on behalf of Richard Levin President of Yale University." *See* Exhibit 7 hereto.

6

11.   On April 5, 2002, Plaintiff requested a show cause as to why Yale should not be held in contempt of court. Yale failed to respond. The Court ordered Yale to show cause why it should not be held in civil contempt of court. Exhibit 1 hereto.

12.   On June 4, 2002, Yale (though its counsel BABBIN) responded to the show cause order claiming they are under no obligation to comply with this subpoena-- because they were never "served" with process. Yale and BABBIN provided the following excuses for not complying with the subpoena:

(1).    "[T]he subpoena was never served." Def.'s Resp. at 2. The subpoena was "directed" to Defendant Richard Levin and therefore, it "must be served upon Richard Levin." Id at 3.

(2).    Defendants' deny that "Yale's Office of General Counsel should have accepted service for Richard Levin and that its failure to do so is, itself, an act of civil contempt." Defendants claim there "is no legal authority for that position." Thus, Yale argued that "[n]o one other than Richard Levin is required to accept service of process for Richard Levin, and no one can be held in contempt of court for refusing to accept service on Richard Levin's behalf." Id.

13.   As of the present date, three and a half years after the Yale OGC accepted service of process, Defendants DITTES, OGLETREE, LEVIN and the PRESIDENT AND FELLOWS OF YALE COLLEGE still have not appeared in this action.

## V.    SUMMARY OF ARGUMENT

Yale University and the President and Fellows of Yale College officially appointed the Yale Office of General Counsel to conduct *all* legal matters of the University. This official appointment is published in Section 13 of the Yale By-Laws. The appointment does not say the Yale OGC will conduct 'some' of the University's legal affairs; it specifically states that the OGC will conduct "all of the legal affairs" of the University. However, in the instant case, the Yale OGC has departed from its appointment from the President and Fellows, presumably as a way of avoiding the university's liability for defaults and failures to respond to summons and subpoenas.

Yale and its attorneys also argue that its governing board of the President and Fellows are *not* affiliated or associated with the name of Yale University, or if they are,

that they are a separate and distinct entity from the university itself.  This position is outright fraud, because the Connecticut Legislature has specifically passed legislation in the Yale Charter and in the amendments to the Connecticut Constitution that the President and Fellows are specifically entrusted to govern and direct all the affairs of the University, without *any* distinction between separate entities.

Thus, where it can be established that an "agency relationship" exists between Yale University and the Yale OGC, and where the President and Fellows are the principal entity and not separate or apart from the legislative "title" of Yale University, and where Yale and its attorneys have deliberately and willfully evaded writs and processes issued from this Court for over three years, without a legitimate basis in fact or the law, then Defendant Yale University is guilty of substantial fraud upon a federal court for false statements, obstruction of service process, contempt of court, and interference with the orderly administration of justice.

## VI.    ARGUMENT

### (1).    An Agency Relationship Exists Between Yale University and the Yale Office of General Counsel.

Agency is a fiduciary relationship that "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control."  Restatement (Second), Agency § 1(1) (1958) ("Restatement (2d) Agency"); *Packet Co. v. Clough*, 87 U.S. 528, 22 L.Ed. 406, 407-408 (1874) (agency requires manifestation by principal that agent will act for him and be subject to his control).  It is this element of "control" that is the "sine qua non to a principal-agent relationship." *United States v. Montreal Trust Co.*, 358 F.2d 39, 254-255 (2d Cir. 1965), *cert denied,*

8

394 U.S. 919, 86 S.Ct. 1366 (1966). As the Second Circuit emphasized clearly in *Montreal Trust*: "Agency is a legal concept which depends upon the existence of required factual elements: [1] the manifestation by the principal that the agent shall act for him, [2] the agent's acceptance of the undertaking *and [3] the understanding of the parties that the principal is to be in control of the undertaking* [emphasis original]"). Connecticut law follows this well-settled principle of agency law. *See Menzie v. Windham Community Mem. Hosp.*, 714 F.Supp. 91, 94 (D.Conn. 1991) (agency is "the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.") *quoting Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 132, 464 A.2d 6 (1983), *quoting* Restatement (2d) Agency §1.

