UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

2005 JAN 28  A 11: 23

U.S. DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| JEFFREY TIBBETTS,<br>        Plaintiff | ) | |
| | ) | |
| v. | ) | No. 301-CV-1763 (CFD) |
| | ) | |
| PRESIDENT & FELLOWS<br>OF YALE COLLEGE, ET AL,<br>        Defendants | ) | |
| | ) | January 28, 2005 |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF A
## RULE 59(e) MOTION TO AMEND OR ALTER JUDGMENT

In support of the Plaintiff's Motion to Amend and Alter the Judgment in the above-captioned action, the Plaintiff respectfully shows the Court the following facts and authorities of law in support of relief from the judgment rendered in Tibbetts v. Dittes (395CV00995), pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure.

### GROUNDS FOR RELIEF

1.      Rule 60(b)(1) "authorizes the court to give relief from judgment, order, or proceeding for 'mistake, inadvertence, surprise, or excusable neglect." Wright & Miller, *Federal Practice & Procedure*, Civil 2d § 2857 at 264.   The authority to give relief granted by Rule 60(b)(1) has been exercised in a wide variety of cases to include:  "mistake or excusable neglect of a party not represented by counsel"[1] or "unable to communicate with counsel,"[2] or where judgments were "entered because of the failure of a party to appear at trial,"[3] or were

---

[1]      *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) (not represented by counsel); *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156 (6th Cir. 1980) (same).

[2]      *Vindigni v. Meyer*, 441 F.2d 376 (2d Cir. 1971) (unable to communicate with counsel); *Russell v. Cunningham*, 279 F.2d 797 (9th Cir. 1960) (same).

[3]      *Denman v. Shubow*, 413 F.2d 258 (1st Cir. 1969) (failure to appear).

"they were based on a misunderstanding about appearance and representation by counsel,"[4] or which resulted "from confusion over the trial date,"[5] or "because of confusion about the procedural posture of the case."[6]   Wright & Miller, § 2857 at 265-268 (collecting cases).

2.    In the instant case, plaintiff is entitled to relief under Rule 60(b)(1) for the same reasons relief was granted in the case law cited above.   Specifically, in this case, equitable relief is appropriate (1) where the court compelled a trial without the presence of plaintiff's counsel and plaintiff was "unable to communicate with counsel" during this trial, (2) where defendants failed "to appear at trial," (3) where there was "confusion about the procedural posture of the case" due to a pending Writ of Mandamus before the U.S. Court of Appeals for the Second Circuit, and there were outstanding discovery requests and substantive motions pending before the court almost until the eve of trial, and (4) where the court at trial reviewed the evidence for the first time in this case and made a number of surprise evidentiary rulings which did not allow either party to properly present evidence or witnesses, or even know what claims would be heard at trial.

3.    As noted above, plaintiff was represented by Virginia counsel, Rodney Sweetland ("Sweetland") and Joel Mandelman ("Mandelman").   Both Sweetland and Mandelman had been recently retained and both said that they could not try the case on such short notice on January 18, 2000.   Both Sweetland and Mandelman filed the Writ of Mandamus with the U.S. Court of Appeals for the Second Circuit, and no word had been heard from the appellate court as of January 18, 2000.   Procedural confusion was even further enhanced because plaintiff still had

---

[4]    *U.S. v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d 909 (7th Cir. 1983) (misunderstanding about appearance of counsel); *United Coin Meter Co.*, 705 F.2d 839 (6th Cir. 1983) (same).

[5]    *Ellingsworth v. Chrysler*, 665 F.2d 180 (7th Cir. 1981) (trial date confusion).

[6]    *Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992) (procedural confusion); *Carl Marks & Co. v. Union of Soviet Socialist Republics*, 665 F.2d 26 (2d Cir. 1988) (same).

a number of pending motions for a continuance of the trial date so that Sweetland and Mandelman could review and prepare the case for trial in an organized manner under the Federal Rules of Civil Procedure.

4.      The "confusion" and "surprise" in this trial occurred as a direct result of the court's failure to hold a pretrial conference under Rule 16 of the Federal Rules of Civil Procedure.   A pretrial conference, under F.R.Civ.P. 16, is a judicial convention  used to improve the quality of trial and avoid the possibility of unfair surprise or prejudice by either party.   In this case, however, with a number of evidentiary and substantive filed between the parties, the court simply ignored the disputes and instead set this trial "for the next available jury selection," without any attempt whatsoever to prepare the case for submission to a jury and minimize the possibility of "unfair surprise" or prejudice to the parties.

5.      Because the court had failed to hold a pretrial conference, the parties (1) did not know what, if any, evidence would be admitted at trial, (2) did not know what additional evidence would still be produced (depositions and requests for admissions) for trial, (3) did not know what claims would be consolidated from similar pending cases, and (4) did not know which of the plaintiff's four claims in the instant case would actually be heard by the jury.   In short, the lack of a pretrial conference assured that the instant trial would be full of last minute and unfair surprise and prejudice to both parties.

6.      Notwithstanding the court's failure to hold a pretrial conference to reduce any unfair surprise and prejudice to the parties, the court waited until three days before the eve of trial to rule on a number of outstanding discovery and substantive issues--which should have been resolved in a organized judicial fashion through a pretrial conference.

3

7.      In addition to the above uncertainty about the "procedural posture" of this case, and whether a trial would even go forward, an extraordinary step of a Writ of Mandamus had been filed against the trial judge in this case, and this matter was pending before the U.S. Court of Appeals for the Second Circuit, which could compel the court to act in reasonable and judicious manner and ensure that steps had been properly taken to prepare this case for trial.

