# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JEFFREY TIBBETTS,<br>    Plaintiff )<br>)<br>)<br>)<br>v. )<br>)<br>PRESIDENT & FELLOWS OF YALE )<br>COLLEGE, ET AL. )<br>)<br>    Defendants )<br>) | No. 01-CV-1763 (CFD)<br><br><br>February 25, 2005 |

## THIRD AMENDED COMPLAINT:
## INDEPENDENT ACTION TO VACATE JUDGMENT
## IN *TIBBETTS V. DITTES* (395CV00995) AS VOID,
## PURSUANT TO F.R.CIV.P. 60(B)(4), AND FOR OTHER
## EQUITABLE RELIEF AND DAMAGES

## TABLE OF CONTENTS

I.      ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **3**

II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **4**

III.    PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **4**

IV.     RULE 60(B)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **5**

V.      STATUTE OF LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   **6**

VI.     THE DITTES COURT VIOLATED PLAINTIFF'S RIGHT TO DUE
        PROCESS BY DENYING AMENDMENTS, CONSOLIDATION,
        MEANINGFUL DISCOVERY, REPRESENTATION BY COUNSEL,
        WITNESS/EXPERT TESTIMONY, PRESENCE OF DEFENDANTS,
        AND A FULL AND FAIR TRIAL UPON THE MERITS . . . . . . . . .   **8**

        A.      DEFENDANTS' DILATORY DISCOVERY TACTICS. . . . . . .   **8**

        B.      INITIAL MOTION TO AMEND PLEADINGS (1997) . . . . . . .   **12**

        C.      AMENDMENTS FILED AS THREE NEW CASES (1997) . . . .   **14**

D.      MOTION FOR RECONSIDERATION TO AMEND (1998). . . .    **15**

E.      MOTIONS TO AMEND AFTER BANKRUPTCY (1999). . . . .    **16**

F.      MOTION TO AMEND *NUNC PRO TUNC* (1999). . . . . . . . .    **23**

G.      WRIT OF MANDAMUS FILED TO COMPEL AMENDMENT    **25**

H.      COURT RETALIATES FOR WRIT OF MANDAMUS (2000) . .    **28**

I.      COURT DENIES FUNDAMENTAL FAIRNESS AT TRIAL . .    **39**

J.      COURT CREATES SURPRISE AND CONFUSION AT TRIAL    44

K.      RULE 60(B)(1):  "MISTAKE" and "SURPRISE" . . . . . . . . . . . .    **45**

    I.        First Day of Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **49**
    I(1)     Court Compels Plaintiff to Conduct Trial Without Counsel  **49**
    I(2)     Plaintiff Requests Counsel Throughout Trial . . . . . . . . . . .    **51**
    I(3)     Court Compels Plaintiff to Testify in Violation of FRE 602  **53**
    I(4)     Defendants' Counsel Requests "Mistrial" . . . . . . . . . . . . .    **55**
    I(5)     Court Arbitrarily Excludes 90% of University Record . . . .    **56**
    I(6)     Court Divides University Record into Three "Piles";
             Parties Object to Dumping Piles on Jury Without Context .  **58**
    I(7)     Defendants' Show the Court's "Self-Authenticating"
             Ruling is Arbitrary and Inconsistent . . . . . . . . . . . . . . . . .    **60**
    I(8)     Court Excludes Documents With Plaintiff's Handwriting .  **63**
    I(9)     Plaintiff Demands "Mistrial" Because Court Has
             Excluded 90% of the University's  Record . . . . . . . . . . . . .    **63**
    II       Second Day of Trial  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **67**
    II(10)   Without Evidence or Witnesses, Court Rules That
             the Plaintiff Has Rested . . . . . . . . . . . . . . . . . . . . . . . . . . .    **68**
    II(11)   Court Compels Plaintiff's Narrative On Damages . . . . . . . .  **69**
    II(12)   Defendants Move For Mistrial Due FRE 602 Violations . .  **73**
    II(13)   Defendants Raise Statute of Limitation Argument, Which
             Should Have Been Raised in a Pretrial Conference . . . . . . .  **75**
    II(14)   Court Admits Evidence for Dfdts' Closing Argument. . .    **77**
    II(15)   Court Compels Plaintiff to Give a Closing Argument . . . . .  **79**
    II(16)   Court Removes Elements of Qualified Privilege From Jury  **86**
    II(17)   Court is Condescending to Plaintiff Throughout Trial . . . .    **87**
    II(18)   Court and Defendants Counsel Admit Errors in Trial . . . . .  **91**

L.      COURT FOSTERS OPPORTUNITY FOR DEFENDANTS TO
       COMMIT FRAUD AT TRIAL BY SUPPRESSING 90% OF  THE
       UNIVERSITY'S RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . .    **94**

M.    RULE 60(B)(3): "FRAUD" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

 M(1)   Fraud During Testimony on Damages (2 Tr. 12-20) . . . . . **100**
 M(2)   Fraud on Plaintiff's Closing Argument (2 Tr. 44-79) . . . . . **105**
 M(3)   Fraud During Dfndts' Closing Argument (2 Tr. 80-113) . . **114**
 M(4)   Sidebar On Defendants' Fraud (2 Tr. 113-115) . . . . . . . . . . **134**
 M(5)   Fraud on Plaintiff's Rebuttal (2 Tr. 116-129) . . . . . . . . . . . **135**
 M(6)   Conclusion of Defendants' Fraud on the Court . . . . . . . . . . **140**

N.    COURT PREVENTED PLAINTIFF FROM FULLY AND FAIRLY
 PRESENTING CLAIMS AT TRIAL . . . . . . . . . . . . . . . . . . . . . . . 143

O.    SUMMARY OF DUE PROCESS VIOLATIONS AT TRIAL . . . **146**

P.    MOTIONS FILED FOR POST-JUDGMENT RELIEF (2001) . . . **147**

Q.    MOTION TO RECUSE JUDGE UNDER 28 USC § 455(a) . . . . **151**

R.    INDEPENDENT ACTION TO ATTACK VOID JUDGMENT . . **154**

S.    SUMMARY OF COURT'S DUE PROCESS VIOLATIONS . . . . **155**

VII.  ARGUMENT IN SUPPORT OF VOIDNESS UNDER 60(B)(4) . . . . . . **158**

 Conclusion:  Rule 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **165**

COUNT ONE:  FRAUD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **165**

COUNT TWO:  NEGLIGENT MISREPRESENTATION . . . . . . . . . . . . . . . **169**

COUNT THREE:  MALICIOUS DEFENSE (C.G.S. § 52-568) . . . . . . . . . . . **171**

INJUNCTIVE RELIEF:  SEAL RECORD UNDER FERPA, 20 U.S.C.
 § 1232(g), 34 C.F.R. § 99 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **172**

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **173**

## I.    ISSUES

1.    Whether the district court erred in applying the wrong date to dismiss the instant Rule 60(b) action.   The Court claims the statute of limitations began to accrue on March 29, 2000, the date judgment was entered in *Dittes*.  However, the plaintiff timely filed a Rule 59 motion for a new trial, which tolls the time to file an appeal during the pendency of the post-trial motion.  The court ruled on this post-trial motion on March 21, 2001.  Accordingly, plaintiff timely filed an appeal with the U.S. Court of Appeals for the Second Circuit, and six months after the district court made its final ruling, plaintiff filed the

instant Rule 60(b) action on September 18, 2001.    The issue, therefore, is whether the plaintiff timely filed his instant Rule 60(b) motion "not more than one year" after the final judgment or order was taken.

    2.    By establishing that the final order in this action was entered on March 21, 2001, has plaintiff presented a prima facie claim for "mistake" and "surprise," which entitles relief from the *Dittes* judgment pursuant to F.R.Civ.P. 60(b)(1)?

    3.    By establishing that the final order in this action was entered on March 21, 2001, has plaintiff presented a prima facie claim for "fraud," which entitles relief from the *Dittes* judgment pursuant to F.R.Civ.P. 60(b)(3)?

    4.    By establishing that the final order in this action was entered on March 21, 2001, has plaintiff presented a prima facie claim for "voidness," which entitles relief from the *Dittes* judgment pursuant to F.R.Civ.P. 60(b)(4)?

    5.    Is it equitable to enforce the *Dittes* judgment, where (1) plaintiff was only given 18 minutes of testimony? (2) where the court compelled the plaintiff to try the case without his attorney? (3) where all of the defendants failed to show for trial? (4) where the court declined to subpoena the defendants to be examined for trial? (5) where the court refused to allow testimony from the plaintiff's witnesses and experts? (6) where the court struck 90% of the university's record at the last minute? (7) where the court  threatened to hold the plaintiff in contempt of court because he decried the fundamental unfairness of this trial? (8) where defendants counsel made 66 material misrepresentations about the university's record? (9) where defendants' misrepresentations tainted evidence before the jury? (10) where the court denied jury instructions about missing defendants who failed to show for trial? and finally (11) where the court denied a pretrial conference, and all meaningful discovery and amendments, over the course of five years?

## II.    JURISDICTION

This Court has continuing jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), in that plaintiff and defendants are citizens of different states.   This independent action was filed on September 18, 2001.   The Court entered judgment on January 20, 2005.   Eight days later, on January 28, 2005, plaintiff timely filed a Rule 59 Motion to alter and amend the judgment.

## III.    PARTIES

Plaintiff is a graduate of Yale University and a resident of the Commonwealth of Virginia. Defendants are the President and Fellows of Yale College, also known as Yale University or the Yale Corporation (hereinafter "Yale").   All defendants in this action are set forth in *Tibbetts v.*

*Dittes*, 395CV00995), with additional defendants listed in the four supplemental actions: *Tibbetts v. Levin*, 397CV02561 (AWT); *Tibbetts v. Stempel* 397CV02683 (CFD); *Tibbetts v. Robinson*, 397CV02682 (GLG); and *Tibbetts v. President and Fellows* (01-CV-1763). There are no new or additional parties in this motion apart from the parties already listed or contained within the instant litigation.

## IV.   RULE 60(B)(4)

Rule 60(b)(4) authorizes a court to "relieve a party or his legal representative from a final judgment, order, or proceeding . . . [where] the judgment is void." A motion made under this part of the rule differs markedly from motions under other sections of Rule 60(b). First, there is no question of 'discretion' on the part of the court when a motion is under Rule 60(b)(4). "A void judgment is a legal nullity and a court considering a motion to vacate has no discretion in determining whether it should be set aside." *Jordan v. Gilligan*, 500 F.2d 701 (6th Cir. 1974) *cert denied*, 421 U.S. 991, 95 S.Ct. 1996; *Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) ("if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)").

A "judgment is not void merely because it is erroneous." *In re Texlan Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979). It is void "only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2862. To this end, Congress intended that a Rule 60(b)(4) of the Federal Rules of Civil Procedure could relieve a party from a final judgment for 'voidness' where a court "acted in a manner inconsistent with due process of law." *Otte v. Manufacturers Hanover Commercial Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979) (quoting Wright & Miller); *Fustok v. Conticommodity Servs., Inc.* 873 F.2d 38, 39 (2d Cir. 1989)

(same); *Parker, PPA v. Della Rocco*, 197 FRD 214, 215-216 (D.C. Conn. 2000) ("A judgment is void under Rule 60(b) only if the court which rendered it . . . acted in a manner inconsistent with due process of law").

The Supreme Court holds that "where an error of constitutional dimension occurs, a judgment may be vacated as void." *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374-78, 60 S.Ct. 317 (1940). One such constitutional error exists where a judgment is rendered void because the court entered it in "violation of due process." *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595 (2000). American jurisprudence champions the "fundamental requirement of due process," which means "*the opportunity to be heard 'at a meaningful time and in a meaningful manner.*'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (emphasis added, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) (same). To this end, any court that "deprive[es] parties of substantive rights without providing . . . an opportunity to defend has . . . long been regarded as a denial of the due process of law guaranteed by the Fourteenth Amendment." *Shelly v. Kraemer*, 334 U.S. 1, 16, 68 S.Ct. 836 (1948); *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878).

## V.    STATUTE OF LIMITATIONS

It is well-settled that "there is no time limit on an attack on a judgment as void." Wright, Miller & Kane, § 2862. The "one-year limit applicable to some Rule 60(b) motions is expressly inapplicable." *Id.* A Rule 60(b)(4) motion to vacate a judgment as "void" may be brought "any time after final judgment." *McLearn v. Cowen & Co.*, 660 F.2d 845, 848 (2d Cir. 1981) (citing *Crosby v. Bradstreet Co.*, 312 F.2d 483 (2d Cir. 1963), *cert denied*, 373 U.S. 911, 83 S.Ct. 1300 ((judgment vacated as void thirty years after entry); *Parker, PPA v. Della Rocco*, 197 FRD 214, 215-216 (D.C. Conn. 2000) (two-year delay in seeking relief from void judgment is not

6

unreasonable where "[c]ourts have been exceedingly lenient in defining the term 'reasonable time' with regard to voidness challenges") (quoting *Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir. 1997).