This agency relation "*exists only if there has been a manifestation by the principal to the agent that the agent may act on his account.*" Restatement (2d) Agency § 15 (emphasis added). In creating the agent's authority--it is essential that there be "words or conduct of the principal . . . that give rise to the appearances and belief that the agent possesses authority to enter into a transaction." *Chemical Bank v. Affliated FM Ins. Co.*, 169 F.3d 121, 129 (2d Cir. 1999). The "authority" to perform a particular act can only be conferred by the specific words of the principal "directing an agent to perform acts which involve the performance of the act." Restatement (2d) Agency, § 15 (citing *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 553 (2d Cir. 1994). Thus, the principal must confer authority to the agent, and such a manifestation usually "requires a formality for its execution," in that, the contract "must be *recorded* if the transaction consummated and recorded by [the principal] is to have such effect."

9

Restatement (2d) Agency, § 30 (emphasis added); *see also United States v. Whiting Pools, Inc.*, 674 F.2d 144, 148 (2d Cir. 1982) (the agency relationship arises out of a recorded "express or implied contract between the principal and the agent"); *Columbia Broadcast Sys., Inc. v. Van Camp, Inc.*, 522 F.2d 369, 376 (2d Cir. 1975) (same).

In the case at bar, the President and Fellows of Yale College (also informally known as the "Yale Corporation") have manifested specific words and intent to create an "agency relationship" with the Yale Office of General Counsel, also informally known as the "Yale OGC." The Yale Corporation's manifestation of an "agency relationship" with the Yale OGC is both formal in nature and execution. Indeed, so central is the formality of this creation and relationship that the President and Fellows have even *recorded* and published this manifestation in the Yale University By-Laws.

The Yale University By-Laws are incorporated by reference in the Yale Charter of 1701, with subsequent legislation, enactments and amendments made by the Connecticut legislature up unto the present.[2] The Connecticut Constitution includes in Article VIII, Section 3, the "charter of Yale College, as modified by agreement with the corporation thereof, in pursuance of an act of the general assembly, passed in May 1792." Conn. Const., Art. VIII, Sect. 3. Specifically, Section 13 of the Yale By-Laws, which is incorporated in the Yale Charter and, by reference, in the Connecticut Constitution, Art. VIII, Sect. 3, provides that:

> The General Counsel shall be elected by the Corporation on nomination by the President and shall attend meetings of the Corporation. . . . *Subject to the authority of the President, the General Counsel shall have chief responsibility for conduct of all of the legal affairs of the University,* and shall in addition to the President be the sole official authorized to retain or approve the retention of

---

[2] *See generally* Brooks Mather Kelly, Yale:  A History, (Yale Univ. Press, 1974).

counsel on behalf of the University. The General Counsel shall also have responsibility for University federal relations. *The General Counsel shall perform such duties as the Corporation or the President shall specify from time to time in connection with legal and related matters affecting the University.* There may be one or more Deputy or Associate General Counsels **appointed** by the Corporation on nomination by the President to assist the General Counsel. [emphasis added].

Yale University By Laws, Section 13 (1907)[3] (hereinafter "Yale By-Laws"),[4] attached hereto as Exhibit 8 hereto.

The Connecticut General Statutes define "By laws" as the "code or codes of rules adopted for the regulation or management of the affairs of the corporation irrespective of the name or names by which such rules are designated." Connecticut General Statutes ("C.G.S.") § 33-110-2. In this case, Section 13 of the Yale By Laws unequivocally states that the General Counsel is *"subject to the authority of the President"* and that the General Counsel is responsible and appointed to conduct *"all of the legal affairs of the University."* Yale By-Laws, Sect 13, Ex. 8 hereto (emphasis added). In addition, the broad scope of this authority, the General Counsel also has "responsibility for University federal relations" and other *"such duties as the Corporation or the President shall specify . . . . [in] legal and related matters affecting the University."* *Id.* (emphasis added). Because this scope of power and authority is so broad, the President and Fellows also conferred authority for the "legal affairs of the University" to be shared by "one or more Deputy or Associate General Counsels **appointed** by the Corporation on nomination by the President to assist the General

---

[3]   The Yale By Laws were last revised in 1907, thus codifying over a hundred years of unwritten rules and practices by the University. *See* Brooks Mather Kelly, <u>Yale: A History</u>, (Yale Univ. Press, 1974), pg. 325.

[4]   "Bylaws" means the "code or codes of rules adopted for the regulation or management of the affairs of the corporation irrespective of the name or names by which such rules are designated." Connecticut General Statutes ("C.G.S.") § 33-110-2.