8.      As a result of the court's unconventional preparation, the following surprise and confusion ensued at trial:

- the court was confused about what the defendants had produced and what documents were in the defendants' business and educational records;

- the defendants failed to appear for trial or examination;

- the court declined to subpoena the defendants for trial;

- plaintiff's counsel was not able to appear for trial;

- the court denied plaintiff a continuance so that his witnesses and experts could testify at trial;

- the court admitted 10% of defendants' records, while suppressing over 90% of the remainder of the defendants' records on arbitrary evidentiary grounds; and

- the court threatened to have the plaintiff thrown in jail if he continued to complain about the unfairness of this trial.

9.      As a result of such extraordinary set of circumstances, which can only be viewed *en toto*, both parties were unfairly surprised. Plaintiff was prejudiced in not being able to authenticate evidence without his counsel. And the defendants simply failed to show for trial, while the court declined or refused to subpoena them for examination at trial. Meanwhile, defendants' counsel kept requesting a "mistrial" because the court had "suspended" the rules of evidence.

4

10.    A review of the transcript demonstrates the confusion and surprise that characterized this trial.    This surprise and confusion was evident throughout the opening, evidence, testimony, and closing argument.  Defendants' counsel claimed the plaintiff's testimony was a clear violation of Rule 602 of the Federal Rules of Evidence.   The court struck 90% of the records from the plaintiff's education record at the last minute.  And the court even allowed defendant's counsel to comment and testify on matters in the closing argument that were not addressed evidentiary portion of the trial.

11.    There could not be a more confusing and chaotic trial.   It is impossible to correlate what evidence the jury finally heard with the claims that the plaintiff was trying to establish.  The plaintiff pro se had no trial or evidentiary experience whatsoever.

12.    A review of the trial transcript shows a number of instances of surprise and confusion at trial.   These instances are set forth below as follows:

## I.    **FIRST DAY OF TRIAL**

### I(1).   **Court Compels Plaintiff to Conduct a Trial Without the Assistance of Counsel**

MR. TIBBETTS: Morning, ladies and gentlemen of the jury.   Your Honor, before we start trial, as you know, I filed a motion for a continuance.

THE COURT: Sir, anything with respect to motions I'll happily take it up at the first recess, sir. We got the jury in here, this is our evidentiary time.  If there's some legal matter to be raised, I'll take it up at the first recess.

MR. TIBBETTS: Your Honor, I'm not an attorney.

THE COURT: Okay.

MR. TIBBETTS: I've asked for an attorney to be representing me at this case. I have retained counsel, as you know, in Virginia and Connecticut.

THE COURT: Sir, why don't we leave this for a legal argument really. The jury shouldn't be hearing legal argument.   This is the evidentiary portion of the trial now, and we're ready to present evidence to our jury

MR. TIBBETTS: Your Honor, I'm not qualified to present evidence. I am represented by counsel. I've done everything . . . . counsel has filed affidavits with the Court saying that they can try this case, and I've made it very clear in my pleadings cannot try this case. . . . I spoke with counsel this morning, and they said that I could represent to the Court that I am in fact represented by counsel.

MR. DOYLE: Your Honor, may I request that any argument be done outside the presence of the jury?

THE COURT:   Are you sure you don't want to get up here and tell us, tell these people your story, what has happened here?

MR. TIBBETTS:   I would love to tell them my story.   I have been asking to tell my story for five years now, Your Honor.

THE COURT: Now's the time.

MR. TIBBETTS:   But my question is, once I start to tell my story — I can't present my evidence. I've said that I don't have the witnesses available for this date to be able to present to the jury, and we haven't had a chance to talk about evidentiary issues between myself and defendant's counsel. . . .   I mean these are important issues that I have tried to raise with the Court prior to the jury being empanelled.

Your Honor, I am at a loss for words. It's like a nurse in an OR being asked to perform surgery. I can't. I'm not qualified at this point to go forward. I'll be happy to talk about what happened here.

THE COURT: Sure, why don't you. That would be my suggestion. We'll have you sworn and tell these people what has happened.

MR. TIBBETTS: Your Honor, do we then talk about the motion for continuance afterwards?

THE COURT: Sir, that's been dealt with. That's been dealt with many times.

MR. TIBBETTS: I've asked for it twice.

THE COURT; I don't want to compromise your situation in front of these people. Just tell your story here.

MR. TIBBETTS: This is an impossible situation, Your Honor. I don't have the witnesses. I've said that I'm represented by counsel.   There's still issues -- I've asked to amend my complaint, numerous times. The complaint that you have addressed to the jury is not the one, based upon the evidence, that can be presented here.   Your Honor, I'm at my knees right now. I don't know what else to do.

6

THE COURT:  I'm not trying to be difficult, sir. You brought this action in court, it's been five years, we've assembled the jury for you. Now is the time.  In other words, in order to obtain relief, you have to tell these people what has happened.

MR. TIBBETTS: Can we talk about the motion for continuance after I tell them? Because I-

THE COURT: I will happily take up any legal matters whatever at a recess, but now is the time that these people are in here, I want to occupy the time. . . . Sir, why don't you come up here and get in our witness box. [Tr. 11-15]

### I(2).  <u>Plaintiff Continuously Requests Assistance of Counsel After Opening</u>

MR. TIBBETTS:      Your Honor, I am under medication, and I informed he Court that I'm under medication. I'll do my best to try and explain what happened here . . . . My dispute with the University is that this professor contacted my home church, the Presbyterian Church in Washington, D.C., and told the members of this church, without telling me, that --

MR. DOYLE:  Your Honor, in order to protect my client's rights, I want to register a continuing objection to this narrative, to this really opening and closing argument. This is not evidence.

MR. TIBBETTS:      Your Honor, I said I'm not an attorney. I'm doing the best I can. [Tr. 17-18]
--------

MR. TIBBETTS:  These are some of the issues that you will hear presented this morning.   Again, I am not an attorney. I wish that I could present this in a more objective fashion, but I have been living this for so long, it's difficult for me to try and present it to you objectively. And I wish that counsel would present it to you objectively, and be able to prove by evidence, by a preponderance of the evidence, that what I have said right now, as the Plaintiff in the matter, can be proven. I don't know what else to say your Honor. [Tr. 23: 11-19]

-----------------

MR. TIBBETTS:  Your Honor, I don't know how to try a case. I don't understand how to proceed at this point. . . . That's why I need counsel to do this. [Tr. 25: 10-19].