In the instant case, this Rule 60(b)(4) motion to vacate the judgment as void is timely because the final judgment in *Dittes* was entered on March 21, 2001. Plaintiff timely appealed the final judgment to the U.S. Court of Appeals for the Second Circuit, where it remained in a holding pattern until December 8, 2003. Unfortunately the Second Circuit did not get the opportunity to review the appeal because it was dismissed on a technicality related to pre-docketing forms. Within six months of the dismissal of the appeal, plaintiff filed a Rule 60(b)(4) to vacate the dismissal as "void" because the Second Circuit did not publish any "notice" on this pre-docketing requirement. In any event, the dismissal of the appeal was in error and "void" as a matter of law, because the Second Circuit does not provide any published rules relating to this contradictory dismissal. On January 5, 2005, this Court dismissed the motion without addressing the merits of the argument and claiming that this district court did not have jurisdiction to vacate an order from the Second Circuit.

The instant Rule 60(b)(4) motion to vacate the *Dittes* judgment as 'void' was filed in this Court nine months after the appeal was erroneously dismissed. Aside from the instant motion to vacate the judgment under Rule 60(b)(4), plaintiff had timely filed a separate independent action collaterally attacking this judgment six months after the final ruling in this case. That action is *Tibbetts v. President and Fellows of Yale College* (01-CV-1763), and it was filed on September 18, 2001. The final judgment in this case was entered on March 21, 2001. The pleadings in *President and Fellows* set forth the grounds for vacatur in this action. This case is still pending and has been pending during the entire time that plaintiff was waiting for a review of the appeal from the Second

7

Circuit.    Since the *Dittes* appeal was dismissed without any substantive review, the importance of

the instant motion and the action in President and Fellows becomes central in vacating the *Dittes*

judgment.    Both have overlapped and there has been no time in which some action or motion has

not been pending to either review or vacate the judgment in *Dittes*.    Therefore, since the appeal was

timely filed and plaintiff filed an independent action under Rule 60(b) to simultaneously attack this

judgment on September 18, 2001, in *President and Fellows*, and where that action is still pending,

then it cannot be said that plaintiff did not timely file the instant Rule 60(b)(4) motion to vacate the

judgment in this action.    Indeed, plaintiff has or will shortly file an amendment in President and

Fellows that includes the instant Rule 60(b)(4) motion, and this amendment will relate back to the

original filing date of September 18, 2001, under F.R.Civ.P. 15(c).    Regardless, it is well-settled

that a Rule 60(b)(4) motion to vacate a judgment for voidness may be brought "any time after final

judgment."    *McLearn,* 660 F.2d at 848; *Beller & Keller,* 120 F.3d at 24; *Parker, PPA,* 197 FRD at

215-216; and *Crosby,* 312 F.2d at 483.

## VI.     FACTS THAT DEMONSTRATE THE DISTRICT COURT VIOLATED PLAINTIFF'S CONSTITUTIONAL RIGHT TO DUE PROCESS BY DENYING AMENDMENTS, CONSOLIDATION, DISCOVERY, REPRESENTATION OF COUNSEL, AND A FULL AND FAIR TRIAL

### A.     <u>DEFENDANTS' ENGAGE IN DILATORY DISCOVERY TACTICS</u>

1.     At all material times herein, references to the "court" refers to the presiding district

court judge, the Honorable Alfred V. Covello, in the underlying case *Tibbetts v. Dittes*

(395CV00995), unless otherwise indicated and specified.

2.     The following is a detailed account of the procedural history leading up to the date

of trial on January 18, 2000.  During this three year period of time, the record as set forth below

shows that the plaintiff was denied fundamental fairness in obtaining discovery, amendments,

8

agency, and refused to answer Rule 33 interrogatories for improper and frivolous reasons." Exhibit 3 hereto. On October 8, 1996, the court denied plaintiff's motion for appointment of counsel without any comment or relief. *Id.*

5.    On December 30, 1996, plaintiff moved to compel responses to his interrogatories (Exhibit 4 hereto), and two weeks later, on January 14, 1997, he also moved to extend discovery because of the defendants' aforementioned obstructionist tactics. Exhibit 5 hereto.

6.    The court granted plaintiff's motion to extend discovery up to and including May 23, 1997. Exhibit 6 hereto. The court also ordered defendants to respond to plaintiff's interrogatories. However, one day before discovery cut-off, defendants moved for an extension of time to respond to the interrogatories--*even though they had had these interrogatories in their possession for eleven months.*

7.    Plaintiff immediately moved for an extension of time to file an amended complaint because defendants had just "moved the Court for an additional 20 twenty days within which to answer or object to Rule 33 interrogatories." Exhibit 7 hereto. Plaintiff expressed outrage that defendants had obstructed the entire discovery process for eleven months--only to move for an extension of time to answer these interrogatories the day before discovery cut-off. On June 2, 1997, the court granted plaintiff's motion to extend time to file an amended complaint. Exhibit 8 hereto.

8.    On June 15, 1997, the parties participated in a status conference. At this point, the court was clearly on notice about defendants' ongoing discovery abuses and the complete lack of meaningful discovery in this action. Plaintiff supplied the court with a summary of these abusive discovery tactics and misconduct:

October 24, 1995:    Yale defaults for failing to answer the Complaint. F.R.Civ.P. 12(a).

| | |
|---|---|
| January 16, 1996: | Yale fails to provide Rule 34 discovery for two months. F.R.Civ.P. 37. |
| February 12, 1996: | Yale defaults for failing to answer the First Amended Complaint. F.R.Civ.P. 12(a); F.R.Civ.P. 55(a). |
| March 7, 1996: | Yale fails to provide Rule 34 discovery for three months. F.R.Civ.P. 37. |
| April 3, 1996: | Yale fails to provide more Rule 34 discovery. F.R.Civ.P. 26(g). |
| April 7, 1996: | Court sua sponte defaults Huebner and Adams for failing to answer the Complaint. F.R.Civ.P. 55(a). |
| May 20, 1996: | Yale fails to submit ex pane statement for Rule 16(f) Scheduling Conference. F.R.Civ.P. 16(f). |
| August 29, 1996: | Yale fails to answer First Set of Rule 33 interrogatories. F.R.Civ.P. 33(a), F.R.Civ.P. 37(d). |
| October 10, 1996: | Yale failed to answer Revised First Set of Rule 33 interrogatories. F.R.Civ.P. 33(a), F.R.Civ.P. 26(g). |
| January 7, 1997: | Plaintiff files Rule 37 Motion to default Yale for discovery abuse. |
| April 11, 1997: | Court orders Yale to answer some of the interrogatories and cuts off discovery by May 23, 1997. |
| May 22, 1997: | Yale requests an extension to answer Rule 33 interrogatories (after having them for almost one year). |
| June 17, 1997: | Status and Settlement Conference is held where plaintiff complains that the defendants still have not answered any interrogatories after more than a year, and that the court is accommodating the defendants by allowing their abusive discovery tactics to continue unabated. [Exhibit 9 hereto]. |

9.     A month after discovery had been cut-off, defendants finally answered the propounded interrogatories.   The entire discovery period had been a fiasco:  plaintiff had only been successful in acquiring (1) his student record (which he already had), and (2) partial or incomplete answers to twenty-two (22) interposed interrogatories.   This constituted the full amount of discovery in this case.   Thereafter, defendants refused to answer admissions, or have their

depositions taken under Rule 31.   The court further refused to appoint a magistrate to oversee the contentious discovery period between the parties.

**B.    INITIAL MOTIONS TO AMEND HIS PLEADINGS (1997)**

10.    On June 29, 1997, plaintiff timely filed his amended complaint with permission of the court. *See* Civil Docket at Exhibit 1 (Nos. 122, 125, 127, 129 endorsed motions to file amended complaint).   Plaintiff filed this amended complaint in two parts:   an amended complaint against the Institutional Defendants (who had already answered the complaint), and an amended complaint against the Individual Defendants (who had not yet answered the complaint).  Plaintiff's First Amended Complaint Against the Institutional Defendants, dated July 29, 1997, with Twenty-One (21) Counts, is attached hereto as Exhibit 10.   Plaintiff's Second Amended Complaint Against the Individual Defendants, dated July 29, 1997, with a total of Nine (9) Counts, is attached hereto as Exhibit 11.   All together, plaintiff's amended complaints accounted for Thirty (30) Counts.

11.    As already noted *supra*, there had been no meaningful discovery when the amendments were filed.   Indeed, plaintiff had only acquired his student record and partial answers to his propounded interrogatories.

12.    On July 31, 1997, the court returned the plaintiff's amended complaints (Exhibits 10 and 11), instructing the plaintiff to consolidate all amendments against the Institutional and Individual Defendants into one amended complaint.   Plaintiff requested a clarification of the order. Exhibit 12 hereto.   On August 26, 1997, plaintiff re-submitted the amended complaints pointing out that defendants had defaulted and answered two complaints at differing times--thus the need for filing two amended complaints. *See* Exhibit 13 hereto.  Plaintiff's First Amended and Supplemental Complaint Against the Institutional Defendants, dated August 26, 1997, is attached hereto as Exhibit 14.   Plaintiff's Second Amended Complaint Against the Individual Defendants,

dated August 26, 1997, is attached hereto as Exhibit 15.    In the plaintiff's second filing, there were a total of Thirty-One (31) Counts against the defendants.

13.    On September 18, 1997, the Court clarified the confusion about defendants' defaults and held the second complaint had, in effect, acted against all defendants:

> The plaintiff's motion for clarification is granted. On July 23, 1997, the court granted the plaintiff's motion for an extension of time within which to file a motion to amend the complaint. The plaintiff has submitted a copy of that endorsement, a portion of which is highlighted with the notation "only one proposed amendment not two." Although the comment was not a part of the court's endorsement, it is correct in directing the plaintiff to file only one proposed amended complaint. There are not two operative complaints in this action. The amended complaint filed on January 23, 1996, is the operative pleading in this case. To the extent the plaintiff seeks to amend that pleading and has the written consent of opposing counsel to do so, he may file an amended complaint as to all of the claims and defendants in this case pursuant to Federal Rule of Civil Procedure 15(a). If the plaintiff does not have the written consent of opposing counsel, he must file a motion to amend, attaching the proposed amended complaint. [Exhibit 16 hereto, Doc. No. 132].

14.    Note well, this order did *not* provide any time deadline in which the plaintiff had to submit the amendment "as to all of the claims and defendants." *Id.*

15.    Immediately thereafter, in October 1996, plaintiff began to consolidate "all of the claims and defendants" into one amended complaint. In addition, he also attempted to obtain answers to the outstanding interrogatories from the defendants.

16.    In November 1997, plaintiff's financial situation had deteriorated to such an extent that he was forced to file for bankruptcy in Alexandria, Virginia.

17.    On December 4, 1996, forty-four (44) days after the court had initially issued its order instructing the plaintiff to consolidate "all of the claims and defendants," the court inexplicably reversed itself and held as follows:

> In this case the plaintiff seeks to amend more than two years after the filing of the original complaint and after the close of discovery. The plaintiff has failed to provide a satisfactory explanation for the delay in filing the proposed amendment and permitting the amendment at this stage of the litigation, after the close of discovery, would prejudice the defendant. [Doc No. 134]. [Exhibit 17 hereto]

13

18.    The above order substantially contradicted the court's previous order (Doc. No.

132).   The order also appeared to contradict the liberal amendment policies under Rule 15(a) of the

Federal Rules of Civil Procedure and the fact that there had not yet been any meaningful discovery

in the case.

## C.    AMENDMENTS FILED AS NEW CAUSES OF ACTION (1997)

19.    On December 8, 1997, plaintiff filed all Thirty-One (31) claims as new causes of

action to protect the statute of limitations from expiring on the within claims.   The three new cases

became captioned as follows:   *Tibbetts v. Levin* (397-CV-2683 AWT) (Exhibit 18 hereto); *Tibbetts*

*v. Stempel* (397-CV-02561 CFD) (Exhibit 19 hereto); and *Tibbetts v. Robinson* (397-CV-02682)

(GLG) (Exhibit 20 hereto).    The cases were assigned to new judges respectively, namely the Hon.