11

*Counsel.*"  *Id.* (emphasis added).    In this fashion, Yale By Law § 13, as a "code or codes of rules adopted for the regulation or management of the affairs of corporation" create a specific agency and fiduciary relation in the "General Counsel," to act on behalf of the University in connection with "all of the legal affairs of the University." *Id.*   Accordingly, Yale By Law § 13 authorizes "one or more Deputy and Associate General Counsels" to assist the General Counsel in conducting "all of the legal affairs of the University," and all of these attorneys who are employed by Yale are collectively referred to as the "Yale OGC."  *Id.*    In short, the Yale OGC is in-house corporate counsel for all legal affairs at Yale University.[5]

It is, therefore, an undisputed fact that the President and Fellows have conferred formal authority in the Yale OGC to conduct "all of the legal affairs of the University," and that said manifestation, in Yale By Law § 13, demonstrates all of the necessary elements for a classic legal agency relationship.  As the Supreme Court said in *General Building Contractors Assn. v. Pennsylvania,* "[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." 458 U.S. 375, 393 102 S.Ct. 3141 (1982).   The State of Connecticut has also adopted and applied this classic definition for a principal/agent relationship.  *See General Star Indem. Co. v. Anheuser-Busch Cos.,* 28 F.Supp.2d 71, 74 (D.Conn. 1998) ("Agency is the fiduciary relationship which results from the manifestation of consent of one person [Gen Star] to another [Kalmanson Agency] that the other [Kalmanson Agency] shall act on his [Gen Star's] behalf and subject to his [Gen Star's] control and

---

[5]   The Yale OGC was formally created in 1978 by then President Bartlett Giamatti with Jose Cabranes (now a judge on the U.S. Court of Appeals for the Second Circuit) as General Counsel.

consent by the other [Kalmanson Agency] so to act." ) (quoting Restatement (Second) of Agency § 1).

### (2).    The Hallmark of Agency is the Principal's Control Over the Agent.

In an agency relationship, it is the "principal" who controls or "has the right to control, the physical conduct of the [agent] in the performance of the service." Restatement (2d) Agency § 220. Agency, therefore, is created "when one person agrees with another that the other shall act on his behalf and be subject to his control." *Dixson v. United States*, 465 U.S. 482, 505, 104 S.Ct. 1172 (1983); *Logue v. United States*, 412 U.S. 521, 527 n.5; 93 S.Ct. 2215 (1973). In defining the "control factors" that verify an agency relationship, the Restatement sets forth five principal factors. These factors are as follows: (1) whether the principal has the right to direct and control the details of the agent's work, (2) whether the agent engages in a "distinct occupation or business"; (3) whether the agent employs certain "skills" for his occupation or business; (4) whether the principal supplies the "instrumentalities, tools, and place of work"; and (5) whether the agent's work is part of the "regular business" of the principal. Restatement (2d) Agency §§ 14, 220; *Kelly v. Southern Pacific Co.*, 419 U.S. 318, 324, 95 S.Ct. 472 (1974) (holding that an agent is a person "employed to perform services in the affairs of another" and who "is subject to the other's control or right to control"); *Beckstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 137 (applying same test).

The agency relationship between Yale University and the Yale OGC satisfies this 'control' test. *Dixon*, 465 U.S. at 505; Restatement (2d) Agency § 220. Applying this test to the agency relationship at hand, it becomes clear that the Yale OGC is

"employed to perform services in the affairs of another" and "is subject to the other's control or right to control." *Kelly*, 419 U.S. at 324; *Beckstein*, 191 Conn. at 137. There, as here, the Yale OGC is *"subject to the authority of the President."* Yale By-Law, § 13. Second, the Yale OGC performs only *"such duties as the Corporation or the President shall specify."* *Id.* Third, the Yale OGC engages in a "distinct occupation or business," in other words, the Yale OGC is an office of lawyers working for the interests of the University. *Id.* Fourth, the attorneys in the Yale OGC arguably employ, or should employ, certain "skills" in the specialized field of education and law. *Id.* Fifth, the University supplies the Yale OGC with the "instrumentalities, tools, and place of work." In fact, the Yale OGC is housed on the main campus of the University at 2 Whitney Ave, 6th Floor, New Haven, CT 06510. Finally, the Yale OGC performs "work" that is part of the "regular business" of the University. Indeed, the Yale OGC is instrumental in advising the university with its daily interface with federal, state and local authorities, and legal direction and counsel with the university's annual operating budget of $1.33 billion.[6] Based on an analysis of the above "control" test, it is clear that the Yale OGC has a bona fide agency relationship to conduct "all of the legal affairs" of the University. *See Polk County v. Dodson*, 454 U.S. 312, 321 102 S.Ct. 445, 451 (1981) (applying control test to determine whether attorney was an 'agent' acting under color of state law); *Leone v. U.S.*, 910 F.2d 46, 49-50 (2d Cir.) *cert denied*, 499 U.S. 90, 111 S.Ct. 1103 (1991) (applying control test to determine