--------

THE COURT:  Do I take it sir, that you don't have any further evidence at this time?

MR. TIBBETTS:  I don't know how to present the evidence at this time. I thought the evidence was already presented. And on top of that, Your Honor, I never imagined that I was actually going to be trying this case. I am represented by counsel. I want counsel to be able to do it. I cannot under the medication that I'm

under now be able to present this case in a rational, coherent fashion. [Tr. 26: 4-11].

------

MR. TIBBETTS:  And again, Your Honor, I mean, there's discovery that I've asked so that this case can proceed. . . . I had asked for . . . counsel so that this case could be presented and do justice in this case.

My concern, Your Honor, is that I am simply too close and emotionally involved in the case to be able to present it to the jury. . . . but whatever I present, I'm not going to be able to do a decent job.  I don't know anything about evidence, Your Honor. . . . Nonetheless, counsel has said – I do have counsel that says that they want to try this case, . . . I'm simply asking for a fair trial, Your Honor.  I want counsel to be able to present this.  We need time to prepare this.

We should be able to proceed smoothly along so that the jury can hear the entire case and decide upon the merits.  That's not going to happen here.  The entire focus is on me, Your Honor, as a pro se plaintiff who does not know what he's doing. . . .

All I ask, Your Honor, is counsel review these amendments, and they be presented so that you can preside at this trial and not have to deal with a circus-like environment here, Your Honor.  I want to preserve the dignity of this hearing.  I want to preserve everything that the jury can hear so that they can hear the case on the merits.  And Your Honor, I simply ask under the circumstances -- I don't know how else to proceed.  I will be asking you questions every step along the way.  I don't know how to try the case[.]

THE COURT:  . . . . Okay, well, your motion for a – your further motion for a continuance is denied, sir.  [Tr. 28 –Tr:34]

----------

MR. TIBBETTS:  What is going before the jury right now is every document from Yale University.  How can that possibly establish my case?  *Your Honor, I want counsel.  I demand counsel here.  I have been demanding counsel all day long.*  [Tr. 65: 3-6].

--------

MR. TIBBETTS:  Well, Your Honor, correct me if I'm wrong, but this is a case about defamation, about my reputation . . . . You're asking about relevance.  What we're trying to establish here, *and what could have been established if counsel had been able to make the arguments*, and if we had allowed the depositions to have gone forward so that a reasonable trial could have happened here.  [Tr. 65-66: 2-8 emphasis added].

----------

THE COURT:  Tell me, are you agreeing or not?

MR. TIBBETTS:  I don't know know what I'm agreeing to, Your Honor.  I mean this - - *I'm asking for counsel.*  We're dealing with -- [Tr. 70:17-20]

----------

THE COURT:   Sir, did you want to point out or make specific reference to the reason why you perceive that nay of those documents proposed to be excluded are admissible?

MR. TIBBETTS:   That's an evidentiary, Your Honor. I am not an attorney. I don't know the rules of evidence. I don't have a clue as to why or what rule of evidence they should be included. If everything is excluded, if all of these documents are excluded, I have no case. There is nothing being presented to the jury that makes my case. *There is nothing being presented to the jury that makes my case.*

THE COURT:   All right. So then all of those evidentiary determinations can stand. [Tr. 77-78].

----------

MR. TIBBETTS:   I submitted everything that I can at the moment. I wish that I had counsel to be able to present it for me so that it would be presented properly. [2 Tr. 1-4].

------------------

THE COURT:   All right. Do you want to comment, Mr. Tibbetts?

MR. TIBBETTS: *First of all, Your Honor, as you know, I'm not an attorney, and these are the kind of arguments my attorney should be making. These are important arguments, and I would like to have counsel make the arguments for the Court to make a ruling on it.* [2 Tr. 28:17:21]

--------------

MR. TIBBETTS:   Well, Your Honor, we're talking about the discrepancy, which deals with my Navy log. We know there were charges.

THE COURT:   If you want to read from the exhibit, by all means, sir, but try not to embellish, please.

MR. TIBBETTS:   Okay. Again, I'm not an attorney. I'm doing the best that I can. [2Tr. 51: 5-10]

13.    As a result of the above, the first impression that the jury acquired of this case is that (1) plaintiff is "represented by counsel" but that this counsel was not present, (2) that plaintiff did not feel "qualified" to present evidence in this case, (3) that plaintiff felt this was an "impossible situation" without any witnesses, counsel or defendants present, (4) that plaintiff

doesn't "know what else to do," and (5) that despite this unfair surprise and obvious prejudice to the plaintiff, that the court nonetheless compelled the plaintiff to continue with the trial and do the best he could under the circumstances. These themes of *unfair surprise, prejudice, lack of counsel, and unfair lack of evidence and witnesses* continued throughout this trial.

### I(3).    Court Surprises Both Parties By Compelling Plaintiff's Testimony in Violation of Rule 602 of the Federal Rules of Evidence.

14.    After this surprising opening and the jury's first impression of this case, the court then compelled the *pro se* plaintiff to give testimony on the witness stand, which arguably violated Rule 602 of the Federal Rules of Evidence ("FRE"). In addition to this evidentiary violation, the jury witnessed defendants' counsel constant interruption of the plaintiff's testimony, which only lasted approximately 10-14 minutes. The opening statement is reprinted here in full for full effect of the surprise element in this trial:

### I(3)(A)        Court Compels Plaintiff's Testimony in Violation of FRE 602

MR. TIBBETTS:  Good Morning. . . . I'm at a complete loss as to where to begin. . . . Nonetheless, I will go ahead and explain to you as best I can what transpired and what in this cause of action that has brought you here this morning and is the contention between myself and the university.