Christopher J. Droney, Hon. Alvin W. Thompson and Hon. Gerhard L. Goerttel.

20.    On December 16, 1997, the court issued a pretrial order setting the filing of pretrial

memoranda by January 15, 1998.   See Civil Docket:  Ex. 1 (Doc. No. 139).   On January 15, 1998,

defendants moved for permission to be relieved of the obligation to comply with the court's pretrial

order (Doc. No. 139).    Defendants requested the extension because they wanted to consolidate the

three pending cases with the instant case, because "[t]hese new complaints essentially repeat the

allegations made in this action and incorporate the additional claims that plaintiff sought to assert in

his motion to amend" in July and August, 1997.   Exhibit 21 hereto.   Defendants argued as

follows:

1.    Since the time that the pretrial order was entered, plaintiff has filed with the Clerk of
the Court three new complaints, all dated December 29, 1997, *Tibbetts v. Robinson, et al.,*
397CV02682 (GLG), *Tibbetts v. Stempel, et al,* 397CV02561 (CFD), and *Tibbetts v. Levin,*
*et al.,* 397CV02683 (AWT).   These complaints are annexed hereto, respectively.

14

2.      These new complaints essentially repeat the allegations made in this action and incorporate the additional claims that plaintiff sought to assert in his motion to amend which this Court denied by endorsed order dated December 4, 1997 (Document #134).

3.      This case and these three new cases are "related cases," as those terms are used in the "JS-44" civil cover sheet form required to be filed in each civil complaint filed with the clerk.

4.      In addition, this case and these three new cases involve "common questions of law or fact," as those terms are used in Rule 42(a) of the Federal Rules of Civil Procedure, which deals with the consolidation of cases for trial.

5.      It appears that would make more sense to have these four related cases with common questions of law or fact before a single judge instead of before four different judges as is now the case.

6.      Defendants respectfully ask to be relieved of the obligation to comply with the outstanding pretrial order in this case before it is determined whether this case and these three new related cases will be assigned to one judge and who that judge will be and whether these related cases will be consolidated for trial. If, as is likely, these four cases will be assigned to one judge and consolidated for trial, there would be no point in requiring defendants to comply now with a pretrial order that is limited to just this case. [Ex. 21].

**D.      MOTION FOR RECONSIDERATION TO AMEND (1998)**

21.     On January 20, 1998, plaintiff moved for reconsideration of the right to amend his complaint and to consolidate all four pending actions.    In support thereto, he showed that there had not been any meaningful discovery in the case, there was no prejudice to the opposing party where claims had been noticed since July and August 1997, and Rule 15(a) of the Federal Rules of Civil Procedure mandates a liberal amendment policy.    Plaintiff's memorandum of law is incorporated and set forth as if fully pled herein. *See* Exhibit 22 hereto.

22.     Concurrently, plaintiff filed motion to extend discovery due to defendants' "willful and flagrant noncompliance." Exhibit 23 hereto.    A supplementary motion and affidavit in support of the extension of time for discovery was filed on February 19, 1998.    Exhibit 24 hereto.

23.     On April 28, 1998, the court denied plaintiff's motion for reconsideration to amend his pleadings as "moot" because the plaintiff was in bankruptcy.   The court concluded, however, that the plaintiff could amend his pleadings after he emerged from bankruptcy:

> The plaintiff's motion for reconsideration and to amend is denied as moot; the court having granted defendants' motion for a stay of this case based upon the plaintiff's bankruptcy filing.   If this case is recommenced on or before July 1, 1998, the plaintiff may refile, within 30 days of the recommencement, the motion to amend and a proposed consolidated amended complaint. The proposed consolidated amended complaint shall include all of the plaintiff's claims against all of the defendants and shall exclude any claims with respect to the defendants' alleged conduct in the litigation of this case. [Doc No. 141, Exhibit 25 hereto].

24.     On July 1, 1998, however, plaintiff was still in bankruptcy.   Therefore the court's order that plaintiff could file a "motion to amend" and "a proposed consolidated amended complaint" within 30 days of recommencement of the action on or before July 1, 1998 was inapplicable.   In any event, for the court to have required plaintiff to do so, would have violated the automatic stay provision of 11 U.S.C. 362(a), which prohibits the "commencement or continuation" of judicial proceedings while the bankruptcy is pending.

## E.     MOTIONS TO AMEND AFTER BANKRUPTCY (1999)

25.     Plaintiff's bankruptcy was dismissed on December 2, 1998.  Exhibit 26 hereto.

26.     Five weeks later, on January 13, 1999, the court issued a Second Pretrial Order that directed the parties to list "the necessity of any further proceedings prior to trial." Exhibit 27 hereto.

27.     In compliance thereto, plaintiff submitted his pretrial memorandum, dated February 19, 1999, which listed "the necessity" of the following "proceedings prior to trial."   These proceedings are as follows:  (1) issue of amended complaint, (2) issue of consolidated complaint, (3) issue of pro bono counsel, (4) issue of Yale's failure to provide discovery, and (5) issue of Yale's fraud to vacate a default judgment (hereinafter "pretrial issues").   *See* Exhibit 28 hereto.

28.    Notwithstanding, on March 6, 1999, defendants filed a motion to consolidate the

three pending actions of *Tibbetts v. Levin* (397-CV-2683 AWT), *Tibbetts v. Stempel* (397-CV-

02561 CFD), and *Tibbetts v. Robinson* (397-CV-02682) (GLG) with the instant case.    Exhibit 29

hereto.    Defendants argued as follows:

> Pro se plaintiff Jeffrey Tibbets [sic] was a student at the Yale Divinity School ("YDS")
> between 1985 and 1992. He now has pending in this Court four separate actions before four
> separate judges complaining about how Yale University, its trustees, it administrators, its
> lawyers, and its faculty members treated him during and after his time at Yale.  These
> actions are *Tibbets [sic] v. Dittes* et al 395CV00995 (AVC), *Tibbetts v. Robinson, et al*
> 397CV02682 (GLG), *Tibbetts v. Stempel et al* 397CV02561 (CFD), and *Tibbetts v. Levin et
> al*, 397CV02683 (AWT).  These four actions have overlapping parties and claims, and they
> share the common theme that Yale and its agents treated plaintiff badly and are responsible
> for ruining plaintiff's life for which they should be required to pay him damages and be
> ordered to take other actions to try to right the wrongs they have caused him.  One of the
> wrongs plaintiff recently complained about is that defendants' actions caused him to file for
> personal bankruptcy in January, 1988, when defendants learned of this personal bankruptcy,
> they moved for a stay of all four of these pending actions until further order of the Court on
> the grounds that plaintiff lost his standing because his claims now belonged to the trustee in
> bankruptcy. *See* 11 U.S.C. §541; *Shearson Lehman Hutton. Inc. v. Wagoner* 994 F.2d 114,
> 118 (2d Cir 1991); *Carlock v. Pillsbury Co.,* 719 F Supp. 791, 856 (D.Minn.1989).  This
> Court granted the motion in part and entered a stay until July 1, 1998 (Document #151); the
> judges in the three other cases granted a stay until further order of the court.  In February
> 1999, Judges Droney and Thompson in their cases entered orders of dismissal without
> prejudice to plaintiff's pursuing the claim in the Bankruptcy Court or moving to reopen the
> case in this court.
>
> By order dated January 13, 1999 (Document #159), this Court, even though it did not know
> the status of the bankruptcy proceeding, ordered the parties to submit a joint trial
> memorandum containing the information set forth in the Pretrial Order. . . .
>
> Defendants continue to believe that these four cases against Yale and its agents should be
> consolidated for trial before one judge and that no pretrial memorandum should be required
> until the judge to whom all four cases have been assigned decides when and what type of
> pretrial memorandum he or she wants. There can be no question that these four cases
> involve common questions of law and fact, all relating to the many grievances plaintiff
> claims he has against the common defendants for the way they treated him during and after
> he was a student at Yale, and all involving the same claims of damage. There is no reason
> why these cases should be tried seriatim and every reason why they should all be dealt with
> at the same time. *See* Wright & Miller, Federal Practice and Procedure Civil 2d §2384.
> [Exhibit 29 hereto].

29.     On March 30, 1999, the court denied defendants' motion to consolidate, holding that "[w]hile the other pending cases may involve some common issues and involve common parties to the within case, this case was filed more than two years prior to those cases." Exhibit 30 hereto (Doc. No. 163). The court appears to have overlooked the fact that for one year the parties fought in discovery battles without any meaningful discovery being produced, and the other year plaintiff was in bankruptcy and the court stayed this case.

30.     Nevertheless, a simplistic reading of the court's order (Doc. No. 163) is that the "pending cases" would *not* be consolidated, and that all three would proceed separately to discovery, before three different judges, with three separate adjudications.

31.     On June 25, 1999, the parties filed a Joint Pretrial Memorandum, as ordered by the court. The Joint Pretrial Memorandum informed the court of "the necessity" for the following substantive "proceedings prior to trial": (1) motion to amend complaint, (2) motion to compel defendants to respond to outstanding interrogatories, (3) motion to complete discovery and depositions, (4) motion to separate trials, and (5) motion to determine whether Yale submitted a fraudulent affidavit to vacate a default judgment. Exhibit 31 hereto. The Joint Pretrial Memorandum outlined a trial of 18 days, with at least 39 witnesses, two questioned document examiners, five medical doctors or physicians, and witnesses from the Yale Police Department, U.S. Navy Criminal Investigative Service Command, US Postal Service Inspector's Office, Connecticut State Police Forensic Science Laboratory, US Attorney Offices in Connecticut and Virginia, and retired document examiners from the Federal Bureau of Investigation (FBI). The Joint Pretrial Memorandum set forth the expected parameters for a full and fair hearing which included testimony from the following witnesses and experts:

| **Presbyterian Church (USA)** | **National Council of Churches for Christ (USA) ("NCCCUSA")** |
|---|---|
| Rev. Dr. Peter James<br>Vienna Presbyterian Church<br>124 Park Street<br>Vienna, VA 22180<br><br>Rev. Ruth Rheinhold<br>Trinity Presbyterian Church<br>5533 North 16th Street<br>Arlington, VA 22205<br><br>Rev. Dr. Ruth Herr<br>National Capital Presbytery<br>4915 45th Street, N.W.<br>Washington, DC 20016-4080<br>**Presbyterian Church (USA) (cont.)**<br><br>Rev. Carter Hiestand<br>National Capital Presbytery<br>4915 45th Street, N.W.<br>Washington, DC 20016-4080 | David Harold, Manager<br>Overseas World Mission Prog.<br>NCCCUSA<br>475 Riverside Drive, Rm 650<br>New York, NY 10115-0050<br><br>Rev. Steven Earl, Director<br>PCUSA Volunteer In Mission<br>Presbyterian Church General Assembly<br>100 Witherspoon Street<br>Louisville, KY 40202 |
| **U.S. Navy Chaplain Corps**<br><br>RADM Richard Hutchinson<br>Deputy Chief of 'Chaplains, USN, Ret.<br>Vienna Pre Church<br>124 Park Street<br>Vienna, VA 22180<br><br>CAPT Eli Takesian USN, Ret.<br>Senior Chaplain, US Marine Corps<br>Vienna Presbyterian Church<br>124 Park Street<br>Vienna, VA 22180<br><br>Rev. Charles E. McMillan<br>CAPT, Chaplain Corps, USN, Ret.<br>Dir., Presbyterian Council for Chaplains &<br>Military Personnel<br>4125 Nebraska Ave. N.W.<br>Washington, D.C. 20016-2790 | **U.S. District Attorney Offices (CT and Virginia)**<br><br>John H. Durham<br>Chief, Criminal Division<br>U.S. District Attorney Office<br>157 Church Street, 23rd Floor<br>New Haven, CT 06518<br>Deborah J. Perillaman, Asst. US Attorney<br>Main Street Centre, Suite 1800<br>600 E. Main Street<br>Richmond, VA 23219-2447<br><br>**U.S. Navy Criminal Investigative Service (NCIS')**<br><br>Norman S. Kiger, General Counsel<br>NCIS Headquarters<br>Washington Navy Yard<br>716 Picard St., S.E.<br>Washington, D.C. 20388 |