---

[6] Yale University comprises 340 buildings, on 835 acres in New Haven, with a budget of $305 million for scientific research, $22.3 million for the acquisition of books and publications, and a student body of 11,126 undergraduate and graduate students. The University has eight nationally recognized research facilities, one hospital, and boasts 7,577 employees. Yale University is one of the largest employers in the State of Connecticut. *See* Yale University Office of Institutional Research (OIR): www.yale.edu/oir.

whether FAA physicians were actually agents for the FAA); *Manufacturers Technologies, Inc. v. CAMS, Inc,* 706 F.Supp. 984, 1005 (D.Conn. 1989) (holding the essential element of agency "is that the agent is doing something at the behest and for the benefit of the principal").

### (3).    The OGC Is Responsible for All "Legal Affairs" at the University.

The President and Fellows have bestowed substantial authority and responsibility in the Yale OGC to conduct "all of the legal affairs" for the University. The Restatement Second defines "authority" as "the power of the agent to affect the legal relations of the principal" which are "acts done in accordance with the principal's manifestations of consent to him." Restatement (2d) Agency § 7. To this end, when an agent has been granted broad, sweeping powers of "authority" by the principal, that agent holds:

> a power to alter the legal relations between the principal and third persons and between the principal and himself. . . . When a duly constituted agent acts in accordance with his instructions . . . he has power to affect the legal relations of the principal to the same extent as if the principal had so acted.

Restatement (2d) Agency § 12; *see also British Am. & Eastern Co. v. Wirth Ltd.,* 592 F.2d 75, 80 (2d Cir. 1979) (holding that as long as an agent "serves under the control and supervision of his principal. . . he binds him"). This one factor is *sine qua non*, the very "essence of the agency relation." *Id.* at 80; *Minskoff v. Am. Exp. Travel Servs*, 98 F.3d 703, 704 (2d Cir. 1996) (holding the authority of an agent "is the power of the agent to do an act or to conduct a transaction on account of the principal which . . . he is privileged to do because of the principal's manifestations to him.") (quoting Restatement (2d) of Agency § 7 cmt. a).

### (4).    The OGC is the Appointed Agent For Service of Process.

The President and Fellows have "appoint[ed]" the Yale OGC to be agent for all "writs' and "service of process" at the University.  The Supreme Court has enunciated a well-established technical meaning for service of process:  "Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 696, 108 S.Ct. 2104 (1988).  This explicit authority to accept service of process is conferred on the Yale OGC through the Corporation's broad mandate to conduct "*all legal affairs*" for the University.  *See U.S. v. Balanovski*, 236 F.2d 298, 303 (2d Cir. 1956) *cert denied* 352 U.S. 968, 77 S.Ct. 357 (1956) (principal's appointment "was broad and sweeping" and the "implied actual appointment to receive service of process may be readily spelled out therefrom").

Under the law of agency, when the Yale OGC accepts formal service of process in a federal or state pending action, this notice serves as actual "notice" to the principal, Yale University.  In this manner, then, a principal has actual notice[7] every time "his agent has knowledge of the fact, reason to know it or should know it, or has been given a notification of it."  Restatement (2d) Agency § 9.  Under federal law, "notice" is effective when "[t]he service of writs, complaints, summonses, etc., signifies the delivering to, or leaving them with, the party to whom or with whom they ought to be delivered or left; and, when they are so delivered, they are said to have been served." *Chemical Corp. Industrial Div. v. Basic Inc.*, 296 F.Supp. 1106, 1107

---

[7]     Under federal law, "notice" is effective when "[t]he service of writs, complaints, summonses, etc., signifies the delivering to or leaving them with the party to whom or with whom they ought to be delivered or left; and, when they are so delivered, they are said to have been served." *Chemical Corp. Industrial Div. v. Basic Inc.*, 296 F.Supp. 1106, 1107 (D.Conn. 1968).

(D.Conn. 1968). Thus "notice to, or knowledge of, an agent while acting within the scope of its authority and reference to a matter over which his authority extends, is notice to, or knowledge of, the principal." *Kmart Corp. v. First Hartford Realty Corp.*, 810 F.Supp. 1316, 1329 (D.Conn. 1993) (*quoting West Haven v. United States Fidelity & Guaranty Co.*, 174 Conn. 392, 395, 389 A.2d 741 (1978)).