MR DOYLE:  Your Honor, please, I'm going to object to any running narration and would ask that—

THE COURT:  I was simply trying to find it, sir. You must have something that you must to say to this jury, so why don't you go ahead and say it, and we'll reserve the comment with respect to legal comment with respect to legal arguments until the jury has left for recess.

MR. DOYLE:  Your Honor.

THE COURT:  So tell us what happened.

MR. DOYLE:  Your Honor, may I ask that it be done in question and answer from so that I will have a opportunity to gauge whether the witness is qualified and competent to state what he's going to state? If he's simply going to be allowed to give the jury a—

THE COURT:  I'm going to start by having him tell us what happened, sir, and if that is problematical, then we'll maybe have to change the format.

MR. DOYLE:  Well, I object to that procedure, Your Honor.

THE COURT:  All right.  It's overruled.

MR. TIBBETTS:  Your Honor, I am under medication, and I informed the Court that I am under medication.  I'll do my best to try and explain what happened here. . . . [plaintiff attempts to explain the situation to the jury].

MR. DOYLE:  Your Honor, in order to protect my client's rights, I want to register a continuing objection to this narrative, to this really opening and closing argument. This is not evidence.

MR. TIBBETTS:  Your Honor, I said I'm not an attorney.  I'm doing the best I can.

THE COURT:  The objection's overruled.  You can continue.

MR. TIBBETTS:  [plaintiff continues for approximately another 4 or 5 minutes.  Tr. 18-23]. . . . These are some of the issues that you will hear presented this morning. Again, I am not an attorney.  I wish that I could present this in a more objective fashion, but I have been living this for so long, it's difficult for me to try and present it to you objectively.  And I wish that counsel would present it to you objectively, and be able to prove by evidence, by a preponderance of the evidence, that what I have said right now, as the Plaintiff in the matter, can be proven.  I don't know what else to say your Honor.

THE COURT:  Okay sir.  Would you care to inquire?

MR. DOYLE:  I've objected to this narrative, and I would now – it's not evidence, Your Honor, it's simply a statement by him.  There is no foundation.  It's full of conclusions, hearsay.  It's –

THE COURT:  Do you want to ask him some questions?

MR. DOYLE:  I want to make an objection and a motion, Your Honor, to protect my client's rights.

THE COURT:  The record may reflect that you reserved the right to make a motion, and we'll take it up at the recess.

MR. DOYLE:  *I have no questions of this witness.*

THE COURT:  Sir, you can step down, then.  Thanks very much.  [Tr.  15-24].

15.    The plaintiff's testimony was punctuated throughout with interruptions and objections by defendants' counsel.  Defendants' counsel stated that this testimony was in clear violation of Rule 602 of the Federal Rules of Evidence.

### I(3)(B).    Defendants' Counsel Requests "Mistrial" For Violation of FRE 602

THE COURT:  Attorney Doyle, did you want to comment?

MR. DOYLE:  Yes, I do, Your Honor.

THE COURT:  Sure.

MR. DOYLE:  First, Your Honor, I would like to take exception to what I would characterize as the mini charge to the jury, and in particular, your instruction to the jury that they can talk among themselves about the case as long as they're all together.  I don't think that's correct.  I don't think that's the law.

. . . . With respect to, I'm not even going to call it his testimony, because it wasn't testimony.  I asked that we proceed as we normally do, and even in a case of a *pro se*, question and answer.  There's a reason for that.  The reason is so that the Court and counsel can have an opportunity to gauge whether the witness is in a position personally to have knowledge of the matter that is being inquired into and in which he's purporting to answer.

And Rule 602 of the Federal Rules of Evidence provides, in part, a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.  That has not is happened here.

Mr. Tibbetts' statement to the jury, not evidence, is about what other people said, his conclusions about other people's motives, conduct.  There's a lack of foundation that he was in a position to testify to any of it.

In addition, he included in his statement to the jury matters that aren't even in his complaint, that deal with the things he wanted to include in the amended complaint, and matters that are in the other pending action.

Under the circumstances, I'd ask Your Honor to strike what he said, tell the jury to disregard it, because it is not evidence, because it wasn't.  It's clearly prejudicial to my clients.  I wouldn't know where to begin to cross-examine him.

*And if Your Honor intends to send this case to the jury, on the basis of what Mr. Tibbetts said from the stand, if that -- if Your Honor intends, I'd move for a mistrial.*  [32-34]

12

### I(3)(C)  Court Arbitrarily Excludes 90% of Yale's Educational Records on Plaintiff

16.     After the court compelled the plaintiff to give testimony in arguable violation of

FRE 602, the court turned to the plaintiff's record at Yale University.  In the Joint Pretrial

Memorandum, both parties moved to enter this record in its entirety into evidence.  Neither

party had objected to the authenticity of the university's records.  However in a surprise move,

the court struck all documents from the university's records which were not "self-

authenticating."   In other words, the court struck all documents that were not officially written

on Yale University letterhead.  This unbelievable ruling automatically excluded 90% of the

documents which the plaintiff needed to prove his case.  The transcript captures the surprise

created by the court's last minute ruling:

> THE COURT: Colleagues, just so we know where we are, do I understand, Sir, that you
> don't -- you didn't bring your exhibits to court?
>
> MR. TIBBETTS: Your Honor, I didn't bring them to court. I thought that they'd already
> been admitted.
>
> THE COURT: By reason of the fact that you listed that the exhibits existed, you thought
> that that was enough to have them admitted?
>
> MR. TIBBETTS: Yes, Your Honor.
>
> THE COURT: Okay. Well, your motion for a -- your further motion for a continuance is
> denied. . . . [A]nd if things stand as they do, if you're not going to present any
> more evidence, I will send the matter to the jury with respect to the first two
> counts, and just simply telling you that, Attorney Doyle, so that you can make
> your own decision as to whether or not you want to make a presentation on behalf
> of the Defendants here.
>
> MR. DOYLE:  I've made that decision, and I do not, because --
>
> THE COURT: All right.
>
> MR. DOYLE:  My position is that it was not evidence, and even if you considered it
> evidence, it wasn't sufficient to make out either a case or a reasonable jury could
> find intentional infliction under the first claim of relief, or defamation under the
> second claim.