| | |
|---|---|
| CAPT Jonathon Iseallo, USN<br>Director, USN Chaplain Candidate Prog.<br>Navy Education Training Center (NETC)<br>c/o Office of Judge Advocate General<br>US Navy, General Litigation Division<br>Washington Navy Yard<br>Washington, DC 20388-5000 | . |
| **U.S. Postal Service (USPS) Inspector**<br><br>Lawrence E. Maxwell, Manager<br>Fraud and Prohibited Mailings Branch<br>U.S. Postal Inspection Service<br>Office of Criminal Investigations<br>475 L'Enfant Plaza West, SW<br>Washington, DC 20260-2166<br><br><br><br>Michael A. Ahern<br>Postal Inspector-In-Charge (Hartford)<br>Northeast Division<br>425 Summer Street, 7th Fl.<br>Boston, MA 02210-1736<br><br><br>Dr. David A. Crown<br>USPS Asst. Postal Inspector, Ret.<br>3103 Jessie Court<br>Fairfax, VA 22030 | **Federal Bureau of Investigation (FBI)**<br>John Paul Osborne (FBI Spec Agent, Ret.)<br>139 Fullerton St, Rm 418<br>New York, NY 10038<br><br>Richard Horton<br>FBI Special Agent, Ret.<br>Division of Forensic Sciences<br>660 Northside Highschool Rd.<br>Roanoke, VA 24019-2837<br>**State of Connecticut State Police Forensic**<br>**Science Laboratory**<br><br>Elaine Pagliaro, Director<br>State Police Forensic Science Laboratory<br>278 Colony Street<br>Meriden, CT 06451<br><br>James Streeter, QDE<br>State Police Forensic Science Laboratory<br>278 Colony Street<br>Meriden, CT 06451 |
| **Yale Police Department ("YPD")**<br><br>Chief James Perroti<br>Yale Police Department<br>98/100 Sachem Street<br>New Haven, CT 06520<br><br>**The Yale Corporation**<br><br>Rick Levin<br>Benno Schmidt<br>Jose Cabranes<br>Richard Franke<br>Linda Lorimer | **Expert Questioned Document Examiners**<br>**(QDE)**<br><br>Clarence E. Bohn, J.D.<br>Chief Document Examiner, FBI, Ret.<br>7204 Park Terrace Drive<br>Alexandria, VA 22307<br><br>Edwin F. Alford, MFS<br>Chief Document Examiner, Ret.<br>Miller, Hargett, & Alford<br>P0 Box 33091<br>Washington, DC 20033 |

| Yale Divinity School ("YDS") | YDS Professional Studies Committee ("PSC") |
|---|---|
| James Dittes<br>Dwayne Huebner<br>Detra MacDougall<br>Penelope Laurans<br>Bill Stempel<br>Dottie Robbinson<br>Tom Ogletree<br>Harry Adams | Chris Butcher<br>Lee McGee<br>Laura Lyon<br>Ben Doolittle<br>George Lindbeck |
| **Plaintiff's Witnesses to Prove Falsity of Defendants' Charges**<br><br>Russell Raymond<br>(Fmr Hotel Clerk, Wilmington Hilton)<br>503 Arlene Dr.<br>Boothwyn, PA 19061<br><br>Mrs. Julia M. Raymond<br>(Mother of Russell Raymond)<br>503 Arlene Dr.<br>Boothwyn, PA 19061<br><br>Ms. Deborah Winkler<br>(Fmr Exec. Secretary, Wilmington Hilton)<br>822 Jefferson St.<br>Wilmington, DE 19801<br>Donna Brewer<br>(Fmr Manager, Wilmington Hilton)<br>63 B. Street Road<br>West Chester, PA 19382<br><br>David H. Speilberg, Ph.D.<br>Notary Public, State of Connecticut<br>312 Cosey Beach Avenue<br>East Haven, CT 06512 | **Medical and Psychiatric Experts Psychiatrists**<br><br>Dr. Harold Barbot, M.D.<br>Arlington County Mental Health Services<br>1725 N. George Mason Dr.<br>Arlington, VA 22205<br><br>Dr. Gilbert Kliman, M.D.<br>The Psychological Trauma Center<br>4925 MacArthur Blvd. N.W.<br>Washington, DC 20007<br><br>Dr. Henry S. Skopek M.D.<br>Arlington County Mental Health Services<br>1725 N. George Mason Dr.<br>Arlington, VA 22205<br>Dr. Elizabeth Teegarden, Ph.D.<br>1655 North Fort Myer Drive, Suite 700<br>Arlington, VA 22209<br><br>Dr. Ulrich Prinz M.D. 3213 Columbia Pike<br>Arlington, VA 22204 |
| **Economic Experts**<br><br>Dr. Richard B. Edelman, Ph.D.<br>8518 Whittier Boulevard<br>West Bethesda, MD 20817 | **Plaintiff's Witnesses to Show Emotional Damages**<br><br>Waldo B. Tibbetts, M.A.<br>524 N. Danville Street<br>Arlington, VA 22209 |

| Dennis J. Oppman | Patty Gewartowski |
|---|---|
| Deputy Asst. Judge Advocate General, | 8518 Jeffersonian Ct. |
| Fiscal & Administrative Support | Vienna, VA 222182 |
| Department of the Navy | |
| Washington Navy Yard | Joan Crosby Tibbetts |
| Washington, DC 20388-5000 | 8304 Tobin Road #14 |
| | Annandale, VA 22003 |

In addition to the foregoing, the Joint Pretrial Memorandum set forth 287 Requests for Admission.

These Requests for Admission, as well as other discovery issues, needed to be resolved prior to any

trial date. *Id.* at 30-45.

32.    Four months elapsed without any notice of a scheduling order for this pretrial

conference. On October 4, 1999, plaintiff moved for an Expedited Pretrial Conference, and stated

as follows:

> Plaintiff respectfully moves for a pretrial conference in this action for the purpose of
> considering the matters set forth in Rule 16 of the Federal Rules of Civil Procedure. Such
> conference will expedite the trial and disposition of this action by formulating, simplifying,
> and setting the issues between the parties and by obtaining admissions of fact and of
> documents which will avoid unnecessary proof.

> This case is now five years old and there is still no date certain for trial. Defendants have
> heretofore obstructed and resisted all attempts by plaintiff to move this actions towards
> resolution. Moreover, after five years, defendants continue to engage in dilatory tactics that
> severely prejudice plaintiff's ability to obtain a trial on the merits. [Exhibit 32 hereto].

33.    Two days later, on October 7, 1999, the Court denied the motion, holding "[t]he case

will be set for the next available jury selection." *Id.* The Court offered no justification for the

denial of amendments, discovery and other substantive rulings in this case.

34.    Plaintiff then retained counsel in Virginia, but this counsel felt constrained to make

his appearance without discovery or amendments in this case. Shortly thereafter, plaintiff filed a

motion to amend his complaint *nunc pro tunc*, on the grounds that the court had previously ruled

that he could file an amendment at the conclusion of his bankruptcy. Accordingly, after the

permission to amend his pleadings in order to facilitate a proper decision upon the merits. On October 7, 1999, however, the Court denied the *pro se* plaintiff's motion to amend his complaint by failing to conduct a pre-trial conference, and instead setting this case for trial, without resolving numerous substantive and procedural pretrial matters. *See Foman v. Davis* 371 U.S. at 182, 83 S.Ct. at 230(1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for a decision to be avoided on the basis of such mere technicalities. The Rules reject the approach that pleading is a game of skill and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits") *citing Conley v Gibson* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80. . . . The Supreme Court further instructs district courts to construe pro se complaints more liberally and to apply a more liberal standard in granting amendments where there are "at least colorable grounds of relief" *Hughes v: Rowe*, 449 U.S. 5, 9-10, 101 S.Ct. 173 (1980) (*per curiam*); *Davis v. Bryan,* 810 F.2d 42, 45 (2d Cir. 1991) (Cabranes, D.Conn)(court should grant leave to amend where pro se plaintiff recounts sufficient facts to allege a cause of action). Finally, in a similar case, the Second Circuit found that where a trial court had prevented a party from filing a motion for leave to amend, by refusing to permit a motion to amend without holding prior conference, and then denying the amendment for being filed too late, that such "actions were so 'at odds with the purpose and intent [the Federal Rules],. . . as to warrant mandamus relief" *Richardson Securities, Inc. v. Lau* 825 F.3d 647, 652 (2d Cir. 1987) citing *Padovani v. Bruchhausen* 293 F.2d 546, 548 (2d Cir. 1961).

. . . . [D]efendants cannot demonstrate any "bad faith" showing by the *pro se* plaintiff such as (1) a history of frivolous and vexatious litigation, (2) failure to comply with sanctions and/or court orders or (3) repeated failure to cure deficiencies. *See McDonnell v. Dean Witter Reynolds Inc.* 620 F. Supp. 152 (D.C. Conn 1985). Under these circumstances the Second Circuit has affirmed that a district trial court has "no power to prevent a party from filing pleadings motions or appeals authorized by the federal rules of civil procedure." *Richardson* 825 F.3d at 647. Mere delay "absent a showing of bad faith or undue prejudices does not provide a basis for a district court to deny a right to amend." *State Teachers Retirement Ed v. Thor Corp.,* 54 F.2d 843, 856 (2d Cir. 1981).

. . . . [Moreover] [t]he seventeen month delay in bringing this amendment—a delay largely caused by the plaintiff's bankruptcy proceeding before the U.S. Bankruptcy Court Eastern District of Virginia (98-10123 MVB)—is no greater than other cases where amendments were allowed. *See Security Ins. Co. of Hartford v. Kevin Tucker & Associates* 64 F.3d 1001 (6th Cir 1995) (court's denial of plaintiff's motion to amend based on plaintiff's 16-month delay in filing the motion was an abuse of discretion, where defendants made no showing of prejudice from the delay, and the action was dormant for 13 months due to plaintiff's related bankruptcy proceeding); *Farkas v. Texas Instruments Inc.* 429 F.2d 834 (1st Cir. l970) (amendment by *pro se* plaintiff allowed after two years where there was neither prejudice to defendants nor bad motive on part of plaintiff); *Bleiler v. Cristwood Contracting Co.,* 72 F.3d 13 (2d Cir 1995) (amendments should be allowed under Rule 15(a) except where there is a party's showing of bad faith), *Howrey v United States* 481 F.2d 1187, 1191 (9th Cir. 1973) (amendment allowed after five-year interval and on second day of trial); *Middle Atlantic Utilities Co. v. S.M.W. Development Corp.,* 392 F.2d 380, 386 (2d Cir. 1968) (amendment allowed after three year interval and notice of trial readiness).

24

. . . . . [Finally] Plaintiff has been able to secure representation in this proceeding, but not in time to proceed under the current trial schedule. Attached hereto . . . is the Affidavit of Rodney Sweetland, Ill, an attorney whose practice is limited to Federal Forums and the District of Columbia. As detailed in this Affidavit, Mr. Sweetland requires time to prepare for trial, and to complete discovery matters which defendants have seriously frustrated in this case. [Exhibit 34 hereto].

38.     Despite the facts and law which clearly supported a motion for continuance, the court denied continuance and compelled the *pro se* plaintiff to select a jury on January 6, 2000. Immediately thereafter, plaintiff filed his objection to the errors, prejudice and tainting committed by the court in forcing the foregoing jury selection. Ex. 35.

### G.    WRIT OF MANDAMUS FILED TO COMPEL AMENDMENT (2000)

39.     On January 12, 2000, with a trial imminent, in which there had been no discovery, amendments, consolidation or pretrial conference to resolve numerous outstanding discovery and substantive issues, plaintiff's Virginia counsel filed a Writ of Mandamus with the U.S. Court of Appeals for the Second Circuit. Exhibit 36 hereto. The petition requested injunctive relief to allow the plaintiff "to amend his complaint (and reopen discovery on the amended complaint) in *Tibbetts v. Dittes, et al.,* 395CV00995 AVC (D.Conn), to rule on outstanding discovery motions and to bar the trial scheduled for January 18, 2000 from going forward." *Id.* Pertinent sections of the Petition for Writ of Mandamus are incorporated as if fully pled herein below:

Issues Presented:

Whether the court below clearly abused and thereby usurped its power by failing to permit petitioner to amend his complaint (and reopen discovery on that amended complaint); and failing to rule on outstanding discovery motions. . . .

The instant Petition represents the first time in this action that petitioner is represented by counsel. The issues before this Court exist to a large degree because of difficulties faced by petitioner as a pro se litigant in a complex situation.

Petitioner is the plaintiff in an action for defamation, intentional infliction of emotional distress and breach of contract-type claims against Yale University and certain of

25

its employees.  Subsequent to the filing of the Complaint, petitioner filed a Motion to Amend to encompass supplemental claims.  This Motion to Amend was denied as untimely.  As a consequence of the denial of leave to amend, petitioner was forced to file a total of three additional suits before the district court to prevent a bar under applicable statutes of limitation.  These cases are identified as *Tibbetts v. Robinson, et al*, 397CV02682 GLG (D. Conn.), *Tibbetts v. Levin, et al,* 397CV02683 AWT (D. Conn.) and *Tibbetts v. Stempel. et at,* 397CV02683 CFD (D. Conn.).