In accordance with the broad mandate to conduct "all legal affairs" for the University, the Yale OGC routinely accepts "service of process," which is either directed to the University or any of its officials, servants or agents. A search of the U.S. National Archives and Records Administration, for the District of Connecticut, reveals that the Yale OGC has accepted *at least 47* instances of "service of process" on behalf of Yale University, and its related entities and employees, within the past twenty years. A compilation of these archived records clearly demonstrate that the Yale OGC has the "authority" to accept "service of process" on behalf of Yale University, and any of its officials, servants or employees. These federal archives show as follows:

1.      On January 2, 1985, in <u>Cimino v. Yale University</u>, Sheriff Healy served process on William Stempel ("Stempel"), Yale OGC, and affirmed under oath that:

> I left with William D. Stempel Associate General Counsel accepting service on behalf of the following defendants, Yale University, Frank Ryan, Kenneth Kavanaugh, Joseph Festa, Richard Dorfman, "John" Cappiello, Matt Jankowski; seven (7) true and attested copies of the original Writ, Summons, & Complaint with my doings thereon endorsed.[8] [Exhibit 9 hereto].

2.      On March 24, 1986, in <u>Stephandis v. Yale University</u>, Deputy Sheriff Maruro served a subpoena for "THE PRESIDENT OF YALE UNIVERSITY" on

---

[8]      Defendant Frank Ryan is Deputy Administrator for Yale's General Accounting Department. Defendant Richard Dorfman is a detective with the Yale Police Department. Kenneth Kavanaugh, Joseph Festa, John Cappiello, and Matt Jankowski were employees of the Yale University Athletic Facility.

"Dorothy Robinson, Attorney at Law and person authorized to accept service for Yale University." *See* Exhibit 10 hereto.    Defendant Robinson accepted the subpoena on behalf of the President of YALE UNIVERSITY.    Three years earlier, on February 10, 1983, the summons and complaint in this action were filed upon the Yale OGC "by leaving with and in the hands of Lindsey Kiang, General Counsel," who "signed and accepted service, a true and attested copy of the original Summons, Complaint and Motion for Other Relief, and Exhibits with my endorsement thereon." *See* Exhibit 10 hereto.

3.    On December 12, 1991, in <u>Abramski v. Yale University School of Medicine</u>, Deputy Sheriff George Salerno served process on Virginia Roddy, Yale OGC, and affirmed under oath that:

> By virtue of this original Civil Summons and Order, I served the within named YALE NEW HAVEN HOSPITAL, YALE UNIVERSITY SCHOOL OF MEDICINE, and DR. DAVID F. DENNY by leaving three true and attested copies hereof with and in the hands of Virginia Roddy, its attorney, who accepted service for said defendants and who is duly authorized and empowered to do so, with my endorsement thereon. [Exhibit 11 hereto].

4.    On December 12, 1991, in <u>McGrath v. Yale University</u>, Deputy Sheriff Panagrossi served process on Stempel, Yale OGC, and affirmed under oath that:

> I served the within named defendant(s), Yale Corp./University; Yale University Library; Gerald R. Lowell; Monty Montee; Cynthia Crooker by leaving with and in the hands of said defendant(s), William D. Stempel, Esq., Deputy General Counsel for Yale University accepting service for Yale Corp./University, Yale University Library, Gerald R. Lowell, Monty Montee, [and] Cynthia Crooker[9] [Exhibit 12 hereto].

5.    On September 23, 1991, in <u>Demars v. Yale University</u>, legal process was served on DOROTHY ROBINSON, Yale OGC, who affirmed under penalty of perjury

---

[9]    Defendant Gerald R. Lowell was Associate Librarian for Technical Services; Defendant Monty Montee was Head of Library Processing Services, and Cynthia Crooker, Assistant Manager for Library Acquisitions.

that she was "authorized" to accept service of process on behalf of Yale University and Alison Richard, Dean of the Yale Graduate School. *See* Exhibit 13 hereto.

6.    On November 3, 1993, in <u>Dixon v. Yale University</u>, U.S. Deputy Marshal Whitfield served Ken Miller, Yale OGC, by leaving "in the hands of Ken Miller" a summons and a complaint for Yale University and Charles Barber, Sergeant with the Yale Police Department. *See* Exhibit 14 hereto.

7.    On November 3, 1993, in <u>FDIC, Housatonic Bank & Trust v. Lewis</u>, Deputy Sheriff Miller served process on Caroline Hendel, Yale OGC, "by leaving with and in the hands of Caroline Hendel, Associate General Counsel," who was "duly authorized to accept service and who accepted" the aforesaid process. *See* Exhibit 15 hereto.