THE COURT:  Okay.

MR. DOYLE:  Your Honor, I did make a motion to strike.  I take it you're denying that?

THE COURT:  To strike his testimony?

MR. DOYLE:  Yes.

THE COURT:  Yes, sir, it's denied.

MR. DOYLE:  I also move for a mistrial in the event that you decide that you want to send the case, any part of the case, to the jury.

THE COURT:  All right.

MR. DOYLE:  I take your Honor's denying that?

THE COURT:  Let's see what's going to the jury here.  I'll take papers on your motion for the mistrial sir.

MR. DOYLE:  *I don't have any papers.  It just happened.*

THE COURT:  I say, using the colloquial expression to indicate that I'm reserving decision on the motion.  So Mr. Tibbetts, where are we?  Do we have further evidence here for the jury?

MR. TIBBETTS:  Your Honor, I'd be happy to get the evidence.  I think the documents speak for themselves[.]

THE COURT:  You don't have them here today, sir.

MR. TIBBETTS:  I can get them.  They're just down the street.

THE COURT:  Down the street?

MR. TIBBETTS:  Yes, Your Honor.  I stayed at the YMCA.  It's a 10 minute walk from here[.]

THE COURT:  Why don't you get the jury back in here, if you would madam.

[The jury enters the courtroom]

THE COURT:  "Ladies and gentlemen, I apologize for the delay here.  There are certain documents that may constitute admissible evidence.  They are not in the building, but they are apparently very nearby.  I am being told, however, that with the

14

examination by the Court of these proposed exhibits, that this would constitute the evidentiary portion of the trial, in its totality. I would ask you now to take an early lunch hour here with the notion that we would resume at 1 o'clock. [Tr. 34-37].

### 1(4)(A) Court Divides Yale's Records Into Three "Piles," the Parties Object to the Court's Arbitrary Notion of "Self-Authenticating" and "Dumping" Records on the Jury Without Context or Foundation.

17.     The court took judicial notice that the plaintiff's documents were the official records of the university and that they were "produced by Yale." Tr. 43.  Indeed, all of these records are maintained the university in its ordinary course of business.  Unquestionably, all of these records should have been admitted into evidence under FRE 803(6).  This rule provides in pertinent part that records of regularly conducted activity are admissible if "kept in the course of regularly conducted business activity." FRE 803(6).  In this case, all of the records before the court had been kept by the university "in the course of [its] regularly conducted business activity."  Yet quite unexplicably, the court ruled contrarywise that the only documents that could be admitted into evidence were those that were "self-authenticating," or written on Yale University stationery, *despite the fact that all of the records were produced by Yale in its ordinary course of business.* The court's irrational and surprise ruling on this evidentiary matter caught the parties off-guard and caused heated arguments between the parties.  Defendants' counsel argued strenuously against taking those documents on Yale letterhead, admitting them into evidence, and then "dumping" them on the jury who would  "speculate" as to the context and content of the documents.  The transcript shows the enormity of the confusion and contention created from this last-minute evidentiary ruling:

THE COURT:  Mr. Tibbetts, the Court has examined here approximately 700 pages of documents that you're unable to agree with counsel as to their admissibility. Do I understand correctly, sir, that you're moving the admission of all of these documents?

MR. TIBBETTS:  Yes, Your Honor, because – yes.

THE COURT: All right. And Attorney Doyle, I understand that you're objecting to their admission?

MR. DOYLE: Yes, Your Honor.

MR. TIBBETTS: Your Honor, I think the documents speak for themselves, but there are witnesses that I need to call to verify.

THE COURT: Will you have those witnesses here tomorrow, sir?

MR. TIBBETTS: I'd have to call, but I don't think I could, Your Honor. They're primarily the ministers of the Presbyterian Church, my Candidates Committee, who are about four or five or so, and then also officials of the Presbyterian Church, with the [U.S. Navy] Chaplain's Candidates Board, and then also I have expert witnesses.

THE COURT: Well, the question being, will they be here tomorrow, sir?

MR. TIBBETTS: Your Honor, I don't believe that's possible for them to be here tomorrow. . . .

THE COURT: And Attorney Doyle, the Defendant hasn't made a determination yet as to whether or not they're going to make a determination yet as to whether or not they're going to make a presentation.

MR. DOYLE: That's right, Your Honor, at the present time we do not intend so. [Tr. 39-40].

THE COURT: Colleagues, I have divided these exhibits here into three piles. One, those that are admissible, those that I want to ask you some questions about, Mr. Tibbetts, and then there's a group that are not admissible. Now, with respect to the admissible documents, the great bulk of these are documents that are signed by representatives of Yale University or specific parties to the action.

MR. DOYLE: If Your Honor please, there's no evidence of that. I don't think you can take judicial notice of it. They're not self-authenticating. [42].

------------

MR. DOYLE: I'm sorry, Your Honor, I don't have a copy of these. Doesn't mean anything to me. I don't know how to respond. . . . Will I have an opportunity to address the Court with respect to each one, on my objections to their admissibililty?

THE COURT: No, I think that you better state your objections now, sir.

MR. DOYLE:  Well, it's hard for me to state my objections when I don't know which documents you're saying are going to be admitted.  I can't do that in a vacuum. . .

THE COURT:  Sir, did I not request that you sit down with this gentlemen and review his documents to see where you could agree, and Mr. Tibbetts, did you produce them and offer them to Mr. Doyle?