Plaintiff filed a Motion for Reconsideration or in the Alternative, to Amend, on January 20, 1998. That Motion was denied as moot.  Plaintiff had gone into bankruptcy, and the court below stayed the case based upon that bankruptcy.    The district court did, however, leave open the door to amendment:

> If this case is recommenced on or before July 1, 1998, the plaintiff may refile, within 30 days of the recommencement, the motion to amend and a proposed consolidated amended complaint. The proposed amended complaint shall include all of the plaintiff's claims against all of the defendants ...

Unfortunately for the orderly administration of justice, petitioner's bankruptcy did not conclude until December 12, 1998.  On February 19, 1998, petitioner filed a Motion to Extend Discovery.  That Motion was denied as moot due to the bankruptcy stay.  On February 27, 1998, petitioner filed a Motion to Compel Responses to Interrogatories.  That Motion was also denied as moot due to the bankruptcy stay, rather than merely held in abeyance.

On March 6, 1999, defendants in this case below filed a Motion to Consolidate these four cases to achieve the same streamlining sought by petitioner.  That Motion was denied.  "While the other pending cases may involve some common issues and involve common parties to the within case, this case was filed more than two years prior to those cases."

Petitioner has repeatedly sought relief from the district court as to amendment of the complaint and outstanding discovery problems. On February 19, 1999, petitioner filed a "Second Pretrial Memorandum."  That Memorandum identified amendment of the complaint and outstanding discovery problems as issues for further proceedings.  On June 25, 1999, petitioner filed a Pretrial Memorandum with the court below identifying *inter alia*, amendment of the complaint and unresolved discovery problems as issues. On October 6, 1999, petitioner filed a Motion for an Expedited Pretrial Conference.  That Motion was denied, and the case was simply set for trial on the next available jury selection.

On December 29, 1999, petitioner filed a Motion for Leave to File Amended Complaint *Nunc Pro Tunc*.  This Motion merely sought the amendment which the court below had previously indicated it would consider.

On January 5, 2000, petitioner filed a Motion for Continuance.  Petitioner had obtained counsel who was willing to try the case, but that counsel was unable to enter an appearance without having had any time to prepare to fly the case, or without having the

opportunity to correct specifically identified omissions made by the pro se petitioner during his conduct of the litigation. See also Affidavit of Joel C. Mandelman, attached hereto as Exhibit 17 Petitioner's Motion for Continuance to the court below also included a letter from his psychiatrist attesting to the fact that petitioner suffers from Severe Major Depressive Disorder, caused by the acts and omissions which gave rise to the case, which adversely affect his ability to function normally. Nonetheless, the case proceeded to jury selection on January 6, 2000 with petitioner unrepresented by counsel and the questions of amendment of his Complaint (and thus effective consolidation of the four outstanding cases) and outstanding discovery remaining unanswered.

As these materials make clear, petitioner is depending upon relief from this Court in order to obtain trial counsel. If he does not obtain the relief he seeks, he will be forced to try the case below *pro se.*

Reasons For Issuance Of The Writ

Mandamus is called for under this Court's decision in *Richardson Greenshields Securities, Inc. v. Lou,* 825 F.2d 647 (2d Cir. 1987). In *Richardson Greenshields Securities, Inc. v. Lau, supra,* this Court held that a district court's actions preventing a party from amending a pleading to incorporate new claims were a usurpation of power warranting mandamus relief. 825 F.2d at 652. The district court's refusal to grant petitioner's request for a pretrial conference is analogous to the refusal to grant a motion's hearing in Richardson. Petitioner was unable to resolve the outstanding issues of amendment of the complaint (and any concomitant discovery issues) without such a conference. The case was simply propelled forward without addressing, let alone resolving, the issues of fundamental importance which had been raised by the petitioner below.

Petitioner's right to amend under the circumstances before the court below is clear and indisputable. It is an abuse of discretion for a district court to deny leave to amend absent undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies or undue prejudice to the opposing party. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). Mere delay "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny a right to amend." *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843,. 856 (2d Cir. 1981). *See also Security Ins. Co. of Hartford v. Kevin Tucker & Associates,* 64 F.3d 1001(6th Cir. 1995) (court's denial of plaintiffs motion to amend based upon plaintiff's 16-month long delay in filing the motion was an abuse of discretion where the action was dormant for 13 more due to plaintiff's bankruptcy and defendants made no showing of prejudice).

There can be no prejudice as a matter of law when the original complaint provided fair notice of the operative facts in the proposed amended complaint. *Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 447 (2d Cir. 1985). Defendants below have had notice of petitioner's proposed amendments for years.

Defendants cannot credibly claim prejudice by the proposed Amended Complaint. They brought a Motion to Consolidate which would have the same effect as granting the relief petitioner seeks herein:

> Defendants continue to believe that these four cases against Yale and its agents should be consolidated for trial before one judge...There can be no question that these four cases involve common questions of law and fact, all relating to the common defendants for the way they treated him during and after he was a student at Yale, and all involving the same claims of damage. There is no reason why these cases should be tried seriatim and every reason why they should all be dealt with at the same time.

The facts in this case militate in favor of an issuance of a writ of mandamus even more strongly than those in *Richardson*. In the matter *sub judice*, it is a pro se plaintiff suffering from Severe Major Depressive Disorder who has been denied leave to amend (and also thus to reopen discovery). The Supreme Court instructs district courts to apply a more liberal standard in granting leave to amend for *pro se* plaintiffs. *Hughes v. Rowe*, 449 U.S. 5, 9 101 S.Ct. 173 (1980) (*per curiam*). *See also Davis v. Bryan*, 810 F.2d 42, 45 (2d Cir. 1991). Here the district court is apparently holding petitioner to an even higher standard than a litigant represented by experienced counsel.

Additionally, the court below is acting contrary to its own Local Rules. Local Rule 10(b)(1) of the U.S. District Court for the District of Connecticut provides that related cases should be assigned to the judge having the earliest filed case. The manifestly unreasonable situation now exists that there are four separate actions involving the same issues between the same parties which are before four separate judges; and are thus subject to four completely different results. There is no alternative means to obtain the relief petitioner seeks than to grant his request for a writ of mandamus. The denial of consolidation of the four cases and the district court's failure to act upon petitioner's *nunc pro tunc* request to amend are unreviewable.

Wherefore, petitioner respectfully requests that this Honorable Court order the Hon. Alfred v. Covello, Chief U.S. District Judge for the District of Connecticut to grant petitioner's leave to amend and to reopen discovery, to rule on outstanding discovery motions and to continue the trial scheduled to begin January 18, 2000. [Exhibit 36, internal citations to exhibits omitted].

## H.   COURT RETALIATES FOR WRIT OF MANDAMUS (2000)

40.     The day after the Petition for Writ of Mandamus was filed, the court denied all of plaintiff's pending requests for discovery, amendment, consolidation and continuance of the trial date. The timing of the court's denial on these motions appear retaliatory in light of the petition for writ of mandamus.

(C)     The pretrial order directed both parties to file a pretrial memorandum within 30 days, or by February 14, 1999.

(D)     On February 1, 1999, defendants moved to be relieved of the obligation to comply with the pretrial order .  Ex. 1: Doc. No. 160.

(E)     On February 19, 1999, plaintiff timely filed his part of the pretrial memorandum, which included the request to amend or consolidate the pleadings.  Ex. 28, Doc. No. 161.

(F)     On February 26, 1999, plaintiff filed a motion to compel defendants to file a pretrial memorandum.  Ex. 1: Doc. No. 162.

(G)     On March 31, 1999, the court ordered both parties to file a Joint Pretrial Memorandum by April 23, 1999.  Ex. 30.   Thereafter, by order of the court, the time to file the Joint Pretrial Memorandum was extended until June 25, 1999, and both parties complied with this order by filing the Joint Pretrial Memorandum on June 25, 1999.  The Joint Pretrial Memorandum again clearly included plaintiff's request to amend and consolidate the pleading in this case.  *See* Ex. 31 hereto.

48.     Therefore, based on the facts and the court's civil docket, the plaintiff clearly filed a notice and motion to amend his pleadings in a timely manner, after the case was recommenced on January 13, 1999, and within the 30-day *ex post facto* framework designated by the court.

49.     The court's order, dated January 13, 2000, obfuscated the true facts and record in this case by manufacturing grounds that were not supported by the record.   Indeed, this court went out of its way to deny plaintiff's right to amend his complaint.  Further, the court contorted the record in this case to claim that the plaintiff "has not given an adequate explanation as to why he has not filed an amended complaint until December 29, 1999."  Exh. 35.  However, as demonstrated *supra,* this holding is not supported by the record.

50.     As the record clearly indicates, plaintiff made three (3) attempts to file an amended complaint after this case recommenced on January 13, 1999.  *See* Exhs 28, 31, and 32.

51.     Notwithstanding this clear abuse of discretion, the plaintiff made a FOURTH attempt to amend his complaint *nunc pro tunc* on December 29, 1999.  *See* Ex. 33.

52.    Thus court is simply wrong to "conclude[] that the plaintiff has not given an adequate explanation as to why he has not filed an amended complaint until December 29, 1999." To the contrary, it is the court that "has not given an adequate explanation" as to why it denied plaintiff's four attempts in 1999 to amend his complaint.

53.    This court turned a blind eye to the record to invent grounds to deny a *pro se* plaintiff's four (4) attempts to amend his pleadings.

54.    It is an abuse of discretion for a court to deny a plaintiff to amend his complaint-- absent undue delay, bad faith, repeated failure to cure deficiencies or undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230 (1962). Mere delay "absent a showing of bad faith or undue prejudice, *does not provide a basis for a district court to deny a right to amend*." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843,. 856 (2d Cir. 1981) (emphasis added); *Ansam Associates, Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 447 (2d Cir. 1985) (same).

55.    In *Richardson Greenshields Securities, Inc. v. Lau*, 825 F.3d 647, 652 (2d Cir. 1987), the Second Circuit held that a district court's arbitrary and capricious actions in preventing a party from amending his pleading was a usurpation of judicial power which warranted mandamus relief. There, the Second Circuit concluded that where a district court prevented a party from filing a motion for leave to amend by refusing to (1) permit a motion to amend without prior conference, (2) decline to hold that conference, and then (3) deny the amendment as "being filed too late," are "actions so 'at odds with the purpose and intent of [the Federal Rules] as to warrant mandamus relief." *Richardson*, 825 F.2d at 652.

56.    In this case, plaintiff's right to amend his pleadings was clear and undisputable. Similar to the court in *Richardson*, this court actually *invited* the plaintiff twice to notice the

"necessity" of a "proceeding[] prior to trial" on the issue of amendments and consolidation. Thereafter, the court refused to conduct a pretrial conference to hear this motion, not to mention a host of other substantive discovery issues, and then denied the plaintiff's motion to amend the complaint *nunc pro tunc* as being "filed too late." With such an outrageous abuse of discretion, the Second Circuit made it clear that: "[a]bsent extraordinary circumstances, such as demonstrated history of frivolous and vexatious litigation, or a failure to comply with sanctions imposed for such conduct, *a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.*" 826 F.3d at 652.

57.    Based upon the court's outright refusal to hold a pretrial conference in order to resolve plaintiff's fundamental right to obtain discovery and amend pleadings, for a complete adjudication upon the merits, constitutes a violation of plaintiff's procedural due process rights, and therefore the subsequent judgment entered in this case is "void" because this court "acted in a manner inconsistent with due process of law." *Otte v. Manufacturers Hanover Commercial Corp.*, 596 F.2d 1092, 1099 (2d Cir. 1979) (quoting 11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2862); *Parker, PPA v. Della Rocco*, 197 FRD 214, 215-216 (D.C. Conn. 2000) ("A judgment is void under Rule 60(b) only if the court which rendered it . . . acted in a manner inconsistent with due process of law").

58.    Even more egregious than the facts in *Richardson*, this court went to great lengths to create inaccurate factual and legal grounds to deny a *pro se* plaintiff's right to amend his pleadings.

59.    As evidence of such judicial abuse, the court cited *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990), as grounds to deny plaintiff's motion to amend his complaint.    However, a review of *Cresswell* is completely inapposite to this case and its proposition actually supports the plaintiff's motion to amend when discovery is not complete.