8.    On September 20, 1994, in <u>Tinsley v. Yale University</u>, a Deputy Sheriff Robert Miller served process on John Clune, Yale OGC, by delivering into "the hands of John Clune, General Counsel," a person duly "authorized to accept service for the within named Defendant Yale University." *See* Exhibit 16 hereto.

9.    On August 1, 1995, in <u>Jakovenko v. Yale University</u>, Caroline Hendel, Yale OGC, waived service of process for Yale University including Esther Bauman (Administrator, Yale Dermatology Dept.), Patrice Nelson (Operations Manager, Yale Alumni Affairs), and Douglas Hawthorne (Director of Support Services, Yale Alumni Affairs). *See* Exhibit 17 hereto.

10.    On September 15, 1995, in <u>Diamond v. Yale University</u>, Process Server Donna Sawicki served Kenneth Miller, Yale OGC, by delivering a summons into the

hands of "Kenneth Miller, Associate General Counsel, 451 College Street, New Haven, Ct." *See* Exhibit 18 hereto.

11.    On September 26, 1995, in <u>Tibbetts v. Dittes</u>, Process Server Robert Brakeman served William Stempel, Yale OGC, "by delivering and leaving the documents with William D. Stempel, Deputy General Counsel, at his usual place of business at Yale University, 451 College Street, New Haven, CT  06520."[10]  *See* Exhibit 19 hereto. Stempel accepted service of process for the President and Fellows of Yale College (a/k/a Yale Corporation), Detra MacDougall (Registrar at the Yale Divinity School ("YDS")), THOMAS OGLETREE (Dean of YDS), James Garrett (Admissions Director at YDS), Penelope Laurans (Director of the Yale Summer School), Harry Adams ("Adams") (Acting Dean of YDS), Dwayne Huebner ("Huebner") (Academic Dean of YDS), and JAMES DITTES (YDS Professor).  The accompanying affidavit by the process server affirmed under oath that:

> Upon entering Mr. Stempel's office, I informed him that I had Summons and Complaints for eight defendants all concerning Yale University.  As Mr. Stempel looked over the documents, he stated that he was the person to receive service of process for these entities and would pass them along.
> There was no discussion that Mr. Stempel would accept service for some defendants, and not others.  Mr. Stempel reviewed all eight Summons and Complaints and said that he "would take care of it."  Mr. Stempel then signed his business card to show that he was accepting the service, and the eight Summons and Complaints were left in his possession and custody. [Exhibit 20 hereto].

12.    On January 5, 1998, in <u>Tibbetts v. Levin</u>, Sheriff Kinney served process on Defendant Robinson and William Stempel, by leaving process "with and in the hands of" both ROBINSON and STEMPEL. *See* Exhibit 21 hereto.  The Court's attention is

---

[10]    A central issue is <u>Tibbetts v. Dittes</u> is whether Stempel committed fraud by filing an affidavit stating that he accepted service of process for Huebner and Adams in their "official capacities" as agents of the University, but not their individual capacities, and where the university then used this affidavit to vacate a default against Huebner and Adams in both capacities.

drawn to the fact that process was *not* served on "Yale University," but despite this fact, on January 26, 1998, an appearance was *still* entered for "Yale University (a/k/a Yale Corporation)." *See* Exhibit 22 hereto.

13.    On January 5, 1998, in <u>Tibbetts v. Stempel,</u> Sheriff Kinney served process on STEMPEL and ROBINSON at the Yale OGC. *See* Exhibit 23 hereto. The Court's attention is again drawn to the fact that process was *not* served on "Yale University" or the "Yale Corporation," but again, on January 26, 1998, an appearance was entered for defendant "Yale University (a/k/a Yale Corporation)." *See* Exhibit 24 hereto.

14.    On January 5, 1998, in <u>Tibbetts v. Robinson,</u> Sheriff Kinney served notice on ROBINSON and STEMPEL at the Yale OGC. *See* Exhibit 25 hereto. Again the Court's attention is drawn to the fact that process was *not* served on Yale University or the Yale Corporation, but an appearance was nevertheless entered for defendant "Yale University (a/k/a Yale Corporation)." *See* Exhibit 26 hereto.