MR. TIBBETTS:  Yes, I did, Your Honor.  You should have them in front of you.

MR. DOYLE:  And I don't contest that.  That's different from my being given – we didn't agree, and I'll be happy to tell you why we didn't agree. . . . First of all, in order for a document to be admitted into evidence, there has to be proof of its authenticity, proof that it's competent, and proof that its relevant.  Now, in normal circumstances lawyers obviously don't expect other parties to go through every evidentiary hoop when it's clear in the circumstances that those evidentiary hoops can be overcome.

But I object to Your Honor sending the case to the jury, as you know.  I object, number one, that there is no evidence for Mr. Tibbetts before the jury.  There was no proof that the statements he was making, which is required by the rule based on personal knowledge.  He was just asked to get up there and tell the jury what he wanted them to hear, which is not appropriate.

Secondly, to the extent that my – and I object to documents simply going into evidence and being dumped on the jury, not a context, simply dumped on them with no evidence about those documents, no evidence surrounding them.  And to the extent that my consent is necessary to do that, then I withhold my consent, because I think it's inappropriate.

If we're just going to dump these documents on the jury, they're going to be left to speculate about totally apart from the question of admissibility, they're not in context, and that's not the way it should happen.

And that's why I did not agree to any of them going into evidence.  And I do insist that I am entitled to an opportunity to address the Court on objections that I have to each one. [44-45].

### I(4)(B)        Defendants Argue the "Self-Authenticating" Grounds is Inconsistent

THE COURT:  Now, I've got a large pile of documents that the Court has examined and has determined are not admissible.  They seem to fall into a couple of categories, either, one, they're your own statements, Mr. Tibbetts, which would simply constitute a perpetuation of your testimony before the jury, and are therefore not admissible, or they constitute statements from other people, which under the rules concerning hearsay would make them not admissible.  There's several hundred of them.

What I would do is I would return them to you, and I'll hear you on these with respect to any that you claim are admissible under some rule that I have overlooked. . . .

MR. DOYLE:   Your Honor, please, I haven't made a count, but seems to me that you have ruled over a hundred, at least over a hundred exhibits, that you deem without any evidence at all are admissible, and I cannot possibly respond after a few minutes. You said a few minutes. . . . [52-53].

--------------------

THE COURT:   Attorney Doyle, did you have a chance to review those proposed offers?

MR. DOYLE:   . . . . I'll have something to say about some of the specific ones, but there seems to be a theme that runs through.  If it's on Yale stationery, and it was produced in discovery, Your Honor, I take it, is concluding that it therefore –

THE COURT:   If it was signed by somebody, that's generally true.

MR. DOYLE:   But that's self-authenticating, in other words.

THE COURT:   That's what has –

MR. DOYLE:   I don't agree with that, and I object to that.    That's not self-authenticating.   [53-54].

--------------------

MR. DOYLE:   . . . . Now, for the life of me I don't know what these are relevant to, *and the problem of these coming in, just being dumped on the jury, without a context, without any explanation of what this is about, and how it bears on anything, just leave the jury to speculate as to the circumstances under which it was written and why, to speculate about it.*

THE COURT:   I thought the reason that I had considered them relevant was that he testified in his direct examination that some representative from Yale had circulated a claim that he had an arrest record and that he testified that he had gone through efforts to prove that this was not the case, and that's why I thought it was relevant, because it tended corroborate his statement.

MR. DOYLE:   *Well, I don't think it's relevant.*  I don't think his statement, which is just a statement, is competent evidence for the reasons I gave before, Your Honor.  He didn't say who he was, how he knew, whether someone told him, that someone told him that, did not establish that he was in a position to have personal knowledge.

An example of that, if somebody tells me, do you know that James Dittes told Joe Blow that you did this or that, any I got up there on the stand, without any foundation, and say James Dittes defamed me, that's not – that's a conclusion.  There isn't a foundation to establish, as the rules of evidence require, that he was in a position to have personal knowledge, or that his statement is based on hearsay from somebody else, and a foundation hasn't been laid, and that's what I objected to him just sort of telling his story. So I object. [57-58]

18

---------------

MR. DOYLE:   [Document] 303.1, again, *there's nothing on it to – it's not on any stationery, and there's nothing – it's not signed by anybody.* It purports to be a memo from Dwayne Huebner to James Dittes, but there's nothing to establish that it is.

    The same thing – I may have gotten out of sequence here. Actually as I'm looking through these, these are the ones that they seem to have a similar pattern, Your Honor. *They're not on Yale stationery, and they're not signed by anybody.*

THE COURT:   But they seem to be going from one party to another party.

MR. DOYLE:   *Well, we don't know that.* That's another problem with letting documents go in out of context. We have no idea whether these were sent or not sent. There's an assumption you can make, but there's no evidence to support that.

THE COURT:   They do purport to be from one party to another party, one Defendant to another Defendant.

MR. DOYLE:   *No, not all these people are Defendants.* Very few individuals are Defendants. Which raises another issue. What may be an admission with respect to Yale University is not necessarily an admission with respect to James Dittes or Penelope Laurens or the other few. There are only a few Defendants, because he didn't serve everybody. The ones who appeared are only the ones who were served. *So again, that's a problem of just dumping exhibits in front of the jury, not in a context.*

    I apologize, Your Honor, I may have got these a little out of order, but these documents I object to – let me go through the whole bunch – that there's nothing to authenticate it. *Other than, well, that are not self-authenticating, they're not signed by anybody.* [60-61].

### I(4)(C)        The Court Excludes Those Documents with Plaintiff's Handwriting

THE COURT:   All right. Mr. Tibbetts, now with respect to the pile.

MR. DOYLE:   Before we get to that, a mechanical matter. That none of these have been marked with court exhibit stickers, and . . . . *I'm just wondering, I don't want a problem if we end up in the Second Circuit,* . . . I, you know, maybe we should have marked them first, for identification, but as long as we agree that – I mean there is an identification number. It's not the Court's number.