60.     In *Cresswell*, over the course of one year, the parties proceeded through full discovery with depositions, document production, admissions, and interrogatories.  922 F.2d at 72-73.  After discovery was complete, the court granted summary judgment to defendants.  *Id*.  A full eight months later, plaintiff moved to amend his complaint.   But discovery had long been over and summary judgment had already been entered.  *Id*.   The district court denied the motion to amend.  On appeal, the Second Circuit affirmed the holding because (1) full discovery had been completed, (2) summary judgment had been granted, and (3) "ignorance of the law is an unsatisfactory excuse" as grounds to amend a complaint.  *Id* at 61.

61.     In the instant case, *none of these factors were present*.   Indeed, the facts are just the opposite.   There had been no meaningful discovery; there was no summary judgment, and *both* parties wanted consolidation of all four cases for discovery and trial.[3]   Thus the court's application of *Cresswell* to the instant case is at best misguided.   Rather, *Cresswell* actually supports the plaintiff's position:  "near the end of a yearlong period of discovery, plaintiffs were *allowed to file a second amended complaint*."  922 F.2d at 72 (emphasis added).

62.     Despite overwhelming facts and law that supported plaintiff's motion to amend, this court brazenly denied the motion.   The denial was arguably based upon a reckless application of the law and a twisted contortion of the record.

63.     In the same fashion, the court also denied plaintiff's motion for a continuance of the trial date.   The court's order, dated January 13, 2000, is set forth here in full:

---

[3]     As already noted *supra*, defendants argued that: "these four cases against Yale and its agents should be consolidated for trial before one judge...There can be no question that these four cases involve common questions of law and fact, all relating to the common defendants for the way they treated him during and after he was a student at Yale, and all involving the same claims of damage. *There is no reason why these cases should be tried seriatim and every reason why they should all be dealt with at the same time.* [Ex. 29, emphasis added].

plaintiff filed a motion for continuance because the court had not ruled on the following outstanding motions:

1.     Motion to amend;
2.     Motion to compel defendants to answer interrogatories;
3.     Motion to separate trials;
4.     Motion in limine;
5.     Motion to default defendants Dwayne Huebner and Harry Adams for fraud, fraud on the court, and failure to answer the complaint after four years; and
6.     Motion to depose the following defendants: Tim Dines, Detra MacDogall, Bill Stempel, Tom Ogletree, Rick Levin, Dwayne Huebner, Penelope Laurans, Dottie Rubbinson, and Harry Adams.

Further, the plaintiff argues that, after five years, he has been able to obtain counsel on the eve of trial and, therefore, the court should continue the action "for at least 120 days...." However, the court notes that no appearance has been filed on behalf of the plaintiff.

First, after a review of the case file and docket, the following motions are not present nor pending before the court:

1.     Motion to separate trials;
2.     Motion in limine;
3.     Motion to default defendants Dwayne Huebner and Harry Adams for fraud, fraud on the court, and failure to answer the complaint after four years; and
4.     Motion to depose the following defendants: Jim Dines, Detra MacDogall, Bill Stempel, Tom Ogletree, Rick Levin, Dwayne Huebner, Penelope Laurans, Dottie Rubbinson, and Harry Adams.

. . . . Finally, the plaintiff's motion for a continuance (Document No. 189) is DENIED. The Second Circuit Court of Appeals stated that:

> [t]he decision whether to grant a continuance rests within the discretion of the district judge, the sole requirement being that his decision be reasonable. *United States v. Hall* 448 F.2d 114 (2nd Cir. 1971). As stated by the Supreme Court in *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964). [sic] '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.' *United States v. Slocum,* 695 F.2d 650, 656 (2d Cir. 1982).

In the present case, the plaintiff . . . now requests the court to reopen discovery, stating that he wants to depose nine individuals, and, in essence, begin anew, by adding five new causes of action, on the eve of trial. The court concludes that the plaintiff has had more than adequate time in which to file amendments and conduct discovery. [Exhibit 38 hereto].

64.    The court again misrepresented the facts and law.   First, the court concluded plaintiff wants "to reopen discovery, stating that he wants to depose nine individuals, and, in essence, begin anew, by adding five new causes of action, on the eve of trial."   Nothing could be further from the truth.   To the contrary, a review of the record clearly shows that plaintiff *had been attempting to amend his complaint continuously from July and August 1997 up until the eve of trial.* Plaintiff attempted to amend his complaint four times in July and August 1997, once on January 20, 1998 (before the bankruptcy), four times after his bankruptcy had concluded[4], and two times in reconsideration prior to the eve of trial (Jan. 5, 2000 and Jan. 17, 2000).   In total, plaintiff made eleven (11) attempts to amend his complaint.   These eleven attempts extended continuously from 1997 until 2000.   This fact is quite different from the court's surprising claim that plaintiff merely attempted to amend his complaint "by adding five new causes of action, on the eve of trial."

65.    Notwithstanding the clearly heroic efforts by the plaintiff to amend his complaint, the court *unequivocally knew that there had been no meaningful discovery in this action.*   The court knew that plaintiff had requested a magistrate because of contention and delay from defendants on discovery disputes.   When discovery concluded on May 23, 1997, the only discovery that had been produced to date was the plaintiff's student record and answers to 17 interrogatories.   Thereafter, the plaintiff made no less than nine (9) attempts, not including a writ of mandamus to the circuit court, to re-open and complete discovery up until the eve of trial.

66.    Based on the above true record in this case, it is utter fabrication for this court to conclude that plaintiff *"has had more than adequate time in which to file amendments and conduct discovery."*

---

[4]   After the bankruptcy concluded, plaintiff requested amendments on Feb. 19, 1999, June 25, 1999, Oct. 4, 1999 and Dec. 29, 1999.

67.    On January 17, 2000, plaintiff filed a Motion for Reconsideration for a Continuance of the Trial Date.   In this last motion plaintiff showed that if the trial were to proceed under the present circumstances without discovery, amendments or representation by counsel, would arguably be a violation of the plaintiff's constitutional rights to due process.   This important motion needs to be set forth and incorporated herein as follows:

> Plaintiff moves the Court for reconsideration of its order denying plaintiffs motion for a continuance of the trial date on the grounds that it would be a manifest injustice for this case to proceed to trial under the present circumstances.   On January 13, 2000, the court denied the *pro se* plaintiff's motion for continuance because "the plaintiff has had more than an adequate time in which to file amendments and conduct discovery."

> The record in this case does not support this conclusion. To the contrary, for three years, the record herein demonstrates that a *pro se* plaintiff has diligently attempted to amend his complaint and reopen discovery.

### ARGUMENT

> "The decision whether to grant a continuance rests within the discretion of the district judge, the sole requirement being that his decision be *reasonable* [emphasis added]. *United States v. Hall* 448 F.2d 114 (2nd Cir. 1971).  As stated by the Supreme Court in *Ungar v. Sarafite* 376 U.S. 575, 589 (1964), '[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *United States v. Slocum*, 695 F.2d at 650, 656 (2d Cir. 1982).

> Here, the court's denial of a *pro se* plaintiff's motion for a continuance of a trial date so that he could receive a fair trial by counsel would certainly not meet the "reasonable" standard as set forth by the Supreme Court and the Second Circuit.

> The Court, nevertheless, cites Slocum in support of denying the plaintiff's motion for a continuance, but this support is, at best, misplaced. In Slocum the district court granted fl previous requests for a continuance. Further, in that case, the "appellant was permitted nearly three months to prepare for trial after counsel was appointed." 695 F.2d at 656.  It was only after the appellant requested his third continuance, that the district court denied this motion.  On appeal, the Second Circuit held that, in light of the court's two previous continuances, the district court did not abuse its discretion in denying a third request for a continuance. *Id.*

> This is certainly not the case here.  The standard for reasonableness in Slocum clearly has not been applied in the present circumstances.  On October 7, 1999, the court denied a

request for a pretrial conference, which both parties needed to resolve evidentiary and substantive motions prior to trial. As a consequence, the plaintiff had no alternative but to request a continuance of the trial date to still resolve outstanding issues regarding discovery and the need to have counsel try this case. Unlike the *Slocum* court, which granted two continuances and 3-month extension for counsel to prepare for trial, this is court is not even willing to grant one extension which is in the best interests of justice. The court further knows that there has been minimal discovery in this case, contention between plaintiff and defendants' counsel, and the record clearly supports that the plaintiff has attempted to amend his complaint and obtain discovery on it for the past three years. *See Powell v. Syracuse University*, 80 F.2d 1150, 1154 (2d Cir. 1978), *cert denied* 439 U.S. 984, 99 S.Ct. 576 (1978)(liberal rules of discovery are designed to make a fair contest with basic facts and issues disclosed prior to trial); *Gray v. Board of Education*, 692 F.2d 901, 907 (2d Cir. 1982) (party is entitled to discovery "which stems from society's interest in fill and fair adjudication of the issues involved in litigation").

Finally, and perhaps most importantly, that this court has denied a *pro se* plaintiff's motion for a continuance--so that counsel can both review and try the case-- appears manifestly unjust. The *pro se* plaintiff is simply being railroaded into trying this case by himself without any discovery and without the opportunity for representation by counsel. Under the present circumstances, there can be no trial on the merits, it only be a circus show between defendants' counsel and a *pro se* plaintiff who has no experience whatsoever in the courtroom, and an immediate appeal to the Second Circuit. In short, if this case goes forward under its present circumstances, there is an arguable abuse of discretion and a violation of the plaintiff's right to due process. As the Supreme Court clearly stated in *Powell v Alabama*:

> "What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right... . Even the intelligent and educated layman has small and sometimes no skill in the science of law. . . . He is unfamiliar with the rules of evidence... He requires the guiding hand of counsel at every step in the proceeding.... If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

287 U.S. 45, 68-69; *Chandler v. Fretag* 348 U.S. 3, 8 (1954) (denying party any opportunity whatever to obtain counsel may deprive him of due process of law). [Ex. 39 hereto].

68.    The court *declined* to rule on this motion, violating plaintiff's rights to due process of law. Instead, the court compelled the *pro se* plaintiff to conduct his own trial, without his counsel, and after verdict was rendered for the defendants, then the court *denied* this motion for reconsideration "as moot." *See* Civil Docket, Ex. 1; Doc. No. 196.

I.     **COURT DENIES FUNDAMENTAL FAIRNESS AT TRIAL (2000)**

69.     The trial on January 18, 2000 was a fiasco.   It was a circus event that was not only

an embarrassment to the federal judiciary but a departure from the Federal Rules of Civil Procedure

and Evidence.   The Joint Pretrial Memorandum specifically stated that this trial would last 18 days,

with 50 witnesses and experts expected to testify on both sides.   However, the following summary

of the trial transcript shows what actually transpired in this so-called trial:

| | |
|---|---|
| Plaintiff *pro se* pleads with the court for a continuance of the trial.  He explains to the court that he has counsel in Virginia, that he is under medication, and that he cannot try the case. | 11-15 |
| Court orders plaintiff to the witness stand. Defendants' counsel objects.  Plaintiff requests guidance from the court. | 16-18 |
| Plaintiff does not understand that his evidence has not been admitted.  Plaintiff requests counsel. Defendants' counsel objects.  Court dismisses jury for recess. | 24-26 |
| Court asks about the status of the Writ of Mandamus before the Second Circuit. Plaintiff reminds court that defendants still have not produced outstanding discovery.  Plaintiff again requests counsel.  He states that he does not know how to present a case.  Court denies continuance.  Court further denies plaintiff's motion to amend or consolidate three other complaints pending before the court. | 27-31 |
| Court orders the plaintiff to testify.  Defendants' counsel objects to plaintiff's testimony.  He asks that the court strike all of plaintiff's testimony as "hearsay." Court refuses.  Defendants' counsel wants a "mistrial." | 32-34 |
| Defendants' counsel moves for a second "mistrial," if the court sends any portion of this case to the jury.  Court denies motion.  Court orders plaintiff to get his documents from the YMCA. | 36-37 |
| Court reviews the plaintiff's documents.  The documents represent the plaintiff's entire educational record--which is kept at the University in its ordinary course of business.  Defendants haven't objected to the documents. Plaintiff complains there has been no pretrial conference on any evidentiary or substantive issues.  Court proceeds to exclude all University records related to plaintiff's employment prospects.  Court excludes all plaintiff's medical and psychological records. Court excludes all University records related to defendants' defamatory allegations about plaintiff Court admits only those documents that are "self-authenticating," or contain the stamp of Yale University on its letterhead.  Defendants' counsel objects to the admitted evidence. | 38-64 |
| Plaintiff complains the court has slashed his case.  The Court has excluded all of the University's documents related to the U.S. Navy, the Presbyterian Church, Beijing Foreign Affairs College, and the U.S. Attorney's Offices in Virginia and | 65-76 |