15.    On March 29, 2001, in <u>Tibbetts v. Yale Corporation,</u> in the U.S. District Court for the Eastern District of Virginia, State Marshal Horton served "the Yale General Counsel's Office," by leaving the complaint and summons "with and in the hands of Caroline G. Hendel, who stated she was authorized to accept service in her capacity of Assistant General Counsel for Yale University." *See* Exhibit 27 hereto. Hendel accepted service of process for the PRESIDENT AND FELLOWS OF YALE COLLEGE (a/k/a Yale Corporation), Joseph Mullinex (Yale Director of Finances), DOROTHY ROBINSON (General Counsel and Vice President of Yale) and William Stempel (Deputy Gen. Counsel). Marshal Horton also served *"RICHARD C. LEVIN, by leaving with and in the hands of DOROTHY ROBINSON, who stated she was authorized to*

*accept service for RICHARD C. LEVIN, individually and in his official capacities.*" *Id.*
*See* Exhibit 27 hereto (emphasis added).

18.    On October 17, 2001, in *Tibbetts v. President and Fellows of Yale College*, a process server process for Defendants LEVIN, DITTES, OGLETREE and THE PRESIDENT AND FELLOWS OF YALE COLLEGE, by "serving Harold Rose, General Counsel for Yale, 2 Whitney Ave., New Haven, CT." Exhibit 28 hereto.

19.    In addition to the numerous instances of service of process on the Yale OGC, the attorneys of the Yale OGC have demonstrated their authority to "bind" Yale University and its officials, employees and agents in all manner of legal instruments. For example, Rodney Page, partner with Arent, Fox, Kintner Plotkin and Kahn (plaintiff's attorney in 1994), affirmed that the Yale OGC entered into a "tolling agreement" on behalf of Yale's "employees, including faculty and staff, as well as Yale itself." Exhibit 29 hereto.   Mr. Page further affirmed that the:

> "tolling agreements. . . referred not only to Yale but to any of its agents, as well.
> At no time did Yale's counsel indicate to me that agreements on behalf of the
> University were not intended to bind its employees." *Id.*

Similarly, Alan Neigher, partner in Byelas & Neigher (plaintiff's attorney in 1994), affirmed in an affidavit that on December 14, 1994, he contacted "William Stempel, the Deputy General Counsel for Yale University, for an extension to the Tolling Agreement between plaintiff and Yale University.  Mr. Stempel agreed on behalf of Yale to extend the Tolling Agreement to January 18, 1995." Exhibit 30 hereto.  Mr. Neigher further affirmed that Dorothy Robinson, Yale's General Counsel, and William Stempel, Yale's Deputy General Counsel, *"represented that they were appearing on behalf of YDS and all of its employees"* and that "*at no time between December 1994 to April 1995 did*

22

*Ms. Robinson or Mr. Stempel ever state, either in person or in writing, that they were not the attorneys for each and all of the Yale professors named as defendants." Id.*

In conclusion, as demonstrated *supra*, the Yale OGC clearly has authorization to conduct *"all of the legal affairs"* of the University, which includes, but is not limited to, accepting "service of process" and "bind[ing]" the University and its officials, employees and servants.

At issue in this case, then, is why did the Yale OGC *accept service of process* for Defendants JAMES DITTES, THOMAS OGLETREE, RICHARD LEVIN, and the PRESIDENT AND FELLOWS OF YALE COLLEGE, and thereafter make a "general appearance" for these defendants on November 27, 2001--only to later claim that these defendants *"were never served with process"* and that the court has no *"jurisdiction"* over these defendants?    This conduct is not only bizarre, but Yale's supporting arguments contradict well-settled law on agency and service of process under the Federal Rules of Civil Procedure.

### (5).    Yale Was Served With Process Under F.R.Civ.P. 4(e)(2)

Under the Federal Rules of Civil Procedure, personal service on an individual is effected by "delivering a copy of the summons and of complaint to an agent authorized by appointment or by law to receive service of process." F.R.Civ.P. 4(e)(2).   In instances where process is served under F.R.Civ.P. 4(e)(2), federal courts look to the "circumstances of the agency relationship" and expect to find an "actual appointment by contract for the specific purpose of receiving process."  Wright & Miller, <u>Fed. Prac. and Proc.</u>: Civil 3d § 1097.   And if service is effected upon an agent, "a court must look to

the accompanying circumstances" to establish that agency relationship.     *Columbia Broadcasting, Sys., v. Van Camp, Inc.*, 522 F.2d at 369, 376 (2d Cir. 1975).