THE COURT:   What we can do is put the official exhibit number or sticker on them in such a fashion that the numerology that was on them remains, and with respect to those, why don't you cover up . . . those for the purpose of the file. . . . There's one other matter, I'm not sure we covered it, and it's this: that there are two documents that are the same [number] . . . except that—did we deal with that?

MR. DOYLE:  That has Mr. Tibbetts *handwriting* on it.

THE COURT:  . . . .232 will become the exhibit.

MR. DOYLE:  Yes, 232 is identical. *Without the writing.*

THE COURT:  Okay.

MR. TIBBETTS:  *So you're saying, Your Honor, that my handwriting isn't relevant here?*

THE COURT:  I guess the way to most simply explain the question of many of the documents that you have that were excluded from evidence is because they're your statements, your letters, and you propose to have those admitted as evidence . . . . This is basically why. So many of the exhibits that you have in which you, in essence, not in essence, you actually perpetuate your story.

MR. TIBBETTS:  *It goes to state of mind, Your Honor.*

### I(4)(D)    Plaintiff Demands a "Mistrial" Because the Court Has Excluded 90% of the University's Records Which Plaintiff Needs to Establish His Claims

MR. TIBBETTS:  Your Honor, . . . . I've got documents in here that are my records that need to go before the jury. I can authenticate every one of them. What is going before the jury right now is every document from Yale University. How can that possibly establish my case? Your Honor, I want counsel. I demand counsel here. I have been demanding counsel all day long. I will not go forward with this anymore. I demand an immediate mistrial on this. [65]

THE COURT:  . . . . Sir, the second thing that has been objected to here is the letters of reference. There's a series of them. Did you put those in a separate pile, sir?

MR. TIBBETTS:  . . . . Well, Your Honor, *correct me if I'm wrong, but this is a case about defamation, about my reputation.*

THE COURT:  Right

MR. TIBBETTS:  You're asking about relevance. What we're trying to establish here, and what could have been established if counsel had been able to make the arguments, and if we had allowed the depositions to have gone forward so that a reasonable trial could have happened here, *was to be able to establish what my reputation was prior to Defendant Dittes' allegations.*

THE COURT: So it's your claim that the relevance of these [documents] is that it serves to establish your reputation in the religious community, or the Yale community.

MR. TIBBETTS: *Absolutely. Reputation is everything in a defamation case.*

MR. DOYLE: Well, Your Honor, if that's the purpose of the offer, they're being offered for the truth of the content, and by people who aren't defendants in this lawsuit, and by people who have no connection, that are not involved in the events that take place here, and they're hearsay. . . . [And] I have a problem with all of that. I said they may be public documents, some of them, because other than just a letter, certified, and appears to be on an official form. But my objection is not only to authenticity, but also to relevance, and also misleading. You dump these in the jury, what are they supposed to make of it? It leads to all kinds of speculation. Who's checking his records and why? Is someone stirring up trouble? Who knows? Which is the problem with dumping documents not in context. [Tr. 67].

MR. TIBBETTS: Your Honor, those would be part of the context if we had – had I had the opportunity to lay a foundation for them. These were allegations made to the Presbyterian Church. . . . And this was part of the record of the Presbyterian Church that I had to refute, *all of which has been excluded.*

THE COURT: The objections to these five are overruled. [Tr. 67-68].

--------------------

THE COURT: Let me ask you this: Was there with respect to any of the exhibits that you submitted, that the Court excluded, was there any of them that having looked at them again that you wanted to comment further on sir? Just as Mr. Doyle did?

MR. TIBBETTS: Yes, Your Honor, there are.

THE COURT: Sure, let's go ahead.

MR. TIBBETTS: *Your Honor, there are no documents that demonstrate my contact with the U.S. Navy, no documents that demonstrate my contract with the Presbyterian Church, and no documents demonstrating my contract with the Beijing Foreign Affairs College. Those all have been excluded.*

*All of the internal documents, or most of the internal documents by YDS professors that were not on letterhead have been excluded. All of the letters and the documents surrounding my resignation from the U.S. Navy Reserve, from the Presbyterian Church, and my withdrawal from the Beijing Foreign Affairs College have been excluded.*

*All of the records relating to the U.S. Attorney's Office from Connecticut, the U.S. Attorneys' Office from Virginia, from the postal service, establishing that crimes were alleged, have been excluded.*

*All of my letters to Yale have been excluded, related to the pending charges that I would – that I was dealing with at the time. All underlying documents of the hearing itself were excluded.*

In the other cases that we have pending before this court before . . . . Judge Thompson, we deal with the element of constructive fraud. How can that be alleged if those documents can't be submitted to the jury?

What happened was that the general counsel's office has said that I could submit all of my exculpatory evidence from expert witnesses and from all of the people that had verified or corroborated that these essays were mailed. All of those were withheld from the Professional Studies Committee. They're also being withheld from the jury. That is an important element that should be in this complaint that I have asked to have amended. All of my medical and psychological records have been excluded. And all of the documents and analysis of the questioned document examiners have been excluded.

*Based upon what I said on the witness stand, there is absolutely nothing in the record to corroborate one thing that I have said, not one thing. Everything that is going before the jury has a stamp of Yale University on it. . . .* As it stands right now, 112 documents of Yale University are being submitted, and some of them public records, which have no foundation whatsoever other than the fact that I said on the witness stand that Professor Dittes had charged me or at least had told the Presbyterian Church that I was a fugitive from the law.

Not one of the things that's going to the jury will support one thing that I am bringing before this Court right now. There has been no testimony from any of my witnesses. I have asked for a continuance on that. I have asked for counsel to present this evidence. There's been no cross-examination. There's been no direct witnesses. Yale University hasn't produced one witness here today. . . . All I'm asking for is a fair trial to have counsel try this. . . . *This is nothing but a railroad job, Your Honor.* [Tr. 75-77]

18.    The trial evidence that the court admitted is attached hereto and incorporated herein as Plaintiff's Admitted Evidence 0001-0142. The evidence which the court *excluded* is attached hereto and incorporated herein as Plaintiff's Suppressed Evidence 0001-1164. Where the total admissible evidence from the university's records was 1306 documents, and where the court only admitted 142 documents, it is clear therefore that the court excluded 90% of the admissible evidence in this case.

19.    The surprise created in this trial *is a direct result of the court's failure to conduct a pretrial conference.* The court failed to make any decision regarding the admissibility of

22

evidence until the actual day of trial.   As a result, *neither the prosecution nor the defense knew what evidence would be admitted for trial.*

20.    This failure to conduct a pretrial conference was a violation of the spirit and letter of Rule 16(d) of Federal Rules of Civil Procedure which provides that a "final pretrial conference shall be held as close to the time of trial as reasonable under the circumstances," and that "[t]he participants . . . shall formulate a plan for trial, *including a program for facilitating the admission of evidence."* F.R.Civ.P. 16(d) (emphasis added).

21.    In summarizing the first day of trial:

(1)    Plaintiff pleaded with the court for a continuance so that his counsel could try the case (Tr. 11-15);

(2)    Plaintiff gave approximately 10-14 minutes of testimony (Tr. 15-24);

(3)    There was evidence of procedural confusion because neither the court nor the parties had heard from the Second Circuit regarding the Writ of Mandamus (Tr. 27);

(4)    Defendants' counsel was adamant in his objection to plaintiff's testimony as being contrary to FRE 602 (Tr. 32-34);

(5)    The court refused to strike plaintiff's testimony (Tr. 35);

(6)    Defendants' demanded a "mistrial" for procedural errors in the case (Tr. 36);

(7)    The court excluded 90% of the university's records because they were not on official university stationery; thus not "self-authenticating" (Tr. 38-79); and

(8)    Defendants complain about "dumping" documents on the jury without a "context" because it leads to "all kinds of speculation" (Tr. 67.)

(9)    Plaintiff demanded a "mistrial" because the court had arbitrarily slashed all admissible evidence and allowed a "railroad job." (Tr. 75-77).

22.    Based on the above evidence, it is clear that both this Court and the Second Circuit would find substantial "surprise" and "procedural confusion" in the first day of trial that

would allow relief from any unjust enforcement of this judgment, pursuant to F.R.Civ.P. 60(b)(1).

## II.     SECOND DAY OF TRIAL

23.     The second day of trial continued the themes of surprise, plaintiff's need for counsel, and lack of evidence and witnesses.  The transcript for the second day of trial is attached hereto and incorporated herein ("2 Tr."), and it shows as follows:

24.     The court opened with additional disputes and problems over evidence.  2 Tr. 2-3. The court refused to admit university documents that showed "contracts" between the plaintiff and (1) the Beijing Foreign Affairs College, (2) the Presbyterian Church (USA), and (3) the U.S. Navy.  *Id* at 4-7.  The court held these documents "in gross" constituted "hearsay"—even though the court did not dispute the *"notion that these may be relevant to the issues here."* 2 Tr. 6:5-6.

25.     Plaintiff wanted a continuance so that his witnesses could testify.  He also asked to subpoena the defendants *who had again failed to show for trial*.  The court *denied* both motions: "the record simply reflecting that *we're in the midst of the trial*." 2 Tr. 7:22-23.

26.     The court decided for the first time that only two of plaintiff's four claims would be heard by the jury.  Plaintiff responded "So as I understand it, then Your Honor, it's defamation and intentional infliction of emotional distress?" 2 Tr. 8-9.  The court, "Yes, and I will sit down with you again and review that issue with you." *Id.* 9:2-3.

27.     The court had arbitrarily struck the claims on breach of contract and tortious interference with prospective economic advantage because "there just simply is no evidence" to support these claims.  2 Tr. 157:16.  Plaintiff pointed out, however, that the reason "there just simply is no evidence" is because the court excluded 90% of the university's documents, which

included the plaintiff's "contracts" with the (1) the Beijing Foreign Affairs College, (2) the

Presbyterian Church (USA), and (3) the U.S. Navy as "hearsay." *See* discussion *infra* at 2 Tr.

156-157; 159-160

28.    The Joint Pretrial Memorandum stated that the trial would last eighteen (18) days.

But once the court excluded all of the evidence and witnesses, the court told the jury that "this

trial is going to I believe come to its conclusion a great deal sooner than was represented to you."

2 Tr. 20-21.

**I.    <u>Without Any Evidence or Witnesses, Court Rules That Plaintiff has "Rested"</u>**

29.    Without the opportunity to corroborate evidence or introduce witnesses, the court

informed the plaintiff that he had "rested":

> THE COURT:    All right, do you have any further evidence other than wanting to
> address the jury on this issue of damages?
>
> MR. TIBBETTS:    Your Honor, I would like to be able to introduce expert witnesses to
> be able to corroborate what I'm saying. . . . I said yesterday that they weren't able
> to come for this hearing, and that's the reason I asked for a continuance.
>
> THE COURT:    Do you have anything here?
>
> MR. TIBBETTS:    I'll be happy to testify on damages as I understand them, the limited
> damages, in addressing the jury, which would supplement my narrative of
> yesterday morning.
>
> MR. DOYLE:    And again, Your Honor, I would object to any narrative.
>
> THE COURT:    That's overruled.    But then you have nothing further, other than that,
> here in the courtroom, that you're prepared to introduce in evidence to the jury
> sir?
>
> MR. TIBBETTS:    All the other evidence has been reviewed and struck, so I don't have
> anything additional at this point.
>
> THE COURT:    Okay.    *So the record may reflect that at this juncture the Plaintiff has
> rested.*
> [2 Tr. 9-10:3].