39

| | |
|---|---|
| Connecticut. Plaintiff complains: "What is going before the jury right now is every document from Yale University. How can that possibly establish my case? You Honor, I want counsel. I demand counsel here. I have been demanding counsel all day long I will not go forward with this anymore. I demand an immediate mistrial on this." | |
| Plaintiff protests there have been no witnesses. He asks for a continuance. He asks for counsel. Both motions are denied. Defendants are not at trial. He concludes: "All I'm asking for is a fair trial. This is nothing but a railroad job, Your Honor." | 77 |
| Court inquires why plaintiff thinks Yale's evidence should be "admissible." Plaintiff replies that he "is not an attorney." He states: "I don't know the rules of evidence. I don't have a clue as to why or what rule of evidence they should be included. If everything is excluded, . . I have no case." Court is satisfied with its "determinations." Court adjourns and instructs the parties to be at a charging conference the next morning at 9:15 a.m. | 78-79 |
| JANUARY 19, 2001:<br><br>Court resumes. More documents from the plaintiff are excluded. One of the documents shows the plaintiffs resignation from the U.S. Navy. Court claims the document is "hearsay." | 2-6 |
| Plaintiff moves to "subpoena" the defendants from the University. They failed to show for trial. Defendants' counsel objects. Motion denied. | 7 |
| Plaintiff asks to give testimony on his economic damages. Defendants' counsel objects. He doesn't want anymore "narrative." Jury returns. Plaintiff testifies, and defendants' counsel moves to strike the entire testimony. He argues there is neither "foundation" nor "evidence." Plaintiff and defendants' counsel quarrel over more documents. Court orders jury to disregard some of plaintiff's testimony. Court orders plaintiff to "finish up." | 12-19 |
| Plaintiff moves to introduce his witnesses. He asks for a continuance so that they may testify. Court denies motion Plaintiff again asks to subpoena defendants who failed to show for trial. Motion denied. Court informs the jury that this trial will "come to its conclusion a great deal sooner than was represented to you." Jury leaves the courtroom. | 20-21 |
| Defendants' counsel moves to strike all of plaintiff's testimony. He says the court has allowed a "suspension of the rules of evidence." He says the plaintiff's testimony violates all the rules of evidence as "hearsay." Court agrees to instruct jury to disregard plaintiff's testimony on certain defamatory matters during plaintiff's candidacy for the ordained ministry. | 22-24 |
| Defendants' counsel continues the court is "in error" by "dumping documents" on the jury without providing them any "context." The court failed to verify the authors, "who received them," and "the circumstances under which they're drafted." He says all of the documents "were just dumped" in front of the jury, "which allows them all kinds of speculation. It's not appropriate." | 24 |

| | |
|---|---|
| Defendants' counsel attempts to evade the tolling agreement between the plaintiff and Yale. He moves to dismiss under Rule 50. Plaintiff objects. He wants counsel. He says this matter should have been resolved in a pretrial conference. Plaintiff says it is "completely unfair" that defendants have raised this issue "at the last minute." It demonstrates the University's "bad faith" in waiting five years to bring this up. Court takes a recess. | 25-50 |
| A controversy erupts between plaintiff and defendants' counsel over one document. Defendants' counsel wants it admitted. Plaintiff says that if it is admitted, the court must hear additional testimony. This document is the basis for plaintiff's fraud claim against the University. Plaintiff reminds the court that this fraud claim is pending in a separate action, which the court failed to consolidate. The court admits the document, but denies additional testimony. Jury enters the courtroom. Judge apologizes to the jury that this "case has not been presented to you in a more temporally smooth flowing fashion." | 40-44 |
| Court orders the plaintiff to give his closing statement. Defendants' counsel interrupts him continuously. Court tells the plaintiff "just keep going." More disagreement erupts over the documents. Defendants' counsel asks that the jury disregard plaintiffs statements. He decries the lack of evidence. Court instructs plaintiff how to make his closing statement. Plaintiff says that he is not an attorney. He says that he is "too closely involved with this," and is "doing the very best" he can. Court orders him to "finish up your comments." | 49-52 |
| Plaintiff attempts to explain the University's charges of fraud and forgery. He says the University failed to conduct an investigation into the charges. He also says the University failed to contact state or federal law enforcement agencies. Defendants' counsel objects. Argument ensues over what is or isn't admissible evidence. | 55-57 |
| Plaintiff tells jury that the University withheld legal counsel during the plaintiffs charges of fraud and forgery. Defendants' objects. Court tells jury to disregard statement. Plaintiff asks for an opportunity to prove that the University denied legal counsel. Defendants' counsel complains the plaintiff is "trying to testify." There is additional confusion on the charging instructions. Court tells plaintiff: "You cannot read that, sir." Plaintiff attempts to continue with his closing statement. Defendants' counsel raises more objections. | 60-69 |
| Plaintiff informs jury that he is on medication because of his loss of employment. Defendants' counsel objects. Court tells plaintiff to stop testifying. Court becomes exasperated. Plaintiff apologizes and says that he is "too emotionally involved." He is doing the best he can. Plaintiff asks the court: "What else am I supposed to do at this point?" Court tells him to "Say thank you." Plaintiff says "thank you." Jury leaves for lunch. | 77-79 |
| Defendants' counsel gives his closing statement. He addresses the jury: "This has not been an easy trial for any of us. Its been obviously difficult for the Judge, particularly difficult for Mr. Tibbetts, and I can say for myself, difficult for me, because this is not how trials are usually conducted." | 80 |
| Defendants' counsel continues that none of plaintiffs testimony is "competent | 81-84 |

| | |
|---|---|
| credible evidence." He states that plaintiff has burden of proving his claims. But its "understandable why he didn't do it, he doesn't have a lawyer and he's not a lawyer." Defendants' counsel turns to the documents. Court treats Yale's documents as factual, without requiring any proof or examination. Plaintiff objects. He says defendants' counsel is "testifying". There has been "no testimony" or "evidence" to support anything defendants' counsel is saying to the jury. Plaintiff is overruled. | |
| An argument erupts between plaintiff and defendants' counsel. There is a heated exchange whether misrepresentations have been made to the jury. Plaintiff claims that defendants' counsel has presented evidence "contrary to what the University has already found." Plaintiff queries how defendants' counsel can testify on these matters--when defendants' counsel has no personal knowledge. Further, the University has presented no "evidence at all." The defendants "had no witnesses, no one ever showed up." He says defendants' presentation "to the jury is completely inaccurate." Court tells plaintiff: "I'm going to ask you to not comment further here." | 88-93 |
| Plaintiff asks the court to explain a "closing statement." Plaintiff says he doesn't understand what defendants' counsel is doing. "A closing argument means a summary," and none of this evidence has been presented—let alone examined or proven. This "is the first time' the jury has heard of any of "this stuff." Court orders plaintiff to "sit, sir." And "marshal, if he speaks up again, I'll ask you to assist the gentleman from the courtroom." | 97-98 |
| Defendants' counsel continues. Plaintiff leaves the courtroom. He returns and asks for a "sidebar." Plaintiff informs the court that the defendants have misled the jury. Defendants counsel complains to the court that the jury can "hear" the plaintiff. Plaintiff reminds the court that his "fraud claim" was supposed to be an amendment in this case. Plaintiff asks to give additional testimony to correct the fraud perpetrated by the defendants. Court refuses: "You can't have additional testimony." | 104-115 |
| Court orders plaintiff to give a brief rebuttal. Plaintiff says the jury hasn't been shown all of the evidence. Defendants' counsel objects. Plaintiff asks to show the jury the exculpatory evidence which University withheld during its hearing. He states, "Your Honor, we need more evidence in this case so the jury can understand what happened." Plaintiff is overruled. Judge asks him, "about done, sir?" Plaintiff replies: "The jury is not hearing everything that they should be hearing." He says, "Your Honor, all I'm asking for is a fair—." The court orders him to "finish up." Plaintiff asks for more time to explain everything to the jury. Court again tells him to "finish up." Jury leaves the room. | 116-127 |
| During recess, plaintiff tells the court he doesn't understand the charges to the jury. He asks for counsel. | 149-150 |
| There is confusion about the jury charges. Defendants' counsel says: "I don't mean to quibble about this, but sometimes the appellate court gets very fussy about whether something's been done correctly." | 158 |

cleared from any criminal wrongdoing from forensic reports by questioned document experts

(former FBI and U.S. Postal Inspector), and official reports from the U.S. Naval Investigative

Service Command (NISCOM).  All of the foregoing was excluded from evidence and not seen by

the jury.

73.     In short, the only thing the jury saw was the professor's outrageous allegations on

Yale University letterhead; the jury saw none of the plaintiff's exculpatory evidence--which was

contained in the remainder of the university's records.

74.     Where the court excluding all of the plaintiff's exculpatory evidence (Suppressed

Evidence 0001-1164), but allowed the professor's allegations which were on university letterhead

(Admitted Evidence 001-135), is equivalent to the court allowing one party put on all its evidence,

but strike or suppress the other party's evidence, which was from the same set of records!   This is

the equivalent of a court allowing  the prosecution to put on evidence but barring the defendant

from putting on any defense.   In so acting, the court tainted the evidence and prejudiced the jury by

only allowing the jury to see only those limited defamatory documents on Yale University

letterhead.

**J.     COURT CREATES SURPRISE AND CONFUSION AT TRIAL**

75.     Plaintiff hereby repleads and incorporates by reference each and every allegation set

forth above, and further shows that a constitutional error occurs where a judgment is rendered

"void" for due process violations because the litigant was denied an "*opportunity to be heard 'at a*

*meaningful time and in a meaningful manner.*'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)

(emphasis added, quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965); *Grannis v. Ordean*, 234

U.S. 385, 394 (1914) (same).   As set forth more fully below, there were eighteen (18) separate

instances of unfair surprise, prejudice and confusion at trial, which prevented the plaintiff from

a party not represented by counsel"[5] or "unable to communicate with counsel,"[6] or where

judgments were "entered because of the failure of a party to appear at trial,"[7] or were "they were

based on a misunderstanding about appearance and representation by counsel,"[8] or which resulted

"from confusion over the trial date,"[9] or "because of confusion about the procedural posture of the

case."[10]    Wright & Miller, § 2857 at 265-268 (collecting cases).

78.    In this case, plaintiff is entitled to relief under Rule 60(b)(1) where the court (1)

compelled a pro se plaintiff to conduct his trial without the presence of his counsel, (2) refused to

allow the plaintiff to "communicate with counsel" during trial, (3) declined to summons the

defendants "to appear at trial," and (4) ruled on the university's record  for the first time at trial,

thus 18 surprise evidentiary rulings, which did not allow either party time to properly prepare the

case for trial.

79.    As noted above, plaintiff was represented by Virginia counsel, Rodney Sweetland

("Sweetland") and Joel Mandelman ("Mandelman").    Both Sweetland and Mandelman had been

recently retained and both said that they could not try the case on such short notice on January 18,

2000.  Both Sweetland and Mandelman filed the Writ of Mandamus with the Second Circuit, but

no word had been heard from the appellate court as of the trial date, January 18, 2000.  In addition,

there was more procedural confusion because plaintiff had a number of pending motions to

---

[5]    *Falk v. Allen*, 739 F.2d 461 (9th Cir. 1984) (not represented by counsel); *Marshall v. Monroe & Sons, Inc.*, 615 F.2d 1156 (6th Cir. 1980) (same).
[6]    *Vindigni v. Meyer*, 441 F.2d 376 (2d Cir. 1971) (unable to communicate with counsel); *Russell v. Cunningham*, 279 F.2d 797 (1960) (same).
[7]    *Denman v. Shubow*, 413 F.2d 258 (1st Cir. 1969) (failure to appear).
[8]    *U.S. v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars*, 705 F.2d 909 (7th Cir. 1983) (misunderstanding about appearance of counsel); *United Coin Meter Co.*, 705 F.2d 839 (6th Cir. 1983) (same).
[9]    *Ellingsworth v. Chrysler*, 665 F.2d 180 (7th Cir. 1981) (trial date confusion).
[10]    *Louisiana v. Sparks*, 978 F.2d 226 (1992) (procedural confusion); *Carl Marks & Co. v. Union of Soviet Socialist Republics*, 665 F.2d 26 (2d Cir. 1988) (same).

continue the trial date so that his attorneys could complete discovery and properly prepare this case
for trial .

80.    The "confusion" and "surprise" generated in this trial is a direct result of the court's
failure to hold a pretrial conference under Rule 16 of the Federal Rules of Civil Procedure.   A
pretrial conference is a well-settled judicial convention used to improve the quality of trial and
avoid the possibility of unfair surprise or prejudice.   In this case, however, the court simply ignored
evidentiary disputes and the issues surrounding amendment and consolidation and set this trial "for
the next available jury selection."  Ex. 32.   The court made no effort whatsoever to properly
prepare this case, the parties and the evidence for a jury trial.   As a demonstrated below, the result
was massive surprise and unfair prejudice to both parties.

81.    Because there was not pretrial conference, the parties (1) did not know what, if any,
evidence would be admitted at trial, (2) did not know what additional evidence would still be
produced (depositions and requests for admissions), (3) did not know what claims would be
consolidated from similar pending cases, and (4) did not know which of the plaintiff's four claims
would actually be heard by the jury.   In short, the lack of a pretrial conference guaranteed that this
trial would be chock full of last minute and unfair surprise to both parties.

82.    Notwithstanding the court's failure to hold a pretrial conference, the court waited
until three days before trial to rule on outstanding discovery and substantive issues.   Clearly this
should have been done well in advance of the pending trial date.

83.    In addition to the uncertainty about the "procedural posture" of this case, plaintiff
had taken the extraordinary step of filing a Writ of Mandamus against this trial judge to compel him
to allow the completion of discovery and the amendment or consolidation of the claims in this case
prior to trial.

84.     Predictably, as a result of the court's poor planning, the following surprise and confusion ensued at trial:

1)      the court was confused about what documents were in the defendants' business and educational records;

2)      the defendants failed to appear for trial or examination;

3)      the court declined to subpoena the defendants for trial;

4)      plaintiff's counsel was not able to appear for trial;

5)      the court denied plaintiff a continuance so that his witnesses and experts could testify at trial;

6)      the court admitted 10% of defendants' records, while suppressing over 90% of the remainder of the defendants' records on arbitrary evidentiary grounds; and

7)      the court threatened to have the plaintiff thrown in jail if he continued to complain about the unfairness of this trial.

85.     As a result of such extraordinary set of circumstances, which can only be viewed *en toto*, both parties were unfairly surprised. Plaintiff was prejudiced in not being able to authenticate evidence without his counsel. And the defendants simply failed to show for trial, while the court declined or refused to subpoena them for examination at trial. Meanwhile, defendants' counsel kept requesting a "mistrial" because the court had "suspended" the rules of evidence.

86.     A review of the transcript demonstrates the confusion and surprise that characterized this trial. This surprise and confusion was evident throughout the opening, evidence, testimony, and closing argument. Defendants' counsel claimed the plaintiff's testimony was a clear violation of Rule 602 of the Federal Rules of Evidence. The court struck 90% of the records from the plaintiff's education record at the last minute. And the court even allowed defendant's counsel to comment and testify on matters in the closing argument that were not addressed evidentiary portion of the trial.

Presbyterian Church in Washington, D.C., and told the members of this church, without telling me, that --

MR. DOYLE:   Your Honor, in order to protect my client's rights, I want to register a continuing objection to this narrative, to this really opening and closing argument. This is not evidence.

MR. TIBBETTS:       Your Honor, I said I'm not an attorney. I'm doing the best I can. [Tr. 17-18]
--------
MR. TIBBETTS:   These are some of the issues that you will hear presented this morning. Again, I am not an attorney. I wish that I could present this in a more objective fashion, but I have been living this for so long, it's difficult for me to try and present it to you objectively. And I wish that counsel would present it to you objectively, and be able to prove by evidence, by a preponderance of the evidence, that what I have said right now, as the Plaintiff in the matter, can be proven. I don't know what else to say your Honor. [Tr. 23: 11-19]


----------------
MR. TIBBETTS:   Your Honor, I don't know how to try a case. I don't understand how to proceed at this point. . . . That's why I need counsel to do this. [Tr. 25: 10-19].


--------
THE COURT:   Do I take it sir, that you don't have any further evidence at this time?

MR. TIBBETTS:   I don't know how to present the evidence at this time. I thought the evidence was already presented. And on top of that, Your Honor, I never imagined that I was actually going to be trying this case. I am represented by counsel. I want counsel to be able to do it. I cannot under the medication that I'm under now be able to present this case in a rational, coherent fashion. [Tr. 26: 4-11].
------
MR. TIBBETTS:   And again, Your Honor, I mean, there's discovery that I've asked so that this case can proceed. . . . I had asked for . . . counsel so that this case could be presented and do justice in this case.

My concern, Your Honor, is that I am simply too close and emotionally involved in the case to be able to present it to the jury. . . . but whatever I present, I'm not going to be able to do a decent job. I don't know anything about evidence, Your Honor. . . . Nonetheless, counsel has said – I do have counsel that says that they want to try this case, . . . I'm simply asking for a fair trial, Your Honor. I want counsel to be able to present this. We need time to prepare this.

We should be able to proceed smoothly along so that the jury can hear the entire case and decide upon the merits. That's not going to happen here. The entire focus is on me, Your Honor, as a pro se plaintiff who does not know what he's doing. . . .

All I ask, Your Honor, is counsel review these amendments, and they be presented so that you can preside at this trial and not have to deal with a circus-like

> environment here, Your Honor.  I want to preserve the dignity of this hearing.  I want to preserve everything that the jury can hear so that they can hear the case on the merits.  And Your Honor, I simply ask under the circumstances -- I don't know how else to proceed.  I will be asking you questions every step along the way.  I don't know how to try the case[.]

THE COURT:  . . . . Okay, well, your motion for a – your further motion for a continuance is denied, sir.  [Tr. 28 –Tr:34]

---------

MR. TIBBETTS:  What is going before the jury right now is every document from Yale University.  How can that possibly establish my case?  *Your Honor, I want counsel. I demand counsel here. I have been demanding counsel all day long.*  [Tr. 65: 3-6].

--------

MR. TIBBETTS:  Well, Your Honor, correct me if I'm wrong, but this is a case about defamation, about my reputation . . . . You're asking about relevance.  What we're trying to establish here, *and what could have been established if counsel had been able to make the arguments*, and if we had allowed the depositions to have gone forward so that a reasonable trial could have happened here.  [Tr. 65-66: 2-8 emphasis added].

----------

THE COURT:  Tell me, are you agreeing or not?

MR. TIBBETTS:  I don't know know what I'm agreeing to, Your Honor.  I mean this - - *I'm asking for counsel.*  We're dealing with -- [Tr. 70:17-20]

----------

THE COURT:  Sir, did you want to point out or make specific reference to the reason why you perceive that nay of those documents proposed to be excluded are admissible?

MR. TIBBETTS:  That's an evidentiary, Your Honor.  I am not an attorney.  I don't know the rules of evidence.  I don't have a clue as to why or what rule of evidence they should be included.  If everything is excluded, if all of these documents are excluded, I have no case.  There is nothing being presented to the jury that makes my case.  *There is nothing being presented to the jury that makes my case.*

THE COURT:  All right.  So then all of those evidentiary determinations can stand.  [Tr. 77-78].

----------

MR. TIBBETTS:  I submitted everything that I can at the moment.  I wish that I had counsel to be able to present it for me so that it would be presented properly.  [2 Tr. 1-4].

-----------------

52

THE COURT:   All right.  Do you want to comment, Mr. Tibbetts?

MR. TIBBETTS: *First of all, Your Honor, as you know, I'm not an attorney, and these are the kind of arguments my attorney should be making.  These are important arguments, and I would like to have counsel make the arguments for the Court to make a ruling on it.*  [2 Tr. 28:17:21]

-------------

MR. TIBBETTS:  Well, Your Honor, we're talking about the discrepancy, which deals with my Navy log.  We know there were charges.

THE COURT:   If you want to read from the exhibit, by all means, sir, but try not to embellish, please.

MR. TIBBETTS:  Okay.  Again, I'm not an attorney.  I'm doing the best that I can. [2Tr. 51: 5-10]

88.     As a result of the above, the first impression that the jury acquired of this case is that (1) plaintiff is "represented by counsel" but that this counsel was not present, (2) that plaintiff did not feel "qualified" to present evidence in this case, (3) that plaintiff felt this was an "impossible situation" without any witnesses, counsel or defendants present, (4) that plaintiff doesn't "know what else to do," and (5) that despite this unfair surprise and obvious prejudice to the plaintiff, that the court nonetheless compelled the plaintiff to continue with the trial and do the best he could under the circumstances.   These themes of *unfair surprise, prejudice, lack of counsel, and unfair lack of evidence and witnesses* continued throughout this trial.

### I (3).    Court Surprises Both Parties By Compelling Plaintiff's Testimony in Violation of Rule 602 of the Federal Rules of Evidence.

89.     After this surprising opening and the jury's first impression of this case, the court then compelled the *pro se* plaintiff to give testimony on the witness stand, which arguably violated Rule 602 of the Federal Rules of Evidence ("FRE").   In addition to this evidentiary violation, the jury witnessed defendants' counsel constant interruption of the plaintiff's testimony, which only

53

THE COURT:  I say, using the colloquial expression to indicate that I'm reserving decision on the motion.   So Mr. Tibbetts, where are we?  Do we have further evidence here for the jury?

MR. TIBBETTS:  Your Honor, I'd be happy to get the evidence.   I think the documents speak for themselves[.]

THE COURT:   You don't have them here today, sir.

MR. TIBBETTS:  I can get them.  They're just down the street.

THE COURT:  Down the street?

MR. TIBBETTS:  Yes, Your Honor.   I stayed at the YMCA.   It's a 10 minute walk from here[.]

THE COURT:  Why don't you get the jury back in here, if you would madam.

[The jury enters the courtroom]

THE COURT:  "Ladies and gentlemen, I apologize for the delay here.  There are certain documents that may constitute admissible evidence.  They are not in the building, but they are apparently very nearby.  I am being told, however, that with the examination by the Court of these proposed exhibits, that this would constitute the evidentiary portion of the trial, in its totality. I would ask you now to take an early lunch hour here with the notion that we would resume at 1 o'clock. [Tr. 34-37].

**1(6)   Court Divides University Records Into Three "Piles"; Parties Object to the Court's Arbitrary Notion of "Self-Authenticating" and "Dumping" These Records on the Jury Without Any Context or Foundation.**

92.     The court took judicial notice that the plaintiff's documents were the official records of the university and that they were "produced by Yale." Tr. 43.  Indeed, all of these records are maintained the university in its ordinary course of business.   Unquestionably, all of these records should have been admitted into evidence under  FRE 902(8).  This rule provides in pertinent part that documents are admissible if they are "accompanied by a certificate of acknowledgement executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments."   In this case, Defendants produced all of the university's records under Rule 34 of the Federal Rules of Civil Procedure.   The documents were certified by defendants'

58

counsel, an officer of this Court, and all of the documents were bates labeled.  Thus, despite the

fact that all of these records *were produced by Yale in its ordinary course of business, and were*

*admissible under FRE 902(8),* the *Dittes* Court made a snap-decision to only admit those

documents that were "self-authenticating."  In other words, the court made a surprise and

irrational ruling to only admit those documents which were written on university letterhead!  This

surprise evidentiary ruling caught both parties off-guard and caused heated arguments.  The

transcript shows the enormity of the confusion and contention that the court created in this last-

minute ruling:

> THE COURT:  Mr. Tibbetts, the Court has examined here approximately 700 pages of documents that you're unable to agree with counsel as to their admissibility.  Do I understand correctly, sir, that you're moving the admission of all of these documents?
>
> MR. TIBBETTS:  Yes, Your Honor, because – yes.
>
> THE COURT:  All right.  And Attorney Doyle, I understand that you're objecting to their admission?
>
> MR. DOYLE:  Yes, Your Honor.
> MR. TIBBETTS:   Your Honor, I think the documents speak for themselves, but there are witnesses that I need to call to verify.
>
> THE COURT:  Will you have those witnesses here tomorrow, sir?
>
> MR. TIBBETTS:  I'd have to call, but I don't think I could, Your Honor.  They're primarily the ministers of the Presbyterian Church, my Candidates Committee, who are about four or five or so, and then also officials of the Presbyterian Church, with the [U.S. Navy] Chaplain's Candidates Board, and then also I have expert witnesses.
>
> THE COURT:  Well, the question being, will they be here tomorrow, sir?
>
> MR. TIBBETTS:  Your Honor, I don't believe that's possible for them to be here tomorrow.
>     . . .
> THE COURT:  And Attorney Doyle, the Defendant hasn't made a determination yet as to whether or not they're going to make a determination yet as to whether or not they're going to make a presentation.