In the case at bar, service was made upon the Yale OGC *in the same manner that process has been routinely effected upon Yale University for the past twenty years.* The U.S. Supreme Court has unequivocally held that the simple act of accepting service of process by an implied or express agent, even without an explicit promise to do so, is sufficient to validate agency and confer valid service of process.[11]     *Nat. Equip. Rental, Ltd., v. Szukhent*, 375 U.S. 311, 316 84 S.Ct. 411 (1964) ("The principal's authorization may neither expressly nor impliedly request any expression of assent by the agent. . . and in such a case any exercise of power by the agent within the scope of the authorization, during the term for which it was given, or within a reasonable time if no fixed term was mentioned, will bind the principal.") (citing 2 Williston on Contracts (3d ed. 1959), § 274). In this seminal case, the Supreme Court concluded that process served on "an agent authorized by appointment" constituted effective service as long as there is an actual "appointment" of the agent, 375 U.S. at 314; and the agent "prompt[ly] accept[s]" and transmit[s]"the process to the principal, which, itself, is "sufficient to validate the agency." *Id.* at 316.  In short, "any exercise of power by the agent within the scope of the authorization, during the term for which it was given . . . will bind the principal." *Id.* at 316; *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1317 (2d Cir., 1973) (exercise of power by an

---

[11]   The 1993 amendments to the Federal Rules of Civil Procedure moved the text of Rule 4(d)(1) to Rule 4(e)(2). *See* Committee Note to 1993 Amendment to Rule 4. Thus, case law referring to former Rule 4(d)(1) is equally applicable to Rule 4(e)(2).

agent "for service of notice and process" binds the principal); *Reed & Martin, Inc. v. Westinghouse Electric Corp.*, 439 F.2d 1268, 1276-77 (2d Cir. 1971) (same).

In the instant case, *President and Fellows of Yale College*, service of process was effected by serving Defendant HAROLD ROSE, Assistant General Counsel in the Yale OGC, *"an agent authorized by appointment"* to receive service of process. *See* Exhibit 28 hereto. Under the Supreme Court's analysis in *National Equipment Rental*, the two-prong test to effect service of process upon an agent was satisified by serving the Yale OGC. First, there is an actual "appointment," 375 U.S. at 314, and second, there is "prompt acceptance and transmittal" of process to the principal. *Id* at 316. The evidence of the "transmittal" by the Yale OGC to the principal is clear because *these Defendants entered an appearance before this Court on November 27, 2001. See* Exhibit 3 hereto. Thus, under the Supreme Court two-prong test set forth in *National Equip. Rental,* the evidence is overwhelming that valid service of process was effected on HAROLD ROSE under F.R.Civ.P. 4(e)(2), where ROSE is (1) an "appointed agent" of the Yale OGC who is authorized to accept process on behalf of Yale University and its employees, and (2) where ROSE promptly "transmit[ted]" this process to his principal, wherein Yale University then entered an appearance before this Court. *See* 375 U.S. at 315-16. Hence service of process upon ROSE, as an appointed "agent" for Yale, satisfied the two-prong test for valid service under F.R.Civ.P. 4(e)(2) for Defendants JAMES DITTES, THOMAS OGLETREE, RICHARD LEVIN, and the PRESIDENT AND FELLOWS OF YALE COLLEGE. *See Boateng v. Inter-American University*, 188 F.R.D. 26, 29 1999 (service of process is effective under Rule 4(e)(2) if the agent was appointed to accept service of process);

*Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997) (service on appointed agent was "governed" by terms of contract); *Pinto v. Connecticut Dep't of Environmental Protection*, 1988 U.S. Dist. Conn. LEXIS 4375 at * 11 (service of process "satisf[ied]" under Rule 4(e)(2) where sheriff affirmed he "delivered" a copy of the process "to the authorized agent of defendant"); *LaPointe Indus. v. Model Engg. & Mfg. Corp.*, 1963 U.S. Dist. Conn. LEXIS 10406 at*1 (service is effective where the defendants "actually appointed an agent to receive process in Connecticut").

Even assuming, *arguendo*, that Yale felt bold enough to challenge service under F.R.Civ.P. 4(e)(2), it could still be demonstrated that valid process was served under its sister rule, Rule 4(e)(1). This Rule allows for service to be effected in any judicial district "pursuant to the law of the state." Accordingly, under C.G.S. § 52-57(c), "in actions against a private corporation, service of process shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent." C.G.S. § 52-57(c) (West 1997). Thus, under either of these two Rules, service was properly effected on ROSE, as Yale's "appointed agent." *See*, e.g., *Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963) (affirming valid process served on "corporate agent" under state law).

## VII.    YALE MISREPRESENTS THE AGENCY OF THE OGC

Having established that Defendant ROSE is an "appointed" agent for the University, and that he was properly served with process as "an agent" under F.R.Civ.P. 4(e)(2), we now turn to the false statements and misrepresentations propagated